# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| SOUTHEASTERN SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:25-cv-684 |
| v. | ) ) | Chief Judge Campbell |
| STEVEN R. FINNEY *et al.*, | ) ) ) | Magistrate Judge Holmes |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

   I.   Federal and State Framework for Human Smuggling ..........................................2

   II.   Parties and Posture ...............................................................................................4

REASONS FOR DENYING INJUNCTIVE RELIEF .............................................................5

   I.   Plaintiffs Are Unlikely to Establish Jurisdiction. ...............................................6

      A.  Plaintiffs lack standing. ..............................................................................6

          1.   Plaintiffs have not shown an injury. .............................................6

          2.   Plaintiff Southeastern Synod lacks associational standing. ...........11

          3.   Plaintiffs lack causation. ..............................................................11

      B.  Defendants have sovereign immunity. ......................................................12

   II.   Extraordinary Injunctive Relief Is Unwarranted. ............................................13

      A.  Plaintiffs are unlikely to succeed on the merits. .......................................13

          1.   Plaintiffs' preemption claims are unlikely to succeed. ...................13

          2.   Plaintiffs' vagueness claims are unlikely to succeed. ......................26

      B.  The other equitable factors weigh against extraordinary injunctive relief. .........................30

   III.  Any Grant of Preliminary Relief Should Be Limited in Scope. ........................31

      A.  Any injunction should cover only the allegedly unconstitutional component of the ASA. ..................................................................................31

      B.  The Court should not enter classwide relief. .............................................32

CONCLUSION ........................................................................................................................35

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A.R.P. v. Trump,*
    145 S. Ct. 1364 (2025) ................................................................................................................33

*A.A.R.P. v. Trump,*
    No. 1:25-CV-059-H, 2025 WL 1148140 (N.D. Tex. Apr. 17, 2025) ................................33

*Alden v. Maine,*
    527 U.S. 706 (1999) ................................................................................................................12

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................................................14

*Am. Chem. Council v. Dep't of Transp.,*
    468 F.3d 810 (D.C. Cir. 2006) ..............................................................................................11

*Arizona v. United States,*
    567 U.S. 387 (2012) ..........................................................................................................*passim*

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ........................................................................................................ 14, 15

*Ass'n of Am. Physicians & Surgeons v. FDA,*
    13 F.4th 531 (6th Cir. 2021) ............................................................................................7, 11

*Ayotte v. Planned Parenthood,*
    546 U.S. 320 (2006) ................................................................................................................31

*Belle Maer Harbor v. Charter Township of Harrison,*
    170 F.3d 553 (6th Cir. 1999) ................................................................................................29

*Bland v. United States,*
    299 F.2d 105 (5th Cir. 1962) ................................................................................................29

*Boyce Motor Lines v. United States,*
    342 U.S. 337 (1952) ................................................................................................................28

*Bragdon v. Abbott,*
    524 U.S. 624 (1998) ................................................................................................................23

*Brockett v. Spokane Arcades, Inc.,*
    472 U.S. 491 (1985) ................................................................................................................32

*Brooks v. Bd. of Pro. Resp.*,
578 S.W.3d 421(Tenn. 2019) ...................................................................................23

*Bucklew v. Precythe*,
587 U.S. 119 (2019) ...................................................................................................16

*California Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987) ...................................................................................................17

*California v. Zook*,
336 U.S. 725 (1949) ...................................................................................................22

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) .....................................................................................13

*Christian Healthcare Centers, Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) ....................................................................................10

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .....................................................................................................30

*Coleman v. State*,
341 S.W.3d 221 (Tenn. 2011) ..............................................................................7, 23

*Connection Distrib. Co. v. Holder*,
557 F.3d 321 (6th Cir. 2009) .....................................................................................32

*Corum v. Holston Health & Rehab. Ctr.*,
104 S.W.3d 451 (Tenn. 2003) ......................................................................................7

*Crawford v. United States Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) .....................................................................................10

*Cruz v. Farquharson*,
252 F.3d 530 (1st Cir. 2001) ......................................................................................32

*D.T. v. Sumner Cnty. Sch.*,
942 F.3d 324 (6th Cir. 2019) ................................................................................30, 31

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...................................................................................................11

*Davis v. Colerain Twp., Ohio*,
51 F.4th 164 (6th Cir. 2022) ...................................................................................9, 10

*Davis v. Passman*,
442 U.S. 228 (1979) ...................................................................................................14

iii

*Dayton Power and Light Co. v. FERC,*
    126 F.4th 1107 (6th Cir. 2025) ...................................................................21

*De Canas v. Bica,*
    424 U.S. 351 (1976) ...................................................................................18

*DeVillier v. Texas,*
    601 U.S. 285 (2024) ...................................................................................16

*Doe v. DeWine,*
    910 F.3d 842 (6th Cir. 2018) ...................................................................16

*Doe v. Lee,*
    137 F.4th 569 (6th Cir. 2025) .....................................................................5

*E. Texas Motor Freight Sys. Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ...................................................................................35

*Elgharib v. Napolitano,*
    600 F.3d 597 (6th Cir. 2010) .......................................................................3

*EMW Women's Surgical Ctr. v. Beshear,*
    920 F.3d 421 (6th Cir. 2019) ............................................................ 13, 15

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC,*
    958 F.3d 532 (6th Cir. 2020) ...................................................1, 5, 34, 35

*Eng. v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) .....................................................................................22

*EOG Res., Inc. v. Lucky Land Mgmt., LLC,*
    134 F.4th 868 (6th Cir. 2025) .....................................................................5

*Farmer v. Phillips,*
    No. 20-5730, 2021 WL 6210609 (6th Cir. Oct. 19, 2021) .......................12

*Fenner v. Gen. Motors, LLC,*
    113 F.4th 585 (6th Cir. 2024) ..............................................17, 21, 22, 26

*First Choice Chiropractic, LLC v. DeWine,*
    969 F.3d 675 (6th Cir. 2020) ...............................................................7, 35

*Fontenot v. McCraw,*
    777 F.3d 741 (5th Cir. 2015) ...................................................................32

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ...........................................................6, 11, 20, 27

iv

*In re Ford Motor Co.,*
    86 F.4th 723, 725 (6th Cir. 2023) ............................................................... 33, 34

*Fox v. Saginaw Cnty., Michigan,*
    67 F.4th 284 (6th Cir. 2023) ..................................................................... 11, 12

*Friends of George's, Inc. v. Mulroy,*
    108 F.4th 431 (6th Cir. 2024) .......................................................................*passim*

*Friendship Materials, Inc. v. Mich. Brick, Inc.,*
    679 F.2d 100 (6th Cir. 1982) ............................................................................ 5

*Gamble v. United States,*
    587 U.S. 678 (2019) ..................................................................................... 25, 26

*Gooch v. Life Invs. Ins. Co. of Am.,*
    672 F.3d 402 (6th Cir. 2012) ............................................................................ 34

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ..................................................................................... 27, 28

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ..................................................................................... 16, 17

*Hans v. Louisiana,*
    134 U.S. 1 (1890) ............................................................................................ 12

*Hewitt v. United States,*
    605 U.S. ----, 2025 WL 1758501 (U.S. June 26, 2025) ................................ 24

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ....................................................................................... 20, 25

*Johnson v. United States,*
    576 U.S. 591 (2015) ........................................................................................ 29

*Kansas v. Garcia,*
    589 U.S. 191 (2020) .......................................................................................*passim*

*Keen v. Helson,*
    930 F.3d 799 (6th Cir. 2019) ....................................................................... 13, 14

*Keller v. City of Fremont,*
    719 F.3d 931 (8th Cir. 2013) ............................................................................ 20

*Kiser v. Reitz,*
    765 F.3d 601 (6th Cir. 2014) ............................................................................ 10

*Kokkonen v. Guardian Life Ins. Co. of America,*
    511 U.S. 375 (1994) ..................................................................................... 14

*L. W. by & through Williams v. Skrmetti,*
    83 F.4th 460 (6th Cir. 2023) .............................................. 17, 21, 22, 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ..................................................................................... 13

*Lindsey v. Whitmer,*
    124 F.4th 408 (6th Cir. 2024) .................................................................. 14

*Lynch v. Jellico,*
    205 S.W.3d 384 (Tenn. 2006) ..................................................................... 7

*Martinez-Quiroz v. United States,*
    210 F.2d 763 (9th Cir. 1954) .................................................................... 29

*McKay v. Federspiel,*
    823 F.3d 862 (6th Cir. 2016) ...................................................................... 9

*Medina v. Planned Parenthood S. Atl.,*
    606 U.S. ----, 2025 WL 1758505 (U.S. June 26, 2025) ................... 15

*Memphis A. Philip Randolph Inst. v. Hargett,*
    2 F.4th 548 (6th Cir. 2021) ......................................................................... 5

*Michigan Corr. Org. v. Michigan Dep't of Corr.,*
    774 F.3d 895 (6th Cir. 2014) ............................................................. 14, 15

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ..................................................................................... 16

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ................................................................................... 6, 33

*Nestler v. Bd. of L. Examiners of State of N. C.,*
    611 F.2d 1380 (4th Cir. 1980) .................................................................. 32

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................................................... 31

*Norton Outdoor Advert., Inc. v. Vill. of St. Bernard,*
    Ohio, 99 F.4th 840 (6th Cir. 2024) .......................................................... 16

*Online Merchs. Guild v. Cameron,*
    995 F.3d 540 (6th Cir. 2021) ......................................................... 9, 10, 31

*Paxton v. Annunciation House, Inc.,*
    --- S.W.3d ----, 2025 WL 1536224 (Tex. May 30, 2025) .................................................21

*Pickett v. City of Cleveland,*
    140 F.4th 300 (6th Cir. 2025) .................................................................................35

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,*
    822 F.2d 1390 (6th Cir. 1987) ...............................................................................10

*Planned Parenthood of Middle Tenn. v. Sundquist,*
    38 S.W.3d 1 (Tenn. 2000) .................................................................................7, 23

*Plunderbund Media, LLC v. DeWine,*
    753 F. App'x 362 (6th Cir. 2018) ..........................................................................10

*Plyler v. Doe,*
    457 U.S. 202 (1982)...............................................................................................18

*Prime Media, Inc. v. City of Brentwood,*
    485 F.3d 343 (6th Cir. 2007)...................................................................................9

*Puckett v. Lexington-Fayette Urban Cty. Gov't,*
    833 F.3d 590 (6th Cir. 2016)..................................................................................12

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) ...............................................................6, 12, 13, 15

*Screws v. United States,*
    325 U.S. 91 (1945).................................................................................................28

*Sosna v. Iowa,*
    419 U.S. 393 (1975)...............................................................................................32

*Speerly v. Gen. Motors, LLC,*
    --- F.4th-----, 2025 WL 1775640 (6th Cir. June 27, 2025) ..........................33, 35

*State v. Hawk,*
    170 S.W.3d 547 (Tenn. 2005) ...............................................................................23

*State v. Jones,*
    341 S.W.3d 318 (Tenn. Crim. App. 2010) .............................................................23

