IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SOUTHEASTERN SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA *et al.*,<br><br>   Plaintiffs,<br><br> v.<br><br>STEVEN R. FINNEY *et al.*,<br><br>   Defendants. | Case No.: 3:25-cv-684 |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

ARGUMENT........................................................................................................................1

    I.    Tennessee Courts Would Not Adopt Defendants' Interpretation of Section 5. .....................1

    II.    Defendants' Threshold Arguments Fail. ...............................................................................3

        A.    Plaintiffs Have Standing to Challenge Section 5. ..................................................3

        B.    Sovereign Immunity Does Not Bar This Suit. .......................................................6

        C.    Plaintiffs Have a Cause of Action. ........................................................................6

    III.    Plaintiffs Are Likely to Succeed on the Merits.......................................................................7

        A.    Section 5 Is Preempted. ..........................................................................................7

        B.    Section 5 Is Unconstitutionally Vague. ..................................................................9

    IV.    The Court Should Enjoin All of Section 5 as to All Members of the Putative Class...........10

CONCLUSION ..................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025)..................................................................................................10

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)......................................................................................................7

*Allen v. United States*,
  83 F.4th 564 (6th Cir. 2023).......................................................................................1, 2

*Arizona v. United States,*
  567 U.S. 387 (2012)...................................................................................................7, 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)...................................................................................................6, 7

*Barnhart v. Thomas*,
  540 U.S. 20 (2003)........................................................................................................1

*Bryant v. Woodall*,
  1 F.4th 280 (4th Cir. 2021)...........................................................................................5

*Byrd v. Tenn. Wine & Spirits Retailers Ass'n*,
  883 F.3d 608 (6th Cir. 2018).......................................................................................10

*Cal. Coastal Comm'n v. Granite Rock Co.*,
  480 U.S. 572 (1987)......................................................................................................8

*Castillo v. Bondi*,
  140 F.4th 777 (6th Cir. 2025).......................................................................................9

*Christian Healthcare Ctrs., Inc. v. Nessel*,
  117 F.4th 826 (6th Cir. 2024).......................................................................................5

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)........................................................................................................9

*Ex parte Young*,
  209 U.S. 123 (1908)......................................................................................................6

*Exodus Refugee Immigr., Inc. v. Pence*,
  165 F. Supp. 3d 718 (S.D. Ind.)....................................................................................7

*Falls v. Goins*,
  673 S.W.3d 173 (Tenn. 2023).......................................................................................2

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)......................................................................................................4

*FEC v. Cruz*,
  596 U.S. 289 (2022)......................................................................................................6

*Fla. Immigrant Coal. v. Att'y Gen.*,
  No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ........................................7

*Free Speech Coal., Inc. v. Skrmetti*,
  761 F. Supp. 3d 1132 (W.D. Tenn. 2024) ..................................................................................4

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)...................................................................................................................7

*Kansas v. Garcia*,
  589 U.S. 191 (2020)........................................................................................................ 7, 8, 9

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
  95 F.4th 1019 (6th Cir. 2024)...............................................................................................4, 5

*Lockhart v. United States*,
  577 U.S. 347 (2016).................................................................................................................2

*Marouf v. Lynch*,
  811 F.3d 174 (6th Cir. 2016)................................................................................................9, 10

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016) ...................................................................................................4

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014)................................................................................................6, 7

*Padres Unidos de Tulsa v. Drummond*,
  No. 24-CV-0511, 2025 WL 1573590 (W.D. Okla. June 3, 2025) ..........................................7

*Patton v. Fitzhugh*,
  131 F.4th 383 (6th Cir. 2025)................................................................................................10

*Paxton v. Annunciation House, Inc.*,
  No. 24-0573, 2025 WL 1536224 (Tex. May 30, 2025).........................................................5

*Richards v. Vand. Univ. Med. Ctr.*,
  706 S.W.3d 319 (Tenn. 2025)..................................................................................................1

*Russell v. Lundergan-Grimes*,
  784 F.3d 1037 (6th Cir. 2015) .................................................................................................6

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ...................................................................................................5

*Speech First, Inc. v. Schlissel*,
  939 F.3d 756 (6th Cir. 2019) ...................................................................................................4

*State v. Capps*,
  No. E2023-01419, 2024 WL 5135477 (Tenn. Crim. App. Dec. 17, 2024).........................2

*State v. Deberry*,
  651 S.W.3d 918 (Tenn. 2022).................................................................................................1

*State v. Tester*,
  879 S.W. 2d 823 (Tenn. 1994)..............................................................................................10

*Stevens v. City of Columbus*,
  No. 21-3755, 2022 WL 2966396 (6th Cir. July 27, 2022) .....................................................9

iii

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)...............................................................................................................3

*United States v. Acosta de Evans*,
   531 F.2d 428 (9th Cir. 1976) ................................................................................................2

*United States v. Fitzgerald*,
   906 F.3d 437 (6th Cir. 2018) ................................................................................................9

*United States v. Frei*,
   995 F.3d 561 (6th Cir. 2021) ................................................................................................3

*United States v. Salerno*,
   481 U.S. 739 (1987)...............................................................................................................8

*United States v. Salter*,
   346 F.2d 509 (6th Cir. 1965) ................................................................................................3

*United States v. Texas*,
   No. 24-50149, 2025 WL 1836640 (5th Cir. July 3, 2025) ......................................................8

*Universal Life Church Monastery Storehouse v. Nabors*,
   35 F.4th 1021 (6th Cir. 2022) ............................................................................................5, 6

*Virginia v. Am. Booksellers Ass'n*,
   484 U.S. 383 (1988)...............................................................................................................5

*Welty v. Dunaway*,
   No. 3:24-CV-0768, 2025 WL 2015454 (M.D. Tenn. July 18, 2025) ....................................5

**Statutes**

2025 Tenn. Pub. Acts, ch. 424, p. 2, § 5(a)(2).............................................................................1

2025 Tenn. Pub. Acts, ch. 424, p. 2, § 5(d) .................................................................................1

Tenn. Cod. Ann. § 40-12-104(a) ..................................................................................................5

Tenn. Code Ann. § 40-12-105(a)..................................................................................................5

Tenn. Code Ann. § 1-3-105(b) .....................................................................................................1

**Other Authorities**

Valerie Gonzalez, *FEMA Launches Review of Migrant Shelter Aid, Suggesting Smuggling Laws Were Violated*, Associated Press (Mar. 13, 2025) ............................................................................5

# ARGUMENT

## I. Tennessee Courts Would Not Adopt Defendants' Interpretation of Section 5.

Because the meaning of Section 5 implicates standing and the merits, Plaintiffs address it first. Under Tennessee law, statutory text "shall be given [its] natural and ordinary meaning, without forced or subtle construction that would limit or extend the meaning." Tenn. Code Ann. § 1-3-105(b); *see also State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022) (courts "determine what a statute means" based on "how a reasonable reader … would have understood the text"); *Richards v. Vand. Univ. Med. Ctr.*, 706 S.W.3d 319, 323 (Tenn. 2025) (endorsing "well-established canons of statutory construction").

These principles support Plaintiffs' interpretation. The "provide shelter" version of the harboring offense does not require intent to conceal. PI Br. 4, ECF No. 8-2. Section 5's actus reus is to "intentionally conceal[], harbor[] or shield[] from detection." 2025 Tenn. Pub. Acts, ch. 424, p. 2, § 5(a)(2). "[H]arbor" means "to provide shelter to or conceal the whereabouts of an individual." *Id.* § 5(d). Thus, it is a crime in Tennessee to, for commercial advantage or private financial gain, intentionally conceal, provide shelter to, conceal the whereabouts of, or shield from detection an individual known to have entered or remained in the country unlawfully.

Defendants misconstrue Section 5 to "only criminalize[] intentionally sheltering someone for the purpose of avoiding detection," theorizing that "'from detection' modifies not just 'shield' but also 'harbor' and 'conceal.'" Opp'n 8, 23, ECF No. 33.[1] But this relies on "the series-qualifier canon instead of the last-antecedent canon." *Allen v. United States*, 83 F.4th 564, 572 (6th Cir. 2023). Under the rule of the last antecedent, the "limiting" phrase *from detection* in Section 5 modifies "only the noun or phrase that it immediately follows," shields. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). This "reflects the basic intuition that when a modifier appears at the end of a list, an ordinary reader would apply

---

[1] Defendants further attempt to support their narrowing construction of the word "harbor" by inventing a title—the "Anti-Smuggling Act"—that appears nowhere in the law.

1

that modifier only to the item directly before it." *Allen*, 83 F.4th at 568 (quoting *Lockhart v. United States*, 577 U.S. 347, 351 (2016)). Defendants do not justify "depart[ing]" from this ordinary rule, which here is the "better fit." *Id.* at 573. Courts interpreting the federal analogue have rejected Defendants' approach, explaining that "[i]f 'conceal,' 'harbor,' and 'shield' are all modified by 'from detection,' we end up with the redundant phrase 'conceal from detection'" and "the awkward construction 'harbor from detection.'" *United States v. Acosta de Evans*, 531 F.2d 428, 430 n.3 (9th Cir. 1976). There is no reason to "stretch the modifier" so far. *Allen*, 83 F.4th at 572.

Defendants also ignore the disjunctive "or" separating "provide shelter to" from "conceal the whereabouts" in the definition of "harbor." Opp'n 23. The word "or" "usually indicates an alternative between two or more options." *State v. Capps*, No. E2023-01419, 2024 WL 5135477, at *6 (Tenn. Crim. App. Dec. 17, 2024). Given the disjunction, a person can "harbor" by "provid[ing] shelter to … an individual," without intent to conceal. Indeed, Section 5's exemptions for attorneys providing legal advice and providers delivering healthcare would make little sense if harboring required intent to conceal. Defendants' reading renders the term "provide shelter to" in the definition of "harbor" superfluous, making it coextensive with "conceal." *See Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) (courts "mak[e] every effort not to interpret a provision" to render other provisions "superfluous").

Section 5 is arguably broader than Defendants recognize in other ways. The requirement that a person "know[]" that the individual they are transporting or harboring "has illegally entered or remained in the United States" could cover someone who previously was present unlawfully but has since obtained legal status. *See* PI Br. 15. Defendants' argument that the present-perfect tense signals a "continuing result," Opp'n 24, supports this reading: It continues to be true as a historical fact that someone "has entered or remained" unlawfully even after they obtain lawful status.

2

It is far from clear Section 5 requires knowledge of an ICE determination.[2] *See* Opp'n 8-9, 22-24, 27-31. Because "as determined by [ICE]" follows a comma, a more logical reading is that it is a nonrestrictive modifier describing how unlawfulness is proven, not part of the scienter requirement. In other words, to violate Section 5, a person must know only that the individual they are harboring "has entered or remained" unlawfully; such unlawful entry or presence will be established by ICE. The most natural way for the legislature to have made an ICE determination part of the scienter requirement, by contrast, would have been to provide that Section 5 applies to a person "who knows that ICE has determined that an individual has entered or remained illegally in the United States."[3]

Finally, Defendants suggest that an altruistic or familial purpose precludes the possibility of acting for commercial advantage or private financial gain. Opp'n 7-8. But Section 5 "does not have a sole-purpose provision" and does not require a defendant to "be single-minded in his conduct." *United States v. Frei*, 995 F.3d 561, 566-67 (6th Cir. 2021); *see also, e.g.*, *United States v. Salter*, 346 F.2d 509, 511 (6th Cir. 1965) (conviction affirmed where criminalized intent "was only one" purpose).

## II. Defendants' Threshold Arguments Fail.

### A. Plaintiffs Have Standing to Challenge Section 5.

**1.** Plaintiffs have pre-enforcement standing because they "allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation marks omitted). It is uncontested that Plaintiffs' claims arguably implicate constitutional interests, and Section 5 arguably proscribes Plaintiffs' alleged conduct:

---

[2] The vagueness problems with the concept of an ICE determination are set forth *infra*, at 9-10.
[3] Another reason to doubt Defendants' view is it would not "protect victims" from smuggling. Opp'n 2. If a "smuggler" could violate Section 5 only by knowing their "victim" was subject to an ICE warrant or Notice to Appear (NTA) or was on the ICE "Most Wanted" list, they could evade culpability by avoiding that information, and Section 5 would not "protect" any "victim" who had not already encountered ICE before being smuggled.

3

Plaintiffs, or their members, "provide shelter to" immigrants they know have "entered or remained" unlawfully and receive commercial advantage or private financial gain for doing so. *See* PI Br. 7-8.[4]

**2.** Plaintiffs also face a credible threat of prosecution for harboring.[5] To argue otherwise, Defendants rely on *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016). But "[i]n proceeding straight to the *McKay* factors," Defendants "fail[] to acknowledge the first step in the analysis," in which a court must first determine whether the "chill" on the plaintiff is "objective" or "subjective." *Free Speech Coal., Inc. v. Skrmetti*, 761 F. Supp. 3d 1132, 1146 (W.D. Tenn. 2024). If a law is "regulatory, proscriptive, or compulsory" and the plaintiff's conduct is "subject to the regulations, proscriptions, or compulsions," the plaintiff has suffered a "direct injur[y]" constituting an "objective chill." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764-65 (6th Cir. 2019) (internal quotation marks omitted). An objective chill without more establishes a credible threat of prosecution. *Id.* The *McKay* factors are implicated only when a plaintiff's fear of prosecution is limited to "subjective apprehension and a personal (self-imposed) unwillingness to communicate." *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1023 (6th Cir. 2024) (internal quotation marks omitted); *see also McKay*, 823 F.3d at 868-69.

Here, the threat is objective. The statute's ban on harboring is "proscriptive." And rather than a "a personal (self-imposed) unwillingness" to act in a way that implicates the statute, Plaintiffs continue to engage in conduct that arguably subjects them to criminal prosecution. Indeed, one of the Synod's pastors stated that they would not stop sheltering immigrants, "even if it meant going to jail."[6]

---

[4] The Synod also has standing because Section 5 will "perceptibly impair[]" its ministries that involve providing shelter to noncitizens and thus will directly "interfere[] with" its "core … activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (internal quotation marks omitted).

[5] Plaintiffs do not separately claim standing to challenge the transporting provision of Section 5. But that provision is not severable from the harboring provision, *see infra*, at 10.

[6] Defendants argue the Synod lacks associational standing because it does not "identify" a member with standing. Opp'n 11. But several Synod churches and pastors would have standing to sue in their own right. Strickland Decl. ¶¶ 11-20, ECF No. 8-3. The Synod is not required to identify members with standing *by name*. *Do No Harm v. Lee*, No. 3:23-CV-01175, 2024 WL 3730623, at *3 (M.D. Tenn. Aug. 8, 2024); *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024).

4

Strickland Decl. ¶ 12. That is objective chill.

Even if more were required, Plaintiffs have further cause to fear prosecution. *See Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 848 (6th Cir. 2024) (*McKay* "inquiry distills to whether 'surrounding factual circumstances' plausibly suggest a credible fear of enforcement"); *Kareem*, 95 F.4th at 1023 (*McKay* "'factors are not exhaustive, nor must each be established'"). The first two *McKay* factors consider prior enforcement and warning letters. There is no history of enforcement because Plaintiffs challenged Section 5 before its effective date, so these factors carry "little weight." *Welty v. Dunaway*, No. 3:24-CV-0768, 2025 WL 2015454, at *8-9 (M.D. Tenn. July 18, 2025). If anything, the newness of the law supports standing. *See Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020); *cf. Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Moreover, federal and state authorities are currently trying to use similar harboring laws to criminalize conduct like Plaintiffs', substantiating Plaintiffs' fear of prosecution. In a case cited by Defendants, for instance, the Supreme Court of Texas permitted use of a harboring law against a Catholic immigration shelter. *See Paxton v. Annunciation House, Inc.*, No. 24-0573, 2025 WL 1536224 (Tex. May 30, 2025); *see also* Valerie Gonzalez, *FEMA Launches Review of Migrant Shelter Aid, Suggesting Smuggling Laws Were Violated*, Associated Press (Mar. 13, 2025), https://tinyurl.com/4wy9xpcc.

The other *McKay* factors favor Plaintiffs. A special feature of Tennessee law invites "[a]ny person having knowledge or proof that an offense has been committed" to testify at grand jury meetings, which are publicly announced. Tenn. Code Ann. § 40-12-105(a); *see also id.* § 40-12-104(a). A district attorney general who learns of a crime from such testimony is "'obligat[ed] to prosecute.'" *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1035 (6th Cir. 2022). These features increase the likelihood of enforcement, as does Section 5's "broadness," *see Welty*, 2025 WL 2015454, at *9. Finally, Defendants have not disavowed prosecution. Their counsel's litigating position may be that the law does not apply here, but Defendants have submitted no affidavits or other evidence

5

forswearing intent to prosecute Plaintiffs (or, in the Synod's case, thousands of congregants supporting its ministries). *See, e.g.*, *FEC v. Cruz*, 596 U.S. 289, 299-301 (2022) (finding pre-enforcement standing despite government's argument that plaintiffs' conduct "would *not* violate the statute").

The public response underscores the reasonableness of Plaintiffs' fear. *See* Boatner Decl. ¶ 10. ECF No. 8-6 (describing evictions). The trend of evictions Section 5 has triggered suggests Plaintiffs are not alone in interpreting it to criminalize merely providing shelter to noncitizens.[7]

### B. Sovereign Immunity Does Not Bar This Suit.

*Ex parte Young* permits suits against defendants with "some connection with the enforcement" of the challenged law. 209 U.S. 123, 157 (1908). As district attorneys general, Defendants "have the requisite enforcement connection" to Section 5. *Nabors*, 35 F.4th at 1040. *Ex parte Young* requires no "adverse action" beyond a "realistic possibility" that enforcement authority will be used. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047-48 (6th Cir. 2015). Because Plaintiffs have shown a probability of enforcement sufficient for Article III standing, they necessarily satisfy *Ex parte Young*. *Id.*

### C. Plaintiffs Have a Cause of Action.

Federal courts have "long recognized" the availability of an equitable cause of action for preemption challenges. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). In preemption cases, "[t]he ability to sue … is the creation of courts of equity, and reflects a long history of judicial review of illegal … action," with courts playing a "significant role" in "assuring the supremacy of federal law." *Id.* at 326-27. A private plaintiff may thus seek "an equitable anti-suit injunction" "as a *shield* against the enforcement of … preempted[] state laws." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774

---

[7] Defendants contend Plaintiffs lack standing against certain of the district attorneys general. Opp'n 11-12. Plaintiffs concede for purposes of this motion that the Synod has standing as to 21 Defendants and Causey as to two, identified in Defendants' brief. Plaintiffs submit a supplemental declaration from Doe identifying the Defendant against whom he has standing. Plaintiffs no longer seek preliminary relief against the other Defendants but reserve the right to amend their complaint, present additional evidence, or add class representatives to establish standing with respect to them.

F.3d 895, 906 (6th Cir. 2014). This case aligns with that long history.

To be sure, equitable suits are subject to "statutory limitations." *Armstrong*, 575 U.S. at 327. But Defendants point to no language in federal law suggesting Congress "intended to preclude" actions like this one. *Id.* at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Defendants distort *Armstrong* by asserting that the United States alone may "raise preemption" as to state laws conflicting with "statutory schemes that vest enforcement authority solely with the federal government." Opp'n 15. That would overturn decades of precedent and defeat nearly all field preemption claims by individuals, as such claims *require* federal dominance in a field. *See, e.g.*, *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) (affirming injunction against state registration law given "the supremacy of the national power in the federal field of foreign affairs, including power over immigration"). *Armstrong* explicitly contemplates "an individual" seeking to enjoin state action as "preempted." 575 U.S. at 326. Since *Armstrong*, federal courts have readily adjudicated private plaintiffs' claims that the INA preempts state law. *See, e.g.*, *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025); *Padres Unidos de Tulsa v. Drummond*, No. 24-CV-0511, 2025 WL 1573590, at *2-4 (W.D. Okla. June 3, 2025); *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 728 (S.D. Ind.), *aff'd*, 838 F.3d 902 (7th Cir. 2016).

### III. Plaintiffs Are Likely to Succeed on the Merits.

#### A. Section 5 Is Preempted.

Section 5 is field and conflict preempted. PI Br. 9-18. To argue otherwise, Defendants misstate governing law; mischaracterize Plaintiffs' arguments; rely on their erroneously narrow construction of Section 5, *see supra* Part I; all but ignore *Arizona v. United States*, 567 U.S. 387 (2012); overstate *Kansas v. Garcia*, 589 U.S. 191 (2020); and wave away the fact that every circuit to consider a similar statute has found it preempted.

Defendants misstate the legal framework. It is doubtful *United States v. Salerno*'s "no set of

7

F.3d 895, 906 (6th Cir. 2014). This case aligns with that long history.

To be sure, equitable suits are subject to "statutory limitations." *Armstrong*, 575 U.S. at 327. But Defendants point to no language in federal law suggesting Congress "intended to preclude" actions like this one. *Id.* at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Defendants distort *Armstrong* by asserting that the United States alone may "raise preemption" as to state laws conflicting with "statutory schemes that vest enforcement authority solely with the federal government." Opp'n 15. That would overturn decades of precedent and defeat nearly all field preemption claims by individuals, as such claims *require* federal dominance in a field. *See, e.g.*, *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) (affirming injunction against state registration law given "the supremacy of the national power in the federal field of foreign affairs, including power over immigration"). *Armstrong* explicitly contemplates "an individual" seeking to enjoin state action as "preempted." 575 U.S. at 326. Since *Armstrong*, federal courts have readily adjudicated private plaintiffs' claims that the INA preempts state law. *See, e.g.*, *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025); *Padres Unidos de Tulsa v. Drummond*, No. 24-CV-0511, 2025 WL 1573590, at *2-4 (W.D. Okla. June 3, 2025); *Exodus Refugee Immigr., Inc. v. Pence*, 165 F. Supp. 3d 718, 728 (S.D. Ind.), *aff'd*, 838 F.3d 902 (7th Cir. 2016).

### III. Plaintiffs Are Likely to Succeed on the Merits.

#### A. Section 5 Is Preempted.

Section 5 is field and conflict preempted. PI Br. 9-18. To argue otherwise, Defendants misstate governing law; mischaracterize Plaintiffs' arguments; rely on their erroneously narrow construction of Section 5, *see supra* Part I; all but ignore *Arizona v. United States*, 567 U.S. 387 (2012); overstate *Kansas v. Garcia*, 589 U.S. 191 (2020); and wave away the fact that every circuit to consider a similar statute has found it preempted.

Defendants misstate the legal framework. It is doubtful *United States v. Salerno*'s "no set of

7

circumstances" test, 481 U.S. 739, 745 (1987), applies to preemption claims. *See United States v. Texas*, No. 24-50149, 2025 WL 1836640, at *19 & n.232 (5th Cir. July 3, 2025) (collecting circuit cases). The Supreme Court in *Arizona* did not apply *Salerno* in its field or conflict preemption analysis. But even if *Salerno* applied, Plaintiffs would prevail because a law that is preempted is preempted in all its applications. *Id.* at *18; *see also, e.g., Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 589 (1987).[8]

Defendants do not acknowledge that regulating the transport and harboring of noncitizens is a core component of the federal government's ability to set the conditions under which noncitizens enter and remain in the country or that Tennessee has created its own version of this regime. Far from "affirmatively invit[ing] State participation," Opp'n 18-19, Congress limited states to arresting people for violating *federal* transport and harboring laws. *Texas*, 2025 WL 1836640, at *25; *cf. Arizona*, 567 U.S. at 408. And Defendants are wrong to insist that Section 5 has no foreign policy implications because it (like the federal analogue) targets the people transporting or harboring noncitizens. Section 5 could result in "[p]erceived mistreatment of aliens" and raise concerns about noncitizens' "status, safety, and security" as easily as the provisions struck down in *Arizona*. *See* 567 U.S. at 395. These foreign policy concerns bolster the conclusion that the federal government alone may regulate in the field.

Defendants wrongly suggest that *Garcia*, which reaffirmed *Arizona*, somehow abrogated *Arizona* and its progeny. In *Garcia*, three noncitizens were prosecuted under a state identity-theft statute for using false Social Security numbers on tax-withholding forms. 589 U.S. at 195. The Supreme Court concluded the statute was not preempted merely because the same information was used on federal employment verification forms, and federal law did not "create a comprehensive and unified system regarding the information that a State may require employees to provide." *Id.* at 208-10. The Court disagreed that the state law "overlap[ped]" impermissibly with federal law, finding the

---

[8] Plaintiffs allege that the law is invalid as applied in their prayer for relief. Compl. 26, ECF No. 1.

8

two "*fundamentally unrelated.*" *Id.* at 208, 211-12. Here, however, the state law largely tracks its federal analogue and infringes on the unified federal system governing transport and harboring of noncitizens.

Defendants also err in denying that Section 5 creates a new immigration classification. Even if ICE made "determinations," *but see* PI Br. 16-17, they would operate only as *allegations* about immigration status, not legal conclusions, in the federal scheme. By making ICE's views conclusive, Section 5 uses different criteria to classify noncitizens than does federal law. Using ICE "determinations" to establish immigration status also captures lawfully present noncitizens; ICE routinely issues warrants and NTAs for persons whom it believes to be removable despite having lawful status, *see, e.g., Castillo v. Bondi*, 140 F.4th 777, 778-79, 784 (6th Cir. 2025), or who later obtain status in removal proceedings, *see, e.g., Marouf v. Lynch*, 811 F.3d 174, 177, 189-90 (6th Cir. 2016).

### B. Section 5 Is Unconstitutionally Vague.

Defendants' proposed test—a law is facially vague "'only if the enactment is impermissibly vague in all of its applications'"—does not apply if the law imposes criminal sanctions. *See Stevens v. City of Columbus*, No. 21-3755, 2022 WL 2966396, at *5 (6th Cir. July 27, 2022). A criminal law "requires a high level of definiteness to withstand" a facial challenge, which is a "stringent[]" standard. *Id.*[9]

Section 5 fails that test. Requiring someone to "know" that an individual harbored "has illegally entered or remained in the United States, as determined by" ICE is nonsensical. Defendants insist that Section 5 requires "knowledge of an ICE determination" via an ICE warrant or NTA "or the ICE 'Most Wanted' webpage." Opp'n 28-29. But that construction "defang[s]" the law and produces "peculiar results" if not "absurdity." *United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018). Many noncitizens without lawful status never encounter ICE at all. ICE warrants and NTAs are not public,

---

[9] Defendants wrongly suggest that "evidence of discriminatory enforcement" is required to show vagueness. *See* Opp'n 29. But discriminatory enforcement and lack of fair notice are "two independent reasons" a law can be vague. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

9

and it is hard to imagine smugglers asking victims for their papers. The "Most Wanted" list comprises a handful of people wanted for serious crimes—a far cry from the "vulnerable" smuggling victims purportedly on the minds of state lawmakers, *see* Opp'n 2. And ICE allegations that a noncitizen entered or remained unlawfully are frequently rejected or overridden by courts and immigration judges, *see, e.g.*, *Marouf*, 811 F.3d at 177, but any warrant or NTA issued by ICE remains in existence. Yet under Defendants' reading, knowledge that ICE at some point issued such a document is all that is required for culpability to attach. Defendants' construction is implausible, and any other interpretation has vagueness problems of its own. *See* PI Br. 21-22; *see also supra*, at 3 & n.2.

### IV. The Court Should Enjoin All of Section 5 as to All Members of the Putative Class.

Defendants' arguments regarding the scope of relief fail. The Court cannot "sever" Section 5's "problematic portions while leaving the remainder intact." Opp'n 31. Section 5 is preempted, and thus unconstitutional, in full. Moreover, severability is "determined by the law of th[e] state," *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 626 (6th Cir. 2018), which here disfavors severance, *State v. Tester*, 879 S.W. 2d 823, 830 (Tenn. 1994) (finding no intent to sever absent severability clause).

Plaintiffs need not move for class certification to obtain preliminary class-wide relief. The Sixth Circuit has warned against requiring "premature and meritless placeholder motions for class certification." *Patton v. Fitzhugh*, 131 F.4th 383, 399 (6th Cir. 2025). And the Supreme Court recently confirmed the availability of injunctive relief for a putative class. *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368-69 (2025). Although Defendants are correct that the *A.A.R.P.* plaintiffs had moved for class certification, they fail to mention that the motion had been *denied. Id.* at 1369 n.1. Yet the Supreme Court granted class-wide relief without certifying the class.

### CONCLUSION

The Court should grant the motion and issue a preliminary injunction.

Respectfully submitted this 21st of July, 2025.

/s/ *Michael C. Holley*
Michael C. Holley
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
spring@tnimmigrant.org

Rupa Bhattacharyya*
Gregory Briker*
Elizabeth R. Cruikshank*
William Powell*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6629
Fax: (202) 661-6730
rb1796@georgetown.edu
gb954@georgetown.edu
erc56@georgetown.edu
whp25@georgetown.edu

Michelle Lapointe*
Suchita Mathur*
Chris Opila*
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7523
Fax: (202) 742-5619
mlapointe@immcouncil.org
smathur@immcouncil.org
copila@immcouncil.org

*Attorneys for Plaintiffs*

*Motion for admission pro hac vice pending.*