# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SOUTHEASTERN SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> STEVEN R. FINNEY, *et al.*, <br><br> *Defendants*. | Case No. 3:25-cv-684 <br> The Hon. William L. Campbell, Jr. <br><br> **BRIEF IN SUPPORT OF MOTION TO FILE AMICUS CURIAE FOR 21 STATES ATTORNEYS GENERAL IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

                                                                                 **Page**

Table of Authorities ................................................................................ ii

Interest of Amicus Curiae ....................................................................... 1

Summary of the Argument ..................................................................... 2

Argument ................................................................................................ 3

    I.    Plaintiffs Lack a Cause of Action to Challenge Tennessee's Law. ................................................................ 4

    II.    Federal Immigration Law Does Not Preempt Tennessee's Law. ................................................................ 5

            A.    Field Preemption Does Not Apply. .............................. 7

            B.    Tennessee's Law Aligns with the Federal Immigration Scheme. ................................................... 9

Conclusion ............................................................................................ 15

Additional Counsel .............................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................... 5, 6, 8, 10, 14
*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ....................................................................... 5
*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989) ........................................................................ 9
*California v. Zook*,
  336 U.S. 725 (1949) ..................................................................... 10
*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
  520 U.S. 564 (1997) ....................................................................... 7
*DeCanas v. Bica*,
  424 U.S. 351 (1976) ..................................................................... 7, 8
*DeVillier v. Texas*,
  601 U.S. 285 (2024) ....................................................................... 4
*Ex Parte Young*,
  209 U.S. 123 (1908) ....................................................................... 5
*Gilbert v. Minnesota*,
  254 U.S. 325 (1920) ....................................................................... 9
*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
  779 F.3d 1275 (11th Cir. 2015) ...................................................... 3
*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) ....................................................................... 5
*Gunn v. Minton*,
  568 U.S. 251 (2013) ....................................................................... 4
*Kansas v. Garcia*,
  589 U.S. 191 (2020) ........................................................ 6, 7, 8, 10, 12
*Keller v. City of Fremont*,
  719 F.3d 931 (8th Cir. 2013) ........................................................ 15
*Marion County Bd. of Comm'rs v. Marion Cnty. Election Comm'n*, 594
  S.W.2d 681, 684-685 (Tenn. 1980) ............................................. 14
*Moody v. NetChoice LLC*,
  603 U.S. 707 (2024) ..................................................................... 15
*O'Sullivan v. Boerckel*,
  526 U.S. 838 (1999) ..................................................................... 14


*Parker v. Brown*,
  317 U.S. 341 (1943) ................................................................. 6, 9
*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947) ....................................................................... 6
*State v. Booker*, 656 S.W.3d 49, 56 (Tenn. 2022) ..................................... 13
*State v. Mallard*, 40 S.W.3d 473, 480 (Tenn. 2001) ................................. 14
*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997) ............ 13
*Turtle Mountain Band of Chippewa Indians v. Howe*,
  2025 WL 1389774 (8th Cir. May 14, 2025) .......................................... 4
*United States v. Texas*,
  97 F.4th 268 (5th Cir. 2024) ...................................................... 8, 11, 14
*Va. Uranium, Inc. v. Warren*,
  587 U.S. 761 (2019) ....................................................................... 6
*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) .................................................................. 3, 15
*Wyeth v. Levine*,
  555 U.S. 555 (2009) ....................................................................... 8
*Zyla Life Scis., LLC. v. Wells Pharma of Houston, LLC*,
  134 F.4th 326 (5th Cir. 2025) ................................... 3, 9, 10, 11, 12, 13

## Statutes

U.S. Const., art. VI, cl. 2 ......................................................................... 6

# INTEREST OF AMICUS CURIAE

Many States have enacted state crimes that complement federal immigration laws like the law enacted by Tennessee that Plaintiffs seek to enjoin. Those complements are no conflict or obstacle to federal immigration law. Instead, they help States support federal immigration enforcement goals. Just as many States also criminalize possession of scheduled drugs that the federal government has labeled criminal, so too do States now criminalize a limited set of immigration offenses that the federal government has already labeled criminal.

All States have an interest in preserving their sovereignty and in relying on that preserved sovereignty to enact crimes consistent with federal law. Many States have enacted their own laws that reflect and support federal immigration law enforcement. That is why 21 State Attorneys General file this *amicus curiae* brief to ask this Court to deny Plaintiffs' motion for a preliminary injunction.

States retain immigration-related police powers. Tennessee does not regulate admissibility, removal standards, or alien registration. So there is no field preemption. And Tennessee's decision to enforce its human smuggling crime does not pose any obstacle to federal enforcement

1

discretion. Tennessee's law therefore raises no constitutional or federal preemption concerns.

Ultimately, the only plausible type of preemption that could prevent Tennessee from enforcing its law here is obstacle preemption—neither field preemption nor conflict preemption work when federal and State law are complements. Indeed, here, obstacle preemption would purport to create a conflict between State and federal enforcement discretion when there is no conflict between State and federal laws. This Court should not find that obstacle preemption preempts Tennessee's law here.

Indeed, every act punishable under these State laws is already a federal crime. And under the current administration, States and the federal government have never worked so closely together on immigration enforcement.

*Amici curiae* respectfully ask this Court to deny Plaintiffs' motion for a preliminary injunction enjoining enforcement of Tennessee's duly enacted law.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs lack a cause of action for their preemption argument. The Supremacy Clause does not grant them one.

2

**II.** Plaintiffs are not likely to succeed in their preemption claims. *See Zyla Life Scis., LLC. v. Wells Pharma of Houston, LLC*, 134 F.4th 326 (5th Cir. 2025).

Tennessee's law does not conflict with federal law, so it is not obstacle preempted. It is a complementary enactment. This Court should decline to extend it here and should deny the motion for a preliminary injunction.

## ARGUMENT

Pre-enforcement challenges to statutes are "disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). So Plaintiffs must satisfy the more rigorous threshold requirement that they are "likely to prevail on the merits." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015). Only after that threshold showing may a court "then proceed to weigh" other injunction factors. *Id.* And even then, a facial pre-enforcement challenge requires showing not only that the Plaintiffs might be affected but that universal relief is warranted. Plaintiffs here can make no such showing.

3

## I. Plaintiffs Lack a Cause of Action to Challenge Tennessee's Law.

Plaintiffs must have a cause of action to assert constitutional violations. Yet they fail to assert a cause of action allowing them to bring their preemption claims here. Because Plaintiffs do not plead a viable cause of action, their preemption claims should be dismissed.

"Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (cleaned up). "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts"; instead they are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). *Cf. Turtle Mountain Band of Chippewa Indians v. Howe*, 2025 WL 1389774, at *4 (8th Cir. May 14, 2025) ("[T]o seek redress through § 1983, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (quotations omitted)).

Plaintiffs sue under the Supremacy Clause. M.Supp.M.P.I.9. But the Supremacy Clause "does not create a cause of action" nor confer federal rights; it is a "rule of decision." *Armstrong v. Exceptional Child Ctr.*,

*Inc.*, 575 U.S. 320, 324–325 (2015). It does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." *Id.*

Nor does *Armstrong* create a free-standing equitable cause of action. Instead, this Court should read *Armstrong* to reject the concept of a free-standing cause of action to sue under the Supremacy Clause. Even more so when, as here, there is no conflict between State and federal law to provide even a questionable basis for preemption.

Plaintiffs' lack of a cause of action should now be addressed. And because Plaintiffs lack an equitable cause of action, their preemption claims should be dismissed.

## II. Federal Immigration Law Does Not Preempt Tennessee's Law.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "[T]he states are sovereign, save only as Congress may constitutionally subtract from their authority." *Parker v. Brown*, 317 U.S. 341, 351 (1943). The "Laws of the United States"—not the United States's discretionary

enforcement decisions—take priority over conflicting state law. U.S. Const., art. VI, cl. 2.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398–401. Courts scrutinize implied preemption claims because "an unexpressed purpose to nullify a State's control over its officers and agents is not lightly to be attributed to Congress." *Parker*, 317 U.S. at 351. Implied preemption "start[s] with the assumption that the historic police powers of the States were not to be superseded" unless preemption "was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

Federal enforcement priorities do not preempt state law. *See Kansas v. Garcia*, 589 U.S. 191, 212 (2020). "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019).

The requested injunction here drastically expands immigration preemption, enjoining Defendant's enforcement of its duly enacted law based on field and conflict preemption. Plaintiffs stretch *Arizona* too far.

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

## A. Field Preemption Does Not Apply.

Field preemption "is itself suspect, at least as applied in the absence of a congressional command that particular field be preempted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616–617 (1997) (Thomas, J., dissenting). Only "[i]n rare cases" have courts found that Congress has "'legislated so comprehensively' in a particular field that it 'left no room for supplementary legislation.'" *Kansas*, 589 U.S. at 208. "Only a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress" justifies field preemption. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195.

Plaintiffs are incorrect that Congress preempted the entire field of immigration. The Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *DeCanas*, 424 U.S. at 355. Alien registration is field preempted. *Arizona*, 567 U.S. at 401. And the

7

Case 3:25-cv-00684    Document 51    Filed 09/10/25    Page 11 of 20 PageID #: 470

Supreme Court has never extended immigration field preemption farther. *See, e.g.*, *Kansas*, 589 U.S. at 210 (rejecting overbroad immigration field preemption); *Arizona*, 567 U.S. at 401, 403–413 (federal government "has occupied the field of alien registration" but analyzing other sections using obstacle preemption).

If Plaintiffs are correct, *Arizona* could have been much easier. "The Court would have simply said that immigration implicates important federal interests, so the Arizona law was field preempted in its entirety." *United States v. Texas*, 97 F.4th 268, 322 (5th Cir. 2024) (Oldham, J., dissenting). But that theory "radically undermine[s] States' sovereignty . . . because immigration is hardly the only area of state regulation that implicates important federal interests." *Id.* at 322–323 (Oldham, J., dissenting). The federal government has important interests and statutory authority in many areas where state law is not preempted. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573–581 (2009) (drug enforcement); *California v. ARC Am. Corp.*, 490 U.S. 93, 101–102 (1989) (antitrust).

It is hard to argue that the federal government occupies a field when it does not say so itself. *Cf. Parker*, 317 U.S. at 358. There is no *conflict*, much less field preemption, here.

8

## B. Tennessee's Law Aligns with the Federal Immigration Scheme.

Plaintiffs are incorrect that they will likely be able to show that Tennessee's law conflicts with the federal government's enforcement discretion and policies. This is wrong twice over. *First*, the Laws of the United States—not the Executive's enforcement discretion—preempt state laws. *Second*, Tennessee's law is complementary to federal law and federal enforcement discretion.

### 1. *Conflict preemption principles do not prohibit States from incorporating federal criminal law for state criminal law purposes.*

Federal law should conflict-preempt state law only when the two conflict. And State laws do not "somehow conflict with [federal law] by incorporating it." *Zyla Life*, 134 F.4th at 331.

Federal law seldom bars States from adopting federal law for its purposes. *See, e.g.*, *Gilbert v. Minnesota*, 254 U.S. 325, 330–331 (1920). "[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or state prosecutors." *Kansas*, 589 U.S. at 212. "[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Id*. Overlap does not mean invalidity. *See*

*Zyla Life*, 134 F.4th at 331–334 (citing *California v. Zook*, 336 U.S. 725, 733 (1949)).

Tennessee can complement criminal immigration law. *See id.* at 333 ("States may have a legitimate interest in punishing or providing redress for wrongs even if federal law already does so. The Federal Government is not the only one with an interest in criminalizing murder or rape."). That is within Tennessee's historic police powers. *See Mayor, Alderman & Commonalty of City of N.Y. v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837); *Arizona*, 567 U.S. at 417 (Scalia, J. concurring in part and dissenting in part) (States' "power to exclude has long been recognized as inherent in sovereignty").

*Arizona* recognized that where a State is not operating in an occupied field, "a State may make violation of federal law a crime." 567 U.S. at 402. Unlike here, the challenged criminal laws in *Arizona* were obstacle preempted for criminalizing conduct that was not a federal crime. *Texas*, 97 F.4th at 405, 407.

Here, Tennessee's language mirrors Congress's. Tennessee's statute is aimed at professional traffickers—it requires a violator to know that an alien has "illegally entered or remained in the United States, as

determined by the bureau of immigration and customs enforcement" and intentionally act in a prohibited manner for "commercial advantage or private financial gain. . . ." 2025 Tenn. Pub. Acts, ch. 424, p. 2, § 5(a). Tennessee's prohibition mirrors the federal prohibition in 8 U.S.C. § 1324(B)(i), which provides that anyone who brings certain aliens into, incites them to enter, or harbors them in the United States "for the purpose of commercial advantage or private financial gain" "shall" be punished. Unlike the obstacle-preempted laws in *Arizona*, Tennessee's law neither goes further than federal law nor criminalizes something not also federally criminal. And as in other contexts, "[t]he Federal Government has limited resources. Thus, it often welcomes state aid in enforcing shared legal norms." *Zyla Life*, 134 F.4th at 334.

And as the Fifth Circuit recognized, a discretion-based obstacle preemption analysis risks invalidating enforcement of the "many state statutes [that] incorporate federal criminal requirements." *Id.* at 334–335 (collecting statutes.); *see Kansas*, 589 U.S. at 212.

Given the expanding reach of federal criminal law, "there are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." *Id.* "Our federal

system would be turned upside down if we were to hold that federal criminal law preempts state law whenever they overlap," and there is no basis for inferring such preemption. *Id.* Rather, "in the vast majority of cases where federal and state laws overlap, allowing States to prosecute is entirely consistent with federal interests." *Id.* This is particularly true when a State acts within its historic police powers. *Rice*, 331 U.S. at 230.

Another hypothetical highlights the problems with enforcement discretion as a basis for finding obstacle preemption. Both States and the federal government make it a crime for a convicted felon to own a firearm—including persons convicted of a felony in federal court. *See*, *e.g.*, Iowa Code § 724.26; Fla. Stat. §§ 790.23(a), (c); T.C.A. § 39-17-1307(b)(1), (c)(1); 18 U.S.C. § 922(g)(1). Enforcement-discretion obstacle preemption suggests that any State prosecution for a violation would necessarily infringe on the federal government's supposed decision to not prosecute. But that cannot be so. Nor can it be the case that the federal government not prosecuting a given individual means that State enforcement of violations for identical factual elements infringes on the federal government's authority.

Finding obstacle preemption based on overlap in enforcing an area of law creates "staggering" implications. *Zyla Life*, 134 F.4th at 336. Instead, this Court should respect the parallel interests of separate sovereigns in enforcing criminal violations under both federal and state law.

> 2. *Any purported conflicts should be resolved by state courts in as-applied challenges.*

A pre-enforcement challenge is improper where the law may be plausibly applied constitutionally and uncertainty remains about state court interpretation. This is true here for at least four reasons.

*First,* and most basically, Tennessee courts interpreting Tennessee law understand it is their "duty" to "adopt a construction which will sustain [the] statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution." *State v. Booker*, 656 S.W.3d 49, 56 (Tenn. 2022) (quoting *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997)). When a Tennessee court finds "that (1) a statute can legitimately be construed in various ways, and (2) one of those constructions presents a constitutional conflict, then "[i]t is our duty to adopt a construction which will sustain the statute and avoid [that] constitutional conflict, if its recitations permit such a construction." *State v. Mallard*, 40 S.W.3d 473, 480 (Tenn. 2001) (quoting

*Marion County Bd. of Comm'rs v. Marion Cnty. Election Comm'n*, 594 S.W.2d 681, 684–85 (Tenn. 1980)).

*Second*, when "[t]here is basic uncertainty about what the law means and how it will be enforced," it is improper to enjoin enforcement "before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives." *Arizona*, 567 U.S. at 416. Any specific preemption problems that might exist "could be solved with the scalpel of as-applied relief . . . as opposed to the machete of global invalidation." *Texas*, 97 F.4th at 300 (Oldham, J., dissenting). The Court should give Tennessee courts an opportunity to consider alleged constitutional defects. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

*Third*, several federal courts of appeals have followed the cautious approach from *Arizona*. *See, e.g.*, *Keller v. City of Fremont*, 719 F.3d 931, 945 (8th Cir. 2013) ("facial challenges are disfavored"). Facial challenges are hard to win because they "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Moody v. NetChoice LLC*, 603 U.S. 707, 723 (2024) (quoting *Grange*, 552 U.S. at 451).

*Fourth*, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Grange*, 552 U.S. at 449–450. "'Claims of facial invalidity often rest on speculation' about the law's coverage and its future enforcement." *NetChoice*, 603 U.S. at 723 (quoting *Grange*, 552 U.S. at 450–451). But to succeed, there must be no constitutional application. Hypotheticals are not enough.

Thus, allowing Tennessee to enforce its law to the extent it is constitutionally permissible will not impair the legislative purpose.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: July 14, 2025

Respectfully submitted,

Brenna Bird
*Attorney General of Iowa*
Eric H. Wessan
*Solicitor General*
Office of the Attorney General
305 E Walnut Street, 2nd Floor
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov

*/s/ Cameron T. Norris*
Cameron T. Norris (TN Bar #33467)
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
703-243-9423
cam@consovoymccarthy.com

*Counsel for Amicus Curiae State of Iowa*

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General of Alabama

TREG TAYLOR
Attorney General of Alaska

TIM GRIFFIN
Attorney General of Arkansas

JAMES UTHMEIER
Attorney General of Florida

CHRIS CARR
Attorney General of Georgia

RAÚL R. LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

KRIS KOBACH
Attorney General of Kansas

LIZ MURRILL
Attorney General of Louisiana

ANDREW T. BAILEY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of North Dakota

DAVE YOST
Attorney General of Ohio

GENTNER DRUMMOND
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARTY JACKLEY
Attorney General of South Dakota

KEN PAXTON
Attorney General of Texas

JASON S. MIYARES
Attorney General of Virginia

JOHN B. MCCUSKEY
Attorney General of West Virginia