*State v. Pendergrass,*
    13 S.W. 3d 389 (Tenn. Ct. App. 1999).....................................................................9

*State v. Putt,*
    955 S.W.2d 640 (Tenn. Crim. App. 1997) .............................................................23

*State v. Rice,*
    184 S.W.3d 646 (Tenn. 2006) ........................................................................ 8

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .................................................................................... 11

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................................... 6

*Torres v. Precision Indus., Inc.,*
    995 F.3d 485 (6th Cir. 2021) ............................................................ 17, 18, 25

*Trump v. CASA, Inc.,*
    606 U.S. ----, 2025 WL 1773631 (U.S. June 27, 2025) ..................... *passim*

*Turek v. Gen. Mills, Inc.,*
    662 F.3d 423 (7th Cir. 2011) ...................................................................... 32

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980) .................................................................................... 32

*United States v. Five Gambling Devices Labeled in Part "Mills," & Bearing Serial Nos. 593-221,*
    346 U.S. 441 (1953) ...................................................................................... 7

*United States v. Grace,*
    461 U.S. 171 (1983) .................................................................................... 32

*United States v. Hansen,*
    599 U.S. 762 (2023) .................................................................................... 29

*United States v. Kernell,*
    667 F.3d 746 (6th Cir. 2012) ...................................................................... 27

*United States v. Miami Univ.,*
    294 F.3d 797 (6th Cir. 2002) ...................................................................... 31

*United States v. Parrish,*
    942 F.3d 289 (6th Cir. 2019) ................................................................ 27, 28

*United States v. Sanchez-Gomez,*
    584 U.S. 381 (2018) .................................................................................... 32

*United States v. Texas,*
    --- F.4th----, 2025 WL 1836640 (5th Cir. July 3, 2025) ........................... 19

*United States v. Texas,*
    97 F.4th 268 (5th Cir. 2024) ................................................................ 18, 26

*United States v. Wheeler,*
    435 U.S. 313 (1978) ................................................................................. 25, 26

*United States v. Williams,*
    553 U.S. 285 (2008) ........................................................................................27

*United States v. Ye,*
    588 F.3d 411 (7th Cir. 2009) ..........................................................................29

*United States v. Zheng,*
    306 F.3d 1080 (11th Cir. 2002) ........................................................................8

*United States v. Zheng,*
    87 F.4th 336 (6th Cir. 2023) ...........................................................................23

*Universal Life Church Monastery Storehouse v. Nabors,*
    35 F.4th 1021 (6th Cir. 2022) .........................................................................11

*Va. Uranium, Inc. v. Warren,*
    587 U.S. 761 (2019) ........................................................................................26

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.,*
    455 U.S. 489 (1982) ...........................................................................27, 28, 29

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ........................................................................................27

*Waskul v. Washtenaw Cty. Cmty. Mental Health,*
    900 F.3d 250 (6th Cir. 2018) ............................................................................6

*Waters v. Farr,*
    291 S.W.3d 873 (Tenn. 2009) ...........................................................................7

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013) ..........................................................................35

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58 (1989) ..........................................................................................12

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................33

*Ex parte Young,*
    209 U.S. 123 (1908) ..........................................................................12, 13, 14, 15

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,*
    134 F.4th 326 (5th Cir. 2025) .............................................................20, 22, 26

ix

## Statutes, Rules, and Regulations

6 U.S.C. § 101 ..........................................................................................................................3

6 U.S.C. § 202 ..........................................................................................................................3

6 U.S.C. § 251 ..........................................................................................................................3

6 U.S.C. § 252 ..........................................................................................................................3

6 U.S.C. § 557 ..........................................................................................................................3

8 U.S.C. § 1101 ................................................................................................................3, 4, 19

8 U.S.C. § 1226 ........................................................................................................................25

8 U.S.C. § 1324 ..................................................................................................................*passim*

8 U.S.C. § 1324a ................................................................................................................19, 24

8 U.S.C. § 1329 ..................................................................................................................15, 20

8 U.S.C. § 1357 ........................................................................................................................25

8 U.S.C. § 1358 ........................................................................................................................19

18 U.S.C. § 1028 ......................................................................................................................19

18 U.S.C. § 1071 ......................................................................................................................28

18 U.S.C. § 1546 ......................................................................................................................19

42 U.S.C. § 1983 ......................................................................................................................12

Tenn. Code Ann. § 1-3-110 ......................................................................................................31

Tenn. Code Ann. § 16-2-506 ....................................................................................................11

Tenn. Code Ann. § 16-2-508 ....................................................................................................11

Tenn. Code Ann. § 20-13-102 ..................................................................................................12

Tenn. Code Ann. § 39-11-302 ....................................................................................................8

2025 Tenn. Pub. Acts, ch. 424 § 5 ....................................................................................*passim*

Fed. R. Civ. P. 23 ................................................................................................32, 33, 34, 35

8 C.F.R. § 1.2 ............................................................................................................................4

8 C.F.R. § 274.1 .................................................................................................................. 4

8 C.F.R. § 287.5 .................................................................................................................. 4

**Federal Register**

*Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg.
   8327 (Jan. 29, 2025) ...................................................................................................... 2

**Other Authorities**

7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 3.03 ...................................................... 23

7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.04 ...................................................... 23

2 Newberg & Rubenstein on Class Actions § 4:30 (6th ed. June 2025 Update) .................. 33

Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp.
   L. Rev. 69 (2005) ............................................................................................................ 17

## INTRODUCTION

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). And it remains true even with respect to state law enforcement touching on immigration. *Id.* Using its police power, Tennessee recently enacted the Anti-Smuggling Act ("ASA" or "the Act") to combat the rise in the smuggling of illegal immigrants. The Act narrowly targets human smugglers. It covers only a person who *intentionally* conceals, harbors, or shields from detection, immigrants whose presence the smuggler *knows* has been determined unlawful by ICE, for the *purpose* of financial gain. 2025 Tenn. Pub. Acts, ch. 424 § 5. That conduct is already illegal under federal law. *See* 8 U.S.C. § 1324.

Nonetheless, three Plaintiffs sued Tennessee officials days before the ASA's effective date seeking emergency relief. Pressing a cosmically broad, atextual reading of the Act, Plaintiffs claim the ASA is preempted and vague. And they purport to sue on behalf of a putative class so they can obtain statewide relief.

At every turn, Plaintiffs' challenge fails. Plaintiffs do not come close to the "*clear showing*" of entitlement to the "extraordinary and drastic remedy" of a preliminary injunction. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (citation omitted). They lack pre-enforcement standing to bring this suit: Nothing they intend to do violates the law, and they cannot show a "certainly impending" prosecution. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (citation omitted). They lack a cause of action. And they lack any argument under controlling Supreme Court precedent, *Kansas v. Garcia*, that there is a preemption problem with the ASA. To top it off, Plaintiffs seek overbroad relief, circumventing the Supreme Court's recent landmark decision in *Trump v. CASA, Inc.*, 606 U.S. ----, 2025 WL 1773631, at *15 (U.S. June 27, 2025).

This Court has no basis for granting emergency relief, much less a sweeping preliminary injunction going beyond the parties to this suit. Plaintiffs' motion should be denied.

1

# BACKGROUND

## I.    Federal and State Framework for Human Smuggling

The United States is experiencing an immigration "crisis." *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations*, The White House (Jan. 26, 2024), https://perma.cc/GSX7-TWRK; *see Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 29, 2025). "Human smuggling is a multibillion-dollar industry for transnational criminal organizations that do not value human safety and take advantage of vulnerable people." *Human Smuggling*, ICE (Mar. 12, 2025), https://perma.cc/363J-ULCC. "[I]n recent years," the federal government has seen an increase in smugglers who target "women, children and family units" as victims. *Human smuggling equals grave danger, big money*, ICE (updated July 8, 2025), https://perma.cc/T83Y-7B7N. That growth in the smuggling of children has directly impacted Tennessee. As one House proponent of the ASA explained, Tennessee "had over 25,000 unaccompanied children shipped into our State" who "went to folks unknown" and "many of them are still unaccounted for." Tenn. H. Floor Session, at 28:08-41 (Tenn. Apr. 22, 2025), https://tinyurl.com/avymaffv. These victims are often "at risk for assault and abuse such as rape, beatings, kidnapping and robbery." *Human smuggling equals grave danger, supra.*

Concerned that Tennessee's existing laws did not adequately target human-smuggling, the Tennessee General Assembly enacted the Anti-Smuggling Act, 2025 Tenn. Pub. Acts, ch. 424 § 5. Tenn. H. Crim. Just. Comm. at 4:19-5:31 (Tenn. Mar. 19, 2025), https://tinyurl.com/kw2ruxtr. The ASA does "not*"* target humanitarian activities by "charitable organization[s]." Tenn. S. Judiciary Comm., at 3:34:02-35:06 (Tenn. Apr. 8, 2025), https://tinyurl.com/3xcnbbuw. Rather, it is designed to protect victims from being harmed after they reach their destination by catching those responsible "when they're *actually in the act of smuggling.*" Tenn. H. Floor Session, at 29:01-50 (Tenn. Apr. 22, 2025), https://tinyurl.com/avymaffv (emphasis added).

2

The text of the ASA accomplishes just that. The law prohibits smugglers, acting for the purpose of financial gain, from knowingly transporting or intentionally concealing, harboring, or shielding individuals whose presence has been determined to be unlawful by ICE. 2025 Tenn. Pub. Acts, ch. 424 § 5(a).

As Plaintiffs admit, the ASA's restrictions closely track 8 U.S.C. § 1324's prohibition on knowingly transporting, concealing, harboring, or shielding from detection certain "alien[s]." 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii); Dkt. 1¶¶ 5, 63; Dkt. 8-2, at 14–15. Both laws require knowledge about the immigrant's immigration status. Federal law requires knowledge, or reckless disregard, that the alien "has come to, entered, or remains in the United States in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii). Tennessee's law requires knowledge that "the individual has illegally entered or remained in the United States, as determined by the bureau of immigration and customs enforcement," also known as U.S. Immigration and Customs Enforcement or ICE. 2025 Tenn. Pub. Acts, ch. 424, § 5(a). Both laws target professional human smugglers. Federal law makes the motive of "commercial advantage or private financial gain" a sentence enhancement. 8 U.S.C.§ 1324(a)(1)(B). Tennessee's law makes the same motive a prerequisite for committing the crime. 2025 Tenn. Pub. Acts, ch. 424, § 5(a). And both laws rely on federal-agency determinations that the individuals being smuggled are in the United States unlawfully. Federal law provides that, in the context of seizure and forfeiture proceedings, "[o]fficial records of [ICE]" and "[t]estimony, by [ICE] immigration officer[s]" can be used as "prima facie evidence" that an "alien had not received prior official authorization" to enter or remain in the United States. 8 U.S.C. § 1324(b)(3)(B)-(C).[1] Tennessee's law also relies on ICE

---

[1] These statutes generally refer to actions by the Attorney General or "the Service," which is defined as the "Immigration and Naturalization Service" 8 U.S.C. § 1101(a)(24). However, Congress transferred enforcement of immigration laws from the Attorney General and the Service to the Department of Homeland Security ("DHS"). 6 U.S.C. §§ 101(16), 202(3), 251-252, 557; *Elgharib v. Napolitano*, 600 F.3d 597, 606-07 (6th Cir. 2010). DHS then delegated its authority to make arrests,

3

to determine that a smuggled individual is not here lawfully. 2025 Tenn. Pub. Acts, ch. 424, § 5(a).

ICE conveys that determination of unlawful status through, among other things, arrest warrants. *See* ICE Policy 10074.2 ¶ 2.4 (2017), https://perma.cc/RFQ4-YHTY. To issue such a warrant, ICE must show "probable cause" that an individual is "removable from the United States" because, among other reasons, "reliable evidence . . . affirmatively indicate[s]" the individual "lacks immigration status." ICE Form I-200 (Sept. 2016), https://perma.cc/G4CT-TTQ3. ICE may also issue a "Notice to Appear" (NOA) that initiates removal proceedings for individuals ICE determined should be removed from the United States. Policy Memorandum at 1, USCIS (Feb. 28, 2025), https://perma.cc/ZC6N-HXJB; Form I-862, ICE (Aug. 1, 2007), https://perma.cc/D3M3-G7CS. For serious offenders, ICE also has a "Most Wanted" notice that is publicly available and includes clarification of whether ICE determined the individual should be removed from the United States. *Most Wanted*, ICE, https://www.ice.gov/most-wanted (last accessed July 14, 2025).

## II.    Parties and Posture

Ten days before the Act's July 1 effective date, three Plaintiffs sued. Dkt. 1. First is the Southeastern Synod of the Evangelical Lutheran Church in America (Synod), Dkt. 1 ¶¶ 11-24, a religious association with forty-three congregations located in twenty-one of Tennessee's judicial districts. *Congregational Listing*, Southeastern Synod, elca-ses.org, https://perma.cc/VB34-2BXG (last accessed July 8, 2025); *Find your District Attorney*, Tenn. Dist. Atty's General Conference, https://www.tndagc.org/ (last accessed July 14, 2025). Second is Garret Causey, a resident of Murfreesboro, Tennessee, who rents a home in Nashville to a tenant with lawful immigration status. Dkt. 1 ¶¶ 25-27; Dkt. 8-4 ¶¶ 2-5. Third is John Doe, an individual who lives in an undisclosed Tennessee location with his daughter and her husband, a man he says is an "asylum seeker who

---

issue warrants, or pursue forfeiture to ICE. 8 C.F.R. §§ 1.2, 274.1, 287.5(c), (e). The term "immigration officer," thus, also refers to employees of ICE. 8 U.S.C § 1101(a)(18).

unlawfully entered the United States." Dkt. 1 ¶¶ 28-29; Dkt. 8-5 ¶ 1. Causey and Doe also sue as putative class representatives on behalf of "[h]undreds if not thousands of Tennesseans" who allegedly "provide shelter to immigrants who [are here] unlawfully 'as determined by' ICE" and "receive some form of financial benefit in connection with providing that shelter." Dkt. 1 ¶¶ 52-54. No motion for class certification has been filed.

Plaintiffs sued all of Tennessee's District Attorneys in their official capacities. Dkt. 1 ¶ 10, 31. The complaint alleges that some aspects of the ASA violate field and conflict preemption doctrines (Count 1), Fourteenth-Amendment protections from vagueness (Count 2), and First-Amendment rights (Counts 3, 4). Dkt. 1 ¶¶ 60-92. Relying only on Counts 1 and 2, Plaintiffs have moved to enjoin Defendants from enforcing the entire Act against them and the putative class.[2] Dkts. 8, 8-2.

### REASONS FOR DENYING INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary and drastic remedy." *Enchant Christmas*, 958 F.3d at 539 (citation omitted). It "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Id.* at 539. Plaintiffs must establish *all four* factors: (1) they are likely to succeed in establishing jurisdiction and win on the merits; (2) they will suffer irreparable harm; (3) the balance of equities favors them; and (4) an injunction is in the public interest. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021); *see EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025). Even then, the court retains discretion to deny or limit relief. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). And courts must "guard" injunctive relief "with extreme caution, and apply it only in very clear cases." *Doe v. Lee*, 137 F.4th 569, 575 (6th Cir. 2025) (cleaned up, citation omitted). In this case, Plaintiffs have not carried the burden of persuasion at any step of the analysis.

---

[2] Plaintiffs' proposed preliminary injunction is the exact type of universal injunction the Supreme Court just held unlawful in *CASA. See* Dkt. 8-1. It goes even beyond the putative class, seeking to enjoin "Defendants … from enforcing Section 5"—full stop. *Id.*

# I. Plaintiffs Are Unlikely to Establish Jurisdiction.

Two key doctrines that limit a court's jurisdiction under Article III are standing and sovereign immunity. Plaintiffs have the burden to demonstrate standing and to overcome the sovereign immunity of official-capacity Defendants. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046-47 (6th Cir. 2015). They satisfy neither burden.

## A. Plaintiffs lack standing.

To establish standing, Plaintiffs "must satisfy the usual standards for injury in fact, causation, and redressability." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). At "the preliminary injunction stage, then, the plaintiff must make a 'clear showing'" on each element. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation omitted). And "standing is not dispensed in gross." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 253 (6th Cir. 2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Each plaintiff must demonstrate standing "for each claim he seeks to press" and "for each form of relief sought." *Id.* (citation omitted). No such "clear showing" has been made here.

### 1. Plaintiffs have not shown an injury.

"Typically[,] the government [must] enforce the allegedly unconstitutional law against the challenging party before it has standing to sue." *Friends of George's*, 108 F.4th at 435. But in certain limited circumstances, an Article III injury can be established *before* enforcement of a statute. Plaintiffs can establish an injury sufficient for "*pre*-enforcement review" only when "the plaintiff (1) alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) that the challenged statute proscribes, and (3) the plaintiff's intention generates a *certainly impending* threat of prosecution." *Id.* (cleaned up, citation omitted). Plaintiffs fail this test because (a) the ASA does not even arguably proscribe Plaintiffs' intended conduct, and (b) Plaintiffs cannot make a clear showing of a "certainly impending" threat of prosecution.

In assessing pre-enforcement standing, the first step is to "figure out what the [law] proscribes." *Friends of George's*, 108 F.4th at 435 (citation omitted). That is because a plaintiff cannot get into court by asserting an "injury" that "rests on a misinterpretation of the [challenged law]." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021). When interpreting a state statute, federal courts apply the "general rules of statutory construction as embraced by" the state courts. *First Choice Chiropractic, LLC v. DeWine*, 969 F.3d 675, 680 (6th Cir. 2020). Thus, the question is whether Tennessee state courts would interpret the law as prohibiting Plaintiffs' conduct—they would not.

When interpreting a law, Tennessee courts look to the "natural and ordinary meaning of the statute." *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003) (quotations omitted). When a statute is unclear, Tennessee courts "may confirm [their] interpretation of the statute by considering its legislative history, prior interpretations of the statute, [or] similar statutes in other jurisdictions." *Coleman v. State*, 341 S.W.3d 221, 240 (Tenn. 2011). They strictly adhere to their "duty" to avoid construing the statute in an unconstitutional way. *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 7 (Tenn. 2000). "This is not a mere polite gesture." *United States v. Five Gambling Devices Labeled in Part "Mills," & Bearing Serial Nos. 593-221*, 346 U.S. 441, 449 (1953). Tennessee courts "indulge every presumption and resolve every doubt in favor of constitutionality." *Lynch v. Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006) (citation omitted). This "presumption of constitutionality applies with even greater force" where, as here, a party "brings a facial challenge to the validity of a statute." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009).

Applying those interpretive principles, the human-smuggling statute does not apply to Plaintiffs' intended conduct because Plaintiffs lack (1) a for-profit purpose, (2) an intent to conceal, and (3) knowledge about ICE determinations for a specific individual.

<u>Lack of For-Profit Purpose</u>. First, the statue only impacts a person who engages in human

smuggling "for the purpose of commercial advantage or private financial gain." 2025 Tenn. Pub. Acts, ch. 424 § 5(a). A natural reading of the term "commercial advantage" is "a profit or gain in money obtained through business activity." *United States v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002). And "private financial gain" means "an additional profit specifically for a particular person or group." *Id.*

Two Plaintiffs lack this purpose. Synod members accept donations but offer shelter to immigrants as a feature of their obligation "to love and serve the world" and "welcome the stranger." Dkt. 1 ¶ 11 (quoting *Ephesians* 4:21 and citing *Matthew* 25:35). Doe accepts the rent his son-in-law "insist[s]" on paying because Doe believes "families belong together." Dkt. 1 ¶ 29. Neither acts "for the purpose" of obtaining profit.

<u>Lack of Intent to Conceal</u>. Second, the ASA is not triggered unless the person "intentionally conceals, harbors (provides shelter), or shields [an individual] from detection." 2025 Tenn. Pub. Acts, ch. 424 § 5(a)(2), (d). An "intentional" mens rea "is the highest, most demanding mental state." *State v. Rice*, 184 S.W.3d 646, 684 (Tenn. 2006) (affirming Court of Appeals); Tenn. Code Ann. § 39-11-302(a). The criminal must have the "*conscious objective* or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a) (emphasis added). So, the Act only criminalizes intentionally sheltering someone for the purpose of avoiding detection. *Infra* pp. 22-23.

Plaintiffs do nothing of the sort. Synod does "not encourage anyone to break the law" and does not "hid[e]" the individuals it shelters. Dkt. 1 ¶¶ 16-24; Dkt. 8-3 ¶¶ 12-19. Causey does not say he intends to hide his tenant. Dkt. 1 ¶¶ 25-27; Dkt. 8-4 ¶¶ 2-9. And John Doe does not say he intends to hide his son-in-law. Dkt. 1 ¶¶ 28-30; Dkt. 8-5 ¶¶ 3-4. They intend to provide the exact sort of humanitarian aid that the General Assembly did not target. They offer shelter—not concealment.

<u>Lack of Knowledge about ICE Determinations</u>. Finally, the ASA criminalizes hiding an individual "that the person *knows* has illegally entered or remained in the United States, *as determined by*" ICE. 2025 Tenn. Pub. Acts, ch. 424, § 5(a)(2), (d) (emphasis added). Tennessee courts would likely

interpret the law to require actual and not constructive knowledge. *State v. Pendergrass*, 13 S.W. 3d 389, 394 (Tenn. Ct. App. 1999). In fact, the General Assembly considered and rejected a "should have known" requirement. *See* H.B. 322, § 7(a), Gen. Assem. 114th (2025) (Exhibit 1). So, to violate the law, a person would need actual knowledge of ICE's determination that the individual illegally entered or remained in the United States. *Supra* pp. 3-4.

Plaintiffs do not allege this knowledge. To the contrary, Causey affirmatively knows his current tenant *has* lawful immigration status. Dkt. 8-4 ¶ 5. And his *suspicions* about other individuals are not knowledge at all. *Id.* at ¶¶ 6-7. True, some of Synod's congregations do "not check anyone's papers," and provide help "regardless of immigration status" or have learned that the people they help "do not have legal status." Dkt. 8-3 ¶¶ 13, 15, 17. But none mention actual knowledge of ICE determinations. John Doe knows his son-in-law "unlawfully entered the country" but says nothing about ICE's determination of his son-in-law's current status. Dkt. 8-5 ¶¶ 3-4.

One final point—Plaintiffs attack parts of the law that cover "transporting" individuals. Dkt. 8-2, at 1, 11-19, 21, 25. Yet Plaintiffs never even suggest that they plan to do this. And they cannot litigate the ASA's transport provision "without a separate showing of an actual injury under th[at] provision[]." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007). Because Plaintiffs' supposed injury "is not 'fairly traceable' to the . . . parts of the law that did not cause any injury," they lack standing. *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 171 (6th Cir. 2022) (citation omitted).

### b. Plaintiffs do not face a "certainly impending" threat of prosecution.

Even if the Act did "proscribe[] [Plaintiffs'] intended conduct," courts do not assume that every breach of the law will be prosecuted. *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). Instead, the Sixth Circuit assesses whether a certain threat of enforcement exists through a four-part framework—the "*McKay* factors." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021), *abrogated on other grounds by Tennessee Conf. NAACP v. Lee*, 139 F.4th 557, 563 (6th Cir. 2025). The *McKay*

factors require "some combination" of (1) "a history of past enforcement," (2) "enforcement warning letters sent to the plaintiffs," (3) "an attribute of the challenged statute that makes enforcement easier or more likely," and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.* (quoting *McKay*, 823 F.3d at 869). Plaintiffs have none.

No History of Past Enforcement. "A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). But Plaintiffs sued before the ASA went into effect, so no past enforcement was possible. *See Friends of George's*, 108 F.4th at 439.

No Warning Letters. No such letters have been sent. *See id.*

No Attributes Making Enforcement Easy. The ASA is "a standard criminal law with no attributes making enforcement easier or more likely." *Friends of George's*, 108 F.4th at 440.

Disavowal of Enforcement. Nor is there "refusal to disavow enforcement of the challenged statute against" Plaintiffs. *Online Merchs.*, 995 F.3d at 550 (cleaned up) (focusing on "a particular plaintiff"). Defendants' general duty to enforce Tennessee laws does not "suggest that [Defendants] would enforce the rule against anything like [Plaintiffs'] *specific*" conduct. *Davis*, 51 F.4th at 174.

Plaintiffs' citation to *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987), changes nothing. (Dkt. 8-2, at 7.) That case has been overtaken by subsequent Supreme Court caselaw. *See Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 454-55 (6th Cir. 2017) (discussing the evolution of standing law); *Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362, 371-72 (6th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

At day's end, that Plaintiffs' conduct is not proscribed and they face no prosecution threat is a "real-world win" for Plaintiffs. *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024) (Murphy, J., concurring). They can continue their conduct, unchanged, with no fear of prosecution. But without the threat of prosecution, they lack standing to bring this federal lawsuit.

10

### 2. Plaintiff Southeastern Synod lacks associational standing.

Just as each individual plaintiff "must demonstrate standing for each claim" asserted and "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), an association relying on its members for standing must make the same showings for "at least one identified member." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). An association, however, cannot sue on behalf of some "unknown member" and must instead "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *FDA*, 13 F.4th at 543. Synod does not sue on its own behalf, but generally on behalf of its pastors. Dkt. 8-2, at 8. Yet it does not "identify *a member* who has suffered (or is about to suffer) a concrete and particularized injury." *FDA*, 13 F.4th at 543. Because Synod fails to point to even "one specifically-identified member [who will] suffer[] an injury-in-fact," *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006), it is unable to demonstrate associational standing.

### 3. Plaintiffs lack causation.

Plaintiffs' alleged injury cannot be traced to or redressed by *all* Defendants. "[A] plaintiff's standing to sue one defendant does not give the plaintiff standing to sue every other defendant." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 293 (6th Cir. 2023). Plaintiffs have to allege how an injunction against "*each* of the defendants could redress" their injuries. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). This is true even for putative class actions. *Fox*, 67 F.4th at 294-300.

District attorneys can prosecute only in their judicial districts. Tenn. Code Ann. §§ 16-2-506, -508. So, plaintiffs cannot seek relief from a district attorney "beyond [his or her] jurisdiction." *Friends of George's*, 108 F.4th at 440 n.5; *see Fox*, 67 F.4th at 293. To sue all the DAs in Tennessee, Plaintiffs must allege they engage in conduct in all the judicial districts. They do not.

Synod has congregations "across . . . Tennessee," Dkt. 1 ¶ 11, but not in every judicial district,

*Supra* pp. 4-5. Synod lacks congregations in the judicial districts of the following eleven Defendants: Jared Effler (8th Judicial District), Courtney Lynch (12th Judicial District), Ray Crouch (23rd Judicial District), Neil Thompson (24th Judicial District), Mark Davidson (25th Judicial District), Jody Pickens (26th Judicial District), Colin Johnson (27th Judicial District), Fredrick Agee (28th Judicial District), Danny Goodman Jr. (29th Judicial District), Chris Standford (31st Judicial District), or Hans Schwendimann (32nd Judicial District). *Id.* Synod does not allege how these Defendants would enforce the ASA against congregations not located in their district. So, these Defendants must be dismissed.

Causey lives in Murfreesboro (16th Judicial District—Jennings Jones) and rents out a Nashville home (20th Judicial District—Glenn Funk). Dkt. 1 ¶ 25. He lacks standing to sue all other Defendants.

Finally, Doe has not shown that he has standing to sue *any* of Defendants. He alleges that he lives in Tennessee. Dkt. 1 ¶¶ 28-19, Dkt. 8-5 ¶ 1. But he does not allege any facts that show *where* in Tennessee he lives. Because he has not provided anything that would "tie" his injury to a specific defendant, he lacks standing to sue all of them. *Fox*, 67 F.4th at 293.

## B. Defendants have sovereign immunity.

Sovereign immunity protects Defendants from this suit. *Alden v. Maine*, 527 U.S. 706, 715 (1999); *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890). There are three exceptions to sovereign immunity: (1) "when the state has consented to suit," (2) "when Congress has clearly and expressly abrogated the state's immunity," or (3) "when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None apply.

Tennessee has not consented to this suit. *See* Tenn. Code Ann. § 20-13-102(a); *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021). The only cause of action upon which Plaintiffs rely, 42 U.S.C. § 1983, Dkt. 1 ¶¶ 75, 84, 92, does not abrogate immunity, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Thus, this suit can proceed only if the *Ex Parte Young* exception applies. *Russell*, 784 F.3d at 1046-47. It does not.

Under *Ex parte Young*, a "suit challenging the constitutionality of a state official's action is not one against the State." *Id.* That exception "has been read narrowly." *EMW Women's Surgical Ctr. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019). To successfully invoke it, "a claim must seek prospective relief to end a continuing violation of federal law." *Id. Ex parte Young* "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). In other words, *Ex parte Young* "require[s] . . . action on the part of the state official." *Id.* at 1416.

As discussed above, *supra* Part I.A.1.b, there are no allegations that any DA has "enforced []or threatened to enforce" the ASA against *anyone*, *Deters*, 92 F.3d at 1415. That dooms deploying *Ex parte Young* to get around sovereign immunity. *Id.*; *Russell*, 784 F.3d at 1046-47.

## II.     Extraordinary Injunctive Relief Is Unwarranted.

### A.     Plaintiffs are unlikely to succeed on the merits.

Plaintiffs have two theories for their preliminary injunction: (1) preemption and (2) vagueness. Dkt. 8-2. Because this Court lacks subject matter jurisdiction it should not reach the merits. But even on the merits, Plaintiffs' facial constitutional challenges are unlikely to succeed.

#### 1.     Plaintiffs' preemption claims are unlikely to succeed.

##### a.     Plaintiffs are unlikely to demonstrate a cause of action.

Plaintiffs lack a cause of action to assert preemption. When a federal-question claim is brought into court, there must be "a legislatively conferred cause of action [which] encompasses [that] particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014); *see Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019). Thus, Plaintiffs must be a part of the "particular class of persons [that] ha[s] a right to sue under this substantive [federal] statute." *Lexmark*, 572 U.S. at 127. That is because "[s]tatutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these rights and obligations, to determine in addition, who may

enforce them and in what manner." *Davis v. Passman*, 442 U.S. 228, 241 (1979). To bring a private request for a pre-enforcement injunction, a plaintiffs' claim must be "authorized by [the] Constitution [or] statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). Plaintiffs have not shown an express, implied, or equitable "private cause[] of action" to obtain a pre-enforcement injunction on preemption grounds. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

No Express Cause of Action. The Supreme Court announced in *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015), that the Supremacy Clause "does not create a cause of action." *Id.* The Clause itself does not "give affected parties a constitutional . . . right to enforce federal laws against the States." *Id.* at 328. Indeed, it does not confer any federal rights—the Clause is just a "rule of decision." *Id.*; *see Lindsey v. Whitmer*, 124 F.4th 408, 415 (6th Cir. 2024). And nowhere within 8 U.S.C. § 1324 is there an express cause of action that allows private plaintiffs a pre-enforcement injunction.

The principal cases Plaintiffs rely on pre-date *Armstrong. See* Dkt. 8-2, at 1. The ability to maintain a suit under those precedents does not survive *Armstong*'s reasoning.

No Implied Cause of Action. Section 1324 also does not create an implied cause of action for Plaintiffs. *See Sandoval*, 532 U.S. at 298-90. A plaintiff "only ha[s] a cause of action under a federal statute if the statute's text provides . . . one." *Keen*, 930 F.3d at 800. To create one, the law's text must "display[] an intent to create" both a "private right" and "a private remedy." *Sandoval*, 532 U.S. at 286; *see Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 903 (6th Cir. 2014). Federal law says nothing about these private plaintiffs' ability to sue on preemption grounds. 8 U.S.C. § 1324. Because Plaintiffs fail to identify any statute with "rights-creating language" permitting their suit, it cannot proceed. *Sandoval*, 532 U.S. at 288.

No Equity Cause of Action. Nor can Plaintiffs rely on equity. True, *Armstrong* stated that an equitable *Ex parte Young* action might be available for certain preemption claims. But the Court limited

that remedy, emphasizing that when Congress vests enforcement authority in the government, that vesting may "establish Congress's 'intent to *foreclose* equitable relief,'" like an *Ex parte Young* injunction. *Armstrong*, 575 U.S. at 328 (emphasis added, citation omitted). In other words, if private parties have no enforcement authority under federal law, then they have no equitable right to assert (pre-enforcement) a Supremacy Clause challenge tied to that federal law. *Cf. Medina v. Planned Parenthood S. Atl.*, 606 U.S. ----, 2025 WL 1758505, at *6-12 (U.S. June 26, 2025) (recognizing the same in the context of Spending-Clause legislation). Allowing a private suit "would not only be in tension with the statutory scheme but also would essentially contradict it," by allowing private parties to wield the preemption sword in a sphere where they have no authority. *Michigan Corr. Org.*, 774 F.3d at 904. For statutory schemes that vest enforcement authority solely with the federal government, it is the United States that must raise preemption to protect its sphere of authority—like in *Arizona v. United States*.

Here, the allocation of enforcement authority in 8 U.S.C. § 1324(c) "displace[s]" Plaintiffs' claim for "equitable relief." *Armstrong*, 575 U.S. at 329. Congress created a federal anti-smuggling law, 8 U.S.C. § 1324, with violations to be prosecuted by the federal U.S. Attorneys, not private parties, 8 U.S.C. § 1329. Plaintiffs do not argue that private parties can enforce § 1324—nor could they. A plaintiff "cannot, by invoking [courts'] equitable powers, circumvent" that statutory limit. *Armstrong*, 575 U.S. at 329. And a court has "no warrant to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of a judge-made action at equity." *Id.* (citation omitted).

Even if this Court finds the remedial scheme in 8 U.S.C. § 1324 has not displaced background equitable principles, Plaintiffs still cannot properly invoke *Ex parte Young*. To successfully invoke *Ex parte Young*, a plaintiff must show the defendant State official has threatened and is "about to commence proceedings." *EMW Women's Surgical Ctr.*, 920 F.3d at 445. As discussed *supra* at Part I.A.1.b, Plaintiffs do not demonstrate that any Defendant has "enforced []or threatened to enforce" the ASA against them, *Russell*, 784 F.3d at 1047. *Ex parte Young* requires "likely" enforcement, not

potential or hypothetical enforcement. *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). Accordingly, Plaintiffs have no avenue into federal court for a pre-enforcement injunction on these claims.

That is not to say that judicial review of Tennessee's law is forever precluded. It just means these Plaintiffs must follow the normal rule that federal constitutional rights are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). They would be free to assert preemption as a defense to any Tennessee proceeding—though as discussed, they are unlikely to be subject to such a proceeding because they do not intend to violate the law. *Supra* Part I.A.1.a.

> **b.** **Plaintiffs are unlikely to succeed on the merits of preemption.**

Plaintiffs' central argument is that federal-immigration law conflict and field preempts the ASA on its face[3] because "[r]egulation of immigration . . . is . . . reserved for the federal government and impermissible for the states." Dkt. 8-2, at 10. But "facial challenges [are] hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). And Plaintiffs' position has been repeatedly disallowed by the Supreme Court and foreclosed by basic elements of preemption doctrine. Plaintiffs fail to even mention controlling Supreme Court precedent of immigration preemption. *See Garcia*, 589 U.S. 191. They instead rely on out-of-date, out-of-circuit cases that do not account for *Garcia*.

The Supremacy Clause allows Congress to "impose its will on the States" by enacting federal laws that preempt state laws. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). But Congress's power to legislate in areas "traditionally regulated by the States" is so "extraordinary" that courts "must assume

---

[3] At first glance, it appears Plaintiffs raise an as-applied challenge because they argue the Court should enjoin Defendants from enforcing the "shelter" aspect of the ASA against *them*. Dkt. 8-2 at 5–6, 25. But they then argue that the law is unconstitutional "in its entirety," (*Id.* at 18), which tracks the Supreme Court's definition of a facial challenge as "really just a claim that the law or policy at issue is unconstitutional in all its applications," *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). And the facial nature of their claim is obvious in the injunction they ultimately seek in the Complaint: to enjoin enforcement of the entire law against anyone. Dkt. 1 at 26 ¶ c. So, their claim should be treated as facial only. *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard*, Ohio, 99 F.4th 840, 846 n.2 (6th Cir. 2024).

Congress does not exercise [it] lightly." *Id.* When federal law intrudes into areas traditionally regulated by states, courts presume that, absent "unmistakably clear language" to the contrary, there is no preemption. *Id.* (citation omitted). Criminal law is chief among these areas. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Garcia*, 589 U.S. at 212. Because criminal law is a "field which the States have traditionally occupied" the "presumption against preemption 'operates with special force.'" *Fenner v. Gen. Motors, LLC*, 113 F.4th 585, 596 (6th Cir. 2024) (quoting *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015)); *see Torres v. Precision Indus., Inc.*, 995 F.3d 485, 491 (6th Cir. 2021). So, Plaintiffs start with a heavy presumption against them.

Plus, Plaintiffs bear the additional burden of winning a facial challenge. Because they claim the ASA is "per se pre-empted by federal law," they must also show that *every* "possible" application of the law is preempted. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987); *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 489 (6th Cir. 2023) (collecting cases), *aff'd sub nom. United States v. Skrmetti*, 145 S. Ct. 1816 (2025). Plaintiffs cannot make that showing.

<u>Lack of Field Preemption</u>. Contrary to Plaintiffs' suggestion, Dkt. 1 ¶¶ 5, 32; Dkt. 8-2, at 10, Congress did not impliedly preempt the entire field of immigration regulation. Field preemption is "rare" and requires the creation of a comprehensive, unified system that can only be effectively administered by a "single sovereign," leaving "no room for supplementary state legislation." *Garcia*, 589 U.S. at 208, 210 (citations omitted).[4] Plaintiffs do not meet that demanding standard.

---

[4] It is not clear that field preemption should exist at all. *See, e.g.*, *Garcia*, 589 U.S. at 214 n.* (Thomas, J., concurring) ("I am also skeptical of field pre-emption . . . ."); Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp. L. Rev. 69, 74-75 (2005) ("With regard to preemption, I think there should be only two situations when there is preemption of state law. One is express preemption. The other is when federal law and state law are mutually exclusive, so it is not possible for somebody to comply with both."). So, a court should hesitate to adopt a sweeping conception of the field preemption doctrine.

Plaintiffs cannot establish that Congress preempted the entire field of "immigration." Dkt. 8-2, at 10. The Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *De Canas v. Bica*, 424 U.S. 351, 355 (1976), *superseded on other grounds by statute as stated in Garcia*, 589 U.S. at 195; *see Torres*, 995 F.3d at 491. Just the opposite, the Court has recognized that "States do have some authority to act with respect to illegal aliens,[5] at least where such action mirrors federal objectives and furthers a legitimate state goal." *Plyler v. Doe*, 457 U.S. 202, 225 (1982).

*Arizona v. United States* is not to the contrary. 567 U.S. 387, 416 (2012). There, the federal government challenged four Arizona laws that both facilitated policing of and criminalized actions related to "illegal immigration." *Id.* But in an exacting analysis, the Court found field preemption only for Arizona's law impacting immigrant registration, not its other laws. *Id.* at 401-09. If Congress had occupied the entire field of "immigration," Dkt. 8-2, at 10, then the Court would have succinctly deemed all four laws preempted. It did not do so. *Arizona* thus shows that rather than occupying anything relating to "immigration" as Plaintiffs suggest, the federal government occupies the limited field of "alien registration." *Garcia*, 589 U.S. at 210.

Even construing Plaintiffs' argument more narrowly as claiming field preemption of transporting and harboring illegal immigrants, it still fails. Plaintiffs must point to something in the "text or structure" of federal laws addressing the transporting and harboring of immigrants that establishes that Congress "left no room for supplementary state legislation." *Garcia*, 589 U.S. at 208 (citation omitted). They cannot do so, because federal law affirmatively invites State participation in this area. It authorizes State law enforcement to make arrests for violations of the federal smuggling law. 8 U.S.C. § 1324(c). It allows State law enforcement to enter "immigrant stations" to enforce State

---

[5] Defendants mean no offense by their use of "alien" and "illegal alien," but these are the terms in federal law. *See United States v. Texas*, 97 F.4th 268, 302 n.1 (5th Cir. 2024) (Oldham, J., dissenting).

law. *Id.* at § 1358. It even contemplates States arresting for and prosecuting trafficking or trafficking-related state offenses. *Id.* at § 1101(a)(15)(T)(i)(III)(aa), (a)(15)(U)(i)(III). The Supreme Court does not find field preemption where there has been an analogous invitation for State participation. *Cf. United States v. Texas*, --- F.4th----, 2025 WL 1836640, at *67 (5th Cir. July 3, 2025) (Oldham, J., dissenting) (collecting field-preemption cases and noting the lack of state participation).

Setting aside that express invitation, the standard for showing that the "text or structure" of federal law "bar[s] all state regulation" is extremely high and is not satisfied here. *Garcia*, 589 U.S. at 210. Comparing this case with *Garcia* shows as much. In *Garcia*, the Court examined whether a state law prohibiting "identity theft" was unconstitutional as applied to "illegal aliens" due to implied field preemption. *Id.* at 195, 208. The federal law there prohibited hiring an immigrant knowing they were unauthorized to work in the United States, 8 U.S.C. § 1324a(a)(1)(A), (h)(3); entering false information in federal I-9 forms, 18 U.S.C. §§ 1028, 1546; or using I-9 forms for improper purposes, 8 U.S.C. § 1324a(b)(5). It also listed civil and criminal punishments for violations. 8 U.S.C. § 1324a(e)(4), (f)(1). It listed exceptions. *Id.* at §1324a(b)(6). It spelled out that the federal officials have the duty to bring civil or criminal actions to enforce the law. *Id.* at § 1324a(e)(1)(D), (f)(2). It specified which judicial entities have jurisdiction: administrative law judges and federal district and appellate courts. *Id.* at § 1324a(e)(2)-(9), (f)(2). Federal law even expressly preempted any efforts by states to sanction employers who employ unauthorized immigrants. *Id.* at § 1324a(h)(2). Despite all that, *Garcia* found no field preemption because the detailed federal regulation still lacked the "comprehensive *and unified* system" needed to oust State regulation. 589 U.S. at 210 (emphasis added).

The federal law at issue here is similar to the un-preempted law in *Garcia*. The law prohibits specific behavior: transporting or harboring immigrants who are in the United States unlawfully. 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii). It lists punishments for violations. *Id.* at § 1324(a)(1)(A)-(B). And it lists exceptions. *Id.* at § 1324(a)(1)(C). It provides that United States Attorneys are responsible for bringing

actions to enforce the law. *Id.* at § 1329. And it specifies that federal district courts have jurisdiction. *Id.* With such a similar law, courts should reach the same conclusion that federal law "plainly does not foreclose all state regulation" in this area. *Garcia*, 589 U.S. at 209.

That's particularly true because human smuggling laws, unlike immigration-registration laws, do not affect foreign policy, so their enforcement does not require a single sovereign. Although the United States is built on the dual sovereignty of federal and state governments, there are certain areas of law where a "single sovereign" is required to ensure "unified" treatment of the legal issue. *Arizona*, 567 U.S. at 401; *Hines v. Davidowitz*, 312 U.S. 52, 65-66 (1941). And immigrant registration is one of those "important and delicate" areas because it "has to do with the protection of the just rights of a country's own nationals when those nationals are in another country." *Hines*, 312 U.S. at 64. If multiple sovereigns are allowed to weigh in on an immigrant's registration, discriminatory treatment could result, which might upset foreign nations, jeopardizing "the welfare and tranquility of *all* the states, and not merely . . . of one." *Id.* at 66 (emphasis added). Or, simply put, mishandling of immigration registration could "lead[] to war." *Id.* at 64. This is why only one sovereign, "the national government," can be allowed to control immigrant registration. *Id.* at 66. But the same cannot be said of state statutes that target the *smugglers* and not the immigrants. Thus, human smuggling, like employee documentation, is not one of those "rare" areas where Congress has decided the federal government alone may tread. *Garcia*, 589 U.S. at 208; *Keller v. City of Fremont*, 719 F.3d 931, 943 (8th Cir. 2013). On the contrary, the federal government, with its "limited resources," would likely "welcome[ Tennessee's] aid in enforcing shared legal norms." *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 334 (5th Cir. 2025).

Yet, Plaintiffs cry "field preemption" for many of the very reasons that the *Garcia* Court rejected. They point to all the ways that Congress has defined the federal crime, set out evidentiary rules, clarified the role for states, and specified both who can prosecute for federal violations and

which courts may review those violations. Dkt. 82-2, at 11-13. As just discussed, the federal framework in *Garcia* did all those things and still did not field preempt state law.

Plaintiffs finally point (at 11-13) to several pre-*Garcia* appellate court decisions. Whatever persuasive value these out-of-circuit cases once had, they say nothing about a *Garcia*-governed world. Indeed, it is unclear whether those courts would reach the same decision post-*Garcia*. *See Paxton v. Annunciation House, Inc.*, --- S.W.3d ----, 2025 WL 1536224, at *19 (Tex. May 30, 2025) (upholding Texas's human-smuggling law). Perhaps most importantly, Plaintiffs identify nothing equivalent to the foreign policy concerns in immigration registration that would require single-sovereign regulation of smugglers as opposed to dual-sovereign regulation by the federal government and the States.

At bare minimum, Plaintiffs seek to "extend the constitutional guarantees" of the Supremacy Clause "to new territory"—a new field—which "suggest[s] that the key premise of a preliminary injunction—a showing of a likelihood of success on the merits—is missing." *L. W.*, 83 F.4th at 471.

Lack of Conflict Preemption. It is a textbook rule that "[t]he mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 211. That is why the Sixth Circuit requires "a 'high threshold'" to succeed in a conflict preemption claim. *Dayton Power and Light Co. v. FERC*, 126 F.4th 1107, 1128 (6th Cir. 2025) (citation omitted); *Fenner*, 113 F.4th at 594. A "state law is 'conflict' preempted *only* 'to the extent it *actually conflicts* with federal law, that is, . . . the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" *Fenner*, 113 F.4th at 594 (citation omitted) (emphasis added). On top of the high threshold for conflict preemption, the presumption against preemption, and the heavy burden of proving a facial challenge, Plaintiffs face an additional barrier—this is a pre-enforcement challenge. "Without the benefit of a definitive interpretation from . . . state courts, it would be inappropriate to assume [a new state law] will be construed in a way that creates a conflict with federal law." *Arizona*, 567 U.S. at 415. The Sixth Circuit routinely denies such

challenges when only *one* of these components is present. *L. W.*, 83 F.4th at 489 (denying a facial challenge); *Friends of George's*, 108 F.4th at 435 (denying a pre-enforcement challenge); *Fenner*, 113 F.4th at 598 (denying a consumer-protection preemption challenge). Taken together, Plaintiffs lose if it is *possible* to interpret Tennessee's ASA in even one way that does not conflict with federal law.

Under that standard, Plaintiffs' facial challenge never leaves the starting gate. They concede that Tennessee law "generally parallels the federal provision." Dkt. 8-2, at 11. That acknowledgment dooms their facial challenge, which again, requires Plaintiffs to prove that the state law conflicts with federal law in *every* application. After all, mere overlap with federal law does not state a claim for conflict preemption. *Garcia*, 589 U.S. at 211; *California v. Zook*, 336 U.S. 725, 733 (1949); *see Fenner*, 113 F.4th at 594; *Zyla Life Scis.*, 134 F.4th at 335. So, given that Plaintiffs concede the laws are mostly the same, Tennessee's law cannot be facially invalid. *Id.*

The real thrust of Plaintiffs' argument is their attempt to find isolated conflicts with federal law. In their view, State law sweeps "broader than" federal law in narrow circumstances. Dkt. 8-2 at 14. That is not enough to show facial invalidity. And regardless, it is not accurate. Plaintiffs' position "seek[s] out conflicts between state and federal regulation where none clearly exists." *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990). Basic principles of statutory interpretation resolve any theoretical conflict.

**1.** Plaintiffs claim the biggest difference between the federal and Tennessee laws is the way in which they command not to "conceal, harbor, or shield [someone] from detection." *Compare* 2025 Tenn. Pub. Acts, ch. 424, § 5(a)(2), *with* 8 U.S.C. § 1324(a)(1)(A)(iii). Tennessee defines "harbor" as "to provide shelter or to conceal." 2025 Tenn. Pub. Acts, ch. 424, § 5(d). Plaintiffs believe that definition criminalizes the mere provision of shelter, while federal law only criminalizes "conduct that . . . prevent[s] authorities from detecting the noncitizens' presence." Dkt. 8-2, at 15 (citation omitted). They are wrong.

A Tennessee court would interpret the human smuggling law to mirror the scope of its federal

counterpart. Tennessee's statute is aimed at professional smugglers—it requires a violator to "*know[]*" that the alien's presence has been determined illegal by ICE, and yet still *intentionally* harbor them for commercial gain. 2025 Tenn. Pub. Acts, ch. 424, § 5(a) (emphasis added). An "intentional" mens rea "is the highest, most demanding mental state." *Supra* p. 8 (quoting *Rice*, 184 S.W.3d at 684). That mens rea forecloses Plaintiffs' argument. *Contra* Dkt. 8-2, at 14-15. Only by knowing ICE is after an alien, and yet still intentionally concealing them, would a violator "facilitate unlawful presence by preventing detection by authorities." *Contra id.* at 15. So, the ASA requires the same intent to conceal as found in federal law. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998); *United States v. Zheng*, 87 F.4th 336, 345 (6th Cir. 2023); *see Coleman*, 341 S.W.3d at 240.

The statutory context confirms as much. *First*, consider the name of the felony—"human smuggling." Tennessee courts are well acquainted with the concept of smuggling and treat it as synonymous with "concealing" someone. *See, e.g.*, *State v. Putt*, 955 S.W.2d 640, 643 (Tenn. Crim. App. 1997). *Second*, the adverbial clause "from detection" modifies not just "shield" but also "harbor" and "conceal." 2025 Tenn. Pub. Acts, ch. 424, § 5(a)(2). *Third*, "conceal" is repeated in the definition of "harbor." *Id.* § 5(d). The "deliberate[]" repeated use of conceal must "ha[ve] a specific meaning and purpose," so it should be read as imposing an intention to conceal on any act of harboring. *State v. Hawk*, 170 S.W.3d 547, 551 (Tenn. 2005). *Fourth*, Tennessee's pattern jury instructions confirm that state courts already understand "harbor" to mean "to shelter . . . a person for the purpose of so concealing [him] [her]." 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 3.03, 8.04; *see State v. Jones*, 341 S.W.3d 318, 321 (Tenn. Crim. App. 2010) (relying on pattern instructions to interpret statutes).

Finally, Tennessee imposes a stringent constitutional avoidance requirement. *Planned Parenthood of Middle Tenn.*, 38 S.W.3d at 7; *Brooks v. Bd. of Pro. Resp.*, 578 S.W.3d 421, 426 (Tenn. 2019). So, a Tennessee court would harmoniously interpret State law to avoid conflict with federal law.

**2.** Moving on from "shelter," Plaintiffs speculate that the law "appears to" criminalize

"transporting and harboring people who . . . obtained legal status" to be in the United States. Dkt. 8-2, at 15. Not so. As already explained, the sweep of the law requires a violator *to have knowledge* that the immigrant's presence is unlawful as determined by ICE. It in no way implicates persons who have legal status. And it says nothing at all about a change in legal status. Tennessee law bars transporting or harboring an individual "while knowing the individual *has* illegally entered or remained in the United States." 2025 Tenn. Pub. Acts, ch. 424, § 5(a). "Has . . . entered or remained" is a present-perfect tense verbal phrase. *Id.* And legislators "employ the present-perfect tense to describe situations 'involv[ing] a specific change of state' that produces a 'continuing result.'" *Hewitt v. United States*, 605 U.S. ----, 2025 WL 1758501 *5 (U.S. June 26, 2025) (citation omitted). "When used in this way, the present-perfect tense conveys to a listener that the event in question *continues to be true or valid*." *Id.* at *6 (emphasis added). Here, the law prevents transporting or harboring an individual who illegally entered or remained in the United States and *continues* to be here illegally. *Id.* at *5-6. Proving the point, Causey uses present-perfect tense to the same effect in saying his tenant "has acquired" legal status. Dkt. 8-4 ¶ 5. That straightforward reading of the ASA's plain text shows Plaintiffs' concerns are misplaced.

**3.** Plaintiffs also claim the law impermissibly expands the role of state officers by allowing state prosecutions for human smuggling where the federal counterparts in 8 U.S.C. § 1324(c) and § 1329 only mention federal prosecutions. Dkt. 8-2, at 15-16. *Garcia* shows why that arrangement does not cause a preemption problem. In *Garcia*, 8 U.S.C. § 1324a(e)(1)(D), (f)(2) only mention allowing federal prosecutions. But the Supreme Court had no problem "[a]llowing [states] to bring prosecutions like these." *Garcia*, 589 U.S. at 211-12. Every case that Plaintiffs rely upon was decided pre-*Garcia*. Dkt. 8-2, at 16 (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1025 (9th Cir. 2013); *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012)).

**4.** Plaintiffs say the law's usage of ICE determinations "creates a new immigration classification Congress never contemplated." Dkt. 8-2, at 16. Not true. First, ICE has authority to

arrest individuals it deems unlawfully in the United States. 8 U.S.C. §§ 1226(a), 1357(a)(2); *supra* pp. 3-4. Second, in the context of federal seizure and forfeiture proceedings, "[o]fficial records of [ICE]" and "[t]estimony, by [ICE] immigration officer[s]" can also be used as "prima facie evidence" that an "alien had not received prior official authorization" to enter or remain in the United States. 8 U.S.C. § 1324(b)(3)(B)-(C). Far from creating a new classification, the human-smuggling statute relies on ICE's federally codified authority to make such determinations.

**5.** Plaintiffs suggest that Tennessee's law lacks the "evidentiary guidance" about what records can be used as prima facia evidence that a person is unlawfully in the United States. Dkt. 8-2, at 17. But the law's reliance on ICE determinations accomplishes exactly that. *See* 8 U.S.C. § 1324(b)(3)(B).

**6.** Plaintiffs accuse Tennessee of imposing sentencing requirements that exceed those of federal law. Dkt. 8-2, at 17. That may be true, but it is irrelevant. Criminal law usually lacks the foreign-policy concerns that might require governance by a single sovereign. *Cf. Hines*, 312 U.S. at 64. Thus, federal and state criminal laws frequently impose different punishments for the same or similar crimes as a natural consequence of our dual-sovereign system. *See Gamble v. United States*, 587 U.S. 678, 685-88 (2019); *see id.* at 758-59 ("Some suggest that 'the federal government has [now] duplicated virtually every major state crime.'" (Gorsuch, J., dissenting) (citation omitted)); *United States v. Wheeler*, 435 U.S. 313, 330-32 (1978), *superseded by statute on other grounds as recognized in United States v. Lara* 541 U.S. 193 (2004); *cf. Torres*, 995 F.3d at 492-95 (finding a Tennessee law authorizing non-backpay damages to an alien did not obstruct the function of federal laws that would not require non-backpay damages). That does not mean a State's punishment obstructs federal law. *Garcia*, 589 U.S. at 212.

In arguing the contrary, Plaintiffs again miscite *Arizona*. That case found that "inconsistency . . . with respect to penalties" simply "underscore[d] the reason for *field* preemption" of alien registration. 567 U.S. at 402-03 (emphasis added). Inconsistent penalties did not factor in the *conflict* analysis. *Id.* Nothing in *Arizona* changes the well-settled rule that different sovereigns may impose

different penalties for the same conduct. *See Gamble*, 587 U.S. at 685-88; *Wheeler*, 435 U.S. at 330-32.

**7.** Plaintiffs' final volley is that even the parts of the ASA that "directly parallel the federal analogue are conflict preempted" because they might diminish the enforcement discretion and "frustrate federal policies." Dkt. 8-2, at 18 (citing *Arizona*, 567 U.S. at 402). But, that position defies basic preemption doctrine. "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (Lead Op. of Gorsuch, J.). Preemption is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Garcia*, 589 U.S. at 202. As the Supreme Court put it, the "federal system would be turned upside down if [courts] were to hold that federal criminal law preempts state law whenever they overlap, and there is no basis for inferring that federal criminal statutes preempt state laws whenever they overlap." *Id.* at 212. The mere "possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Id.*; *see Zyla Life Scis.*, 134 F.4th at 335. If anything, to the extent the Tennessee parallels federal law, it "pose[s] reduced risk to federal enforcement priorities as compared to non-parallel standards, which regulate the same primary conduct *in different ways.*" *Zyla Life Scis.*, 134 F.4th at 335.

Plaintiffs' whole argument centers around legal theories that have been abrogated by subsequent Supreme Court precedent. They repeatedly over-read *Arizona*. And they make no serious effort to interpret Tennessee law. Finally, to the extent there is doubt about specific applications of the ASA, the courts remain open. Any problem "could be solved with the scalpel of as-applied relief in a future case as opposed to the machete of global invalidation." *United States v. Texas*, 97 F.4th 268, 300 (5th Cir. 2024) (Oldham, J., dissenting). Their *facial* pre-enforcement preemption challenge fails. *See L. W.*, 83 F.4th at 489; *Friends of George's*, 108 F.4th at 435; *Fenner*, 113 F.4th at 594-96.

## 2. Plaintiffs' vagueness claims are unlikely to succeed.

Plaintiffs suggest that the ASA is unconstitutionally vague. Dkt. 1 ¶¶ 67-75. *Supra* p. 16 n.3.

To the extent they raise a facial challenge, it immediately fails because Plaintiffs cannot "demonstrate that the law is impermissibly vague in *all* of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 497 (1982). And to even raise a facial challenge, Plaintiffs "bear[] the burden of establishing that the statute is vague as applied to [their] particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (citation omitted). Plaintiffs' claims fail on every front.

### a. The law is constitutional as applied to Plaintiffs.

The ASA is not vague as applied to Plaintiffs. Plaintiffs have adequate notice of what the law requires, and they do not allege any discriminatory enforcement, so the law is constitutional.

The Due Process Clause's "void for vagueness" doctrine ensures only that a "person of ordinary intelligence" has "a reasonable opportunity to know what is prohibited" by the law. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[P]erfect clarity and precise guidance have never been required . . . ." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Indeed, the law is full of "flexible" "standards," *id.*, and "[c]lose cases can be imagined under virtually any statute," *United States v. Williams*, 553 U.S. 285, 306 (2008). The vagueness doctrine thus serves a narrow purpose: to protect against those rare laws that altogether fail "to give ordinary people fair notice of the criminalized conduct" or are "so standardless as to invite arbitrary enforcement." *United States v. Parrish*, 942 F.3d 289, 295 (6th Cir. 2019) (cleaned up, citation omitted).

Fair Notice to Plaintiffs. Plaintiffs have fair notice of the requirements of Tennessee law. Their vagueness claims are based on improbable mis-readings of the ASA. Their first challenge—to the requirement that they "know[]" ICE has determined an individual to be unlawfully in the United States—proves the law is *not* vague. 2025 Tenn. Pub. Acts, ch. 424 § 5(a). Plaintiffs admit that ICE has authority to make arrests and issue notices for removal proceedings, but they allege confusion because ICE shares this authority with other agencies, like Customs and Border Protection (CBP).

27

Dkt. 8-2, at 20. But the law does not refer to multiple agencies—it refers to ICE.

The ASA's scienter requirement eliminates any lingering constitutional concerns. Scienter requirements "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.*, 455 U.S. at 499; *see Boyce Motor Lines v. United States*, 342 U.S. 337, 342 (1952). This is because, "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Screws v. United States*, 325 U.S. 91, 102 (1945). And here, the law requires knowledge of an ICE determination, which puts Plaintiffs on notice of what kind of "conduct is at risk." *Parrish*, 942 F.3d at 295. The upshot: Plaintiffs have fair notice of what the law requires them to know about ICE—they simply, by their own allegations, do not have the necessary mens rea.[6] *Id.*

Plaintiffs also claim confusion about if the law prohibits smuggling individuals who have obtained legal status. As already discussed, the ASA requires knowledge that the person is here in violation of an ICE determination. *Supra* pp. 8-9. Confirming this point, the use of present-perfect tense—"has illegally entered or remained"—means it does not include these individuals. *Supra* p. 24. That the Court has to construe the provision does not make it vague. *Grayned*, 408 U.S. at 110-12.

Finally, Plaintiffs argue it is impossible to know what constitutes harboring. As discussed, the plain reading of "harbor" means to provide shelter *from detection*. *Supra* pp. 22-23. It is a concealment requirement. *Id.* Plaintiffs know the difference between hiding and not hiding someone; they simply do not hide people. Dkt. 1 ¶ 19. The law's plain text gives them fair notice of that fact.

---

[6] Plaintiffs also emphasize that ICE is not responsible for making *final* decisions about an individual's immigration status. Dkt. 8-2, at 20. That is not the point of this statute. It is not targeting the legality of the immigrant's presence—it is targeting the intent of the smuggler. *Cf.* 18 U.S.C. § 1071. Whether the fugitives or victims are ultimately found to be here unlawfully is irrelevant. What matters is whether the accused knew about the ICE warrant or NOA and yet still tried to conceal them. *Cf. id.*

Discriminatory Application by Law Enforcement. Plaintiffs do not even allege—let alone provide any evidence—that there will be discriminatory enforcement. Yet evidence of discriminatory enforcement is critical, because courts reject vagueness challenges when "no evidence has been, or could be, introduced to indicate whether the [law] has been enforced in a discriminatory manner" against them. *Vill. of Hoffman Ests.*, 455 U.S. at 503.

Plaintiffs' reliance on *Johnson v. United States*, 576 U.S. 591 (2015) and *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553 (6th Cir. 1999), is misplaced. Dkt. 8-2, at 19. Both cases dealt with capacious undefined terms ("ordinary case" in *Johnson*, "reasonable radius" in *Belle Maer Harbor*). There are no such elastic terms in the ASA that "confer . . . a virtually unrestrained power to arrest and charge persons with a violation." *Belle Maer Harbor* 170 F.3d at 558 (citation omitted). The ASA's key terms are not susceptible to that type of wholly subjective and unrestrained enforcement. *Id.*

### b.     The law is not facially vague.

Even if this Court were to reach the facial challenge, it fails. Again, a facial challenge requires Plaintiffs to "demonstrate that the law is impermissibly vague in *all of its applications*." *Vill. of Hoffman Ests.*, 455 U.S. at 497; *United States v. Hansen*, 599 U.S. 762, 769-70 (2023). Plaintiffs do not challenge as vague the *vast majority* of the ASA, which mirrors the federal law. Those unchallenged applications doom their facial claim. To find otherwise, a court would have to announce that the requirements of *federal* law are vague. Something courts have repeatedly declined to do. *Bland v. United States*, 299 F.2d 105, 109 (5th Cir. 1962); *Martinez-Quiroz v. United States*, 210 F.2d 763, 764 (9th Cir. 1954); *see United States v. Ye*, 588 F.3d 411, 416-17 (7th Cir. 2009) ("Congress could not have been clearer: it said that concealing, harboring, or shielding from detection an alien is unlawful conduct . . . .").

Even accepting Plaintiffs' misconstruction of the ASA, there are numerous instances where it is unambiguous. A person would have fair notice of ICE's determinations—if they learn of an ICE warrant, an ICE NOA, or the ICE "Most Wanted" webpage. *Supra* p. 4. Defendants maintain that is

how this statute is supposed to operate, as it targets professional human smugglers. Requiring this knowledge also alleviates any concerns for the "has illegally entered or remained" provision because ICE determinations of this type contain dates indicating the determination is current. *Supra* p. 4. The same would also be true for "harbor" because someone who hides an individual after learning of a warrant or NOA would satisfy the intent to conceal based on an ICE action. *Supra* pp. 4, 22-23.

Plaintiffs push back by hypothesizing about a situation where "ICE made no actual determination." Dkt. 8-2, at 21. That is a red-herring. The text of the ASA is contingent on ICE making a determination. Plaintiffs' atextual hypotheticals do not render the law facially vague. And, in any event, the law does not provide officers with the "absolute discretion . . . to decide what activities constitute" a violation. *City of Chicago v. Morales*, 527 U.S. 41, 60-61 (1999) (citation omitted). To the contrary, it simply directs police to arrest smugglers who intentionally shelters from detection individuals who the smuggler *knows* ICE determined are not in the United States lawfully. 2025 Tenn. Pub. Acts, ch. 424 § 5(a)(2). Thus, the facial vagueness challenge is unlikely to succeed.

### B. The other equitable factors weigh against extraordinary injunctive relief.

Plaintiffs' lack of likely merits success suffices to foreclose relief. But each of the remaining preliminary-injunction factors likewise counsel granting preliminary injunctive relief to Plaintiffs.

<u>Lack of Irreparable Harm</u>. "To merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted). The harm in this case is pure speculation. Plaintiffs moved to enjoin enforcement of a new law before it even went into effect and certainly before anyone threatened to apply it to them. They have provided no evidence that any Tennessee official—let alone Defendants—agrees with their atextual interpretation of the law and plans to use it against them. They say only that they are afraid they might be prosecuted. Dkt. 8-3 ¶¶ 11, 19; Dkt. 8-4 ¶ 9; Dkt. 8-5 ¶ 6. "[F]ear" of a "hypothetical threat of prosecution is not an 'immediate,' 'irreparable' injury that warrants the

'extraordinary remedy' of a preliminary injunction." *D.T.*, 942 F.3d at 327 (citation omitted).

<u>Weight of Equities</u>. In official-capacity lawsuits, the remaining factors for injunctive relief merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, denying preliminary injunctive relief is in the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *CASA*, 2025 WL 1773631, at *15 (citation omitted). Indeed, "public interest . . . *favors* the state when a challenged law is likely constitutional," *Online Merchs.*, 995 F.3d at 560, which as discussed above, the ASA is. *Supra* Part II.A.

Plaintiffs argue public interest requires an injunction because a few *non-party* landlords might be evicting tenants based on a misreading of the law. Dkt. 8-6, at 10-11. That potential harm does not come close to measuring up to the interests the law was created to protect—the interests of the immigrants, particularly children, who are being smuggled by cartels and suffering "unimaginable things." Tenn. H. Floor Session, at 28:57-29:51 (Tenn. Apr. 22, 2025), https://tinyurl.com/avymaffv.

## III. Any Grant of Preliminary Relief Should Be Limited in Scope.

Plaintiffs fail each preliminary-injunction factor and should not receive any relief. But, if an injunction is issued, "it should be no broader than necessary to remedy the harm at issue." *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002); *CASA*, 2025 WL 1773631, at *11-12, *15.

### A. Any injunction should cover only the allegedly unconstitutional component of the ASA.

Courts generally "enjoin only the unconstitutional applications of a statute" or "sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006). Tennessee law embraces that principle. Tenn. Code Ann. § 1-3-110. And the Supreme Court has recently reiterated that injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *CASA*, 2025 WL 1773631, at *11.

Complete relief to the Plaintiffs would be narrow in this case. To the extent the Court interprets the ASA to conflict with federal law at the periphery, it should enjoin only those applications

of the law. *See United States v. Grace*, 461 U.S. 171, 180-83 (1983) (holding a statute unconstitutional only "insofar as" it extended to public sidewalks); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504-05 (1985) (finding statute unconstitutional only "insofar as the word 'lust' is taken to include normal interest in sex"). And to the extent the Court finds certain applications of the statute unconstitutionally vague, it should "enjoin" only those allegedly "unconstitutional *applications* of the law while preserving the other valid applications of the law." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342 (6th Cir. 2009).

Not only that, but the Court should also limit the injunctive relief to those DAs who have prosecutorial authority over Plaintiffs. *Supra* Part I.A.3; *CASA*, 2025 WL 1773631, at *6-7.

## B. The Court should not enter classwide relief.

Even considering whether a broader remedy is permissible because of the class action context, Plaintiffs would still not be eligible because they (1) have not moved for class certification, and (2) have not shown they are likely to satisfy the rigorous requirements of Fed. R. Civ. P. 23.

Pre-certification injunctive relief requires a motion for class certification. The Court cannot provide injunctive relief to persons with no legal status in the case. And class members acquire "legal status" by way of a motion for certification. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). The class exists, whether properly certified by the district court or not, when the class certification motion is filed. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404-07 (1980). Referencing a class action in a complaint alone is not enough to create independent legal status for the class—the plaintiff must actually define the contours of the class through a motion for certification. *Fontenot v. McCraw*, 777 F.3d 741, 751 (5th Cir. 2015); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011); *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001); *Nestler v. Bd. of L. Examiners of State of N. C.*, 611 F.2d 1380, 1382 (4th Cir. 1980). The motion for class certification is the "formal mechanism for aggregating claims," *United States v. Sanchez-Gomez*, 584 U.S. 381, 389 (2018), that gives the class an independent interest in the case and

32

enables courts to provide them relief. Because the Plaintiffs have not moved for certification, classwide relief is not available.

Plaintiffs quote *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025), to claim that courts "need not decide whether a class should be certified" before granting classwide injunctive relief. Dkt. 8-2, at 25. But the procedural posture of *A.A.R.P.* was *critically* distinct—the plaintiffs had already filed a motion for class certification. *A.A.R.P. v. Trump*, No. 1:25-CV-059-H, 2025 WL 1148140, at *1 (N.D. Tex. Apr. 17, 2025), *cert. granted, judgment vacated*, 145 S. Ct. 1364 (2025). *A.A.R.P.* itself confirms this understanding by relying on a legal treatise, *see* 145 S. Ct. at 1369, that says, "[A] court may issue a classwide preliminary injunction in a putative class action suit *prior to a ruling on the class certification motion*," 2 Newberg & Rubenstein on Class Actions § 4:30 (6th ed. June 2025 Update) (emphasis added). By failing to move for certification, Plaintiffs deprive the putative class of the legal status necessary for injunctive relief, and nothing in *A.A.R.P.* changes that.

<u>Pre-certification injunctive relief requires a showing of the right to certification.</u> To obtain a preliminary injunction, a plaintiff must make a "clear showing" of standing, *Murthy*, 603 U.S. at 58, and a "clear showing" of entitlement to relief, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It follows that to obtain a *classwide* injunction, a plaintiff must make a *clear showing* that a class will likely be certified. To hold otherwise would enable courts to bypass *CASA*'s core holding. And Plaintiffs cannot show a likelihood of certification here.

Class actions are "the exception, not the rule" and are subject to strict requirements under Fed. R. Civ. P. 23, which "serves as a gatekeeper to class certification." *In re Ford Motor Co.*, 86 F.4th 723, 725 (6th Cir. 2023). This requires a "'rigorous' examination to ensure that the class satisfies" every requirement of Rule 23, *Speerly v. Gen. Motors, LLC*, --- F.4th-----, 2025 WL 1775640, at *4 (6th Cir. June 27, 2025) (en banc) (citation omitted), even at the preliminary injunction stage, *CASA*, 2025 WL 1773631, at *18 (Alito, J., concurring). Plaintiffs cannot merely allege that Rule 23 is satisfied; they

must offer "significant evidentiary proof." *In re Ford Motor Co.*, 86 F.4th at 726 (cleaned up, citation omitted). Pre-certification relief here is inappropriate because (1) the requested relief exceeds the scope of the class and the ASA, and (2) Plaintiffs are unlikely to prove *any* of Rule 23(a)'s requirements.

**1.** When, as here, a plaintiff relies on Rule 23(b)(2), the plaintiff must seek declaratory or injunctive relief "premised on a ground that is applicable *to the entire class*." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (emphasis added, citation omitted). Plaintiffs define the class as "persons in Tennessee who . . . provide shelter to immigrants." Dkt. 1 ¶ 53. But quizzically, they then seek to enjoin the *entire* ASA, not just the prohibition against sheltering from detection. Dkt. 8-2, at 25. That request goes too far. *Gooch*, 672 F.3d at 428. It would be nothing but a disguised universal injunction. *CASA*, 2025 WL 1773631, at *18 (Alito, J., concurring).

And even if only the sheltering provision is enjoined, Plaintiffs' requested relief would still be excessive because the class exceeds the ASA itself. Plaintiffs define the class to encompasses those who "receive some form of financial benefit," Dkt. 1 ¶ 53, but that means the class includes individuals lacking a for-profit *purpose*, which is required to violate the ASA, *supra* pp. 7-8. And Plaintiffs' class definition lacks both mens rea requirements in the ASA—the *intent* to conceal and the *knowledge* that ICE has determined someone unlawfully in the United States. *Compare* Dkt. 1 ¶ 53, with 2025 Tenn. Pub. Acts, ch. 424 § 5(a)(2). So, by enjoining Defendants from enforcing the ASA against the class, a Court would be enjoining them from enforcing the law against people who are not even subject to it, a classic feature of the universal injunction. *CASA*, 2025 WL 1773631, at *11.

**2.** In any event, Plaintiffs are not likely to succeed in showing entitlement to certification under Rule 23(a). Plaintiffs do not attempt the "rigorous" argument for likelihood of certification on any point, *In re Ford Motor Co.*, 86 F.4th at 726 (citation omitted), much less offer the "clear showing" of evidence needed for obtaining classwide injunctive relief, *Enchant Christmas*, 958 F.3d at 539. Four "threshold safeguards" in Rule 23(a)—"numerosity, commonality, typicality, and adequacy"—must

"all" be met. *Id.* And Plaintiffs do not satisfy that rule.

*First*, they lack numerosity and adequacy. For numerosity, substantial numbers of people must be affected. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). Plaintiffs allege a class of "hundreds if not thousands." Dkt. 1 ¶ 54. But they provide no clear showing for these numbers. *Enchant Christmas*, 958 F.3d at 539. The only potential members identified—Doe and Causey—do not even fall within the class definition: Neither alleges that ICE has determined that the people they shelter are here unlawfully. Dkt. 1 ¶¶ 26, 29, 53. Without proof of substantial numbers of affected individuals, Plaintiffs fail the numerosity threshold. *Whirlpool*, 722 F.3d at 852 And, because the putative class representatives are not part of the class, they are inadequate representatives. *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404 (1977).

Second, Plaintiffs have not shown commonality or typicality. "To be common, a question must (1) yield a common answer with common evidence and (2) meaningfully progress the lawsuit." *Speerly*, 2025 WL 1775640, at *4. This requirement "tend[s] to merge" with typicality, which requires that the common claims are "interrelated" to and "fairly encompass" the claims of all class members. *Pickett v. City of Cleveland*, 140 F.4th 300, 308 (6th Cir. 2025). To show both, Plaintiffs rely largely on their legal claims. Dkt. 1 ¶¶ 55-56. But that is not enough, Plaintiffs have to "walk through each cause of action," "identify relevant elements," and show how the issue "affects at least one contested element in each cause of action." *Speerly*, 2025 WL 1775640, at *5. As for typicality, the would-be representatives do not even share the same reasons for providing shelter. Causey wants rent, and Doe wants to be with his family. Dkt. 1 ¶¶ 25, 29. There is no likelihood of success under Rule 23.

## CONCLUSION

For these reasons, Plaintiffs motion for preliminary injunction should be denied.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ *Miranda Jones*
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General
ANDREW DENNING (BPR# 042208)
Assistant Attorney General
Constitutional Defense Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 521-0417
Miranda.Jones@ag.tn.gov
Andrew.Denning@ag.tn.gov
*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 14, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties below:

Michael C. Holley
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS
COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
spring@tnimmigrant.org

Rupa Bhattacharyya
Gregory Briker
Elizabeth Cruikshank
William Powell
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 661-6629
Fax: (202) 661-6730
rb1796@georgetown.edu
gb954@georgetown.edu
erc56@georgetown.edu
whp25@georgetown.edu

Michelle Lapointe
Suchita Mathur
Chris Opila
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7523
Fax: (202) 742-5619
mlapointe@immcouncil.org
smathur@immcouncil.org
copila@immcouncil.org
*Counsel for Plaintiffs*

s/ *Miranda Jones*
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General