# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **SOUTHEASTERN SYNOD OF THE** | ) | |
| **EVANGELICAL LUTHERAN** | ) | |
| **CHURCH IN AMERICA** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:25-cv-684 |
| v. | ) | |
| | ) | Chief Judge Campbell |
| **STEVEN R. FINNEY** *et al.*, | ) | Magistrate Judge Holmes |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

    I.    Federal and State Framework for Human Smuggling ........................................ 1

    II.   Parties and Posture ................................................................................................. 4

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

    I.    The Court Lacks Subject Matter Jurisdiction. ..................................................... 6

        A.  Plaintiffs lack standing. ................................................................................. 6

        B.  Defendants have sovereign immunity. ....................................................... 15

        C.  The vagueness challenge (Count II) is unripe. ......................................... 16

    II.   Plaintiffs fail to state a claim upon which relief can be granted. ..................... 17

        A.  The preemption claim fails (Count I). ....................................................... 17

        B.  Plaintiffs fail to state a claim of facial vagueness (Count II). ................. 28

        C.  Synod fails to state a violation of the Free Exercise Clause (Count III). ........... 31

        D.  Synod fails to state an expressive association claim (Count IV) ............. 34

CONCLUSION .................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abriq v. Metro. Gov't of Nashville,*
333 F. Supp. 3d 783 (M.D. Tenn. 2018) ........................................................................................... 3

*Alden v. Maine,*
527 U.S. 706 (1999) ........................................................................................................................ 15

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................................................................... 17, 18

*Am. Chem. Council v. DOT,*
468 F.3d 810 (D.C. Cir. 2006) ....................................................................................................... 13

*Am. Marriage Ministries v. Collins,*
No. 3:24-CV-247, 2025 WL 2663652 (E.D. Tenn. Sept. 17, 2025) ............................................... 13

*Am. Telecom Co. v. Republic of Lebanon,*
501 F.3d 534 (6th Cir. 2007) ........................................................................................................... 5

*Anderson v. Edwards,*
514 U.S. 143 (1995) ........................................................................................................................ 20

*Arizona v. United States,*
567 U.S. 387 (2012) ................................................................................................................. *passim*

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) ................................................................................................................... 17, 18

*Ass'n of Am. Physicians & Surgeons v. FDA,*
13 F.4th 531 (6th Cir. 2021) ................................................................................................. 7, 13, 14

*Bearing Distributors, Inc. v. Gerregano,*
No. M2020-01075-COA-R3-CV, 2022 WL 40008 (Tenn. Ct. App. Jan. 5, 2022) ......................... 25

*Belle Maer Harbor v. Charter Township of Harrison,*
170 F.3d 553 (6th Cir. 1999) ......................................................................................................... 30

*Bland v. United States,*
299 F.2d 105 (5th Cir. 1962) ......................................................................................................... 31

*Blick v. Ann Arbor Pub. Sch. Dist.,*
105 F.4th 868 (6th Cir. 2024) ........................................................................................................ 34

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) ........................................................................................ 34, 35

*Boyce Motor Lines v. United States*,
342 U.S. 337 (1952) ............................................................................................ 29

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ............................................................................................ 13

*Brooks v. Bd. of Pro. Resp.*,
578 S.W.3d 421(Tenn. 2019) ............................................................................... 26

*Bucklew v. Precythe*,
587 U.S. 119 (2019) .............................................................................................. 7

*California Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987) ............................................................................................ 20

*California v. Zook*,
336 U.S. 725 (1949) ............................................................................................ 24

*Carman v. Yellen*,
112 F.4th 386 (6th Cir. 2024) ............................................................. 5, 16, 17, 30

*Cartwright v. Garner*,
751 F.3d 752 (6th Cir. 2014) ................................................................................. 5

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) ............................................................................... 16

*Christian Healthcare Centers, Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) ............................................................................. 13

*Cleveland Branch, N.A.A.C.P. v. City of Parma*,
263 F.3d 513 (6th Cir. 2001) ............................................................................... 12

*Coleman v. State*,
341 S.W.3d 221 (Tenn. 2011) ........................................................................... 7, 25

*Corum v. Holston Health & Rehab. Ctr.*,
104 S.W.3d 451 (Tenn. 2003) ............................................................................... 7

*Craigmiles v. Giles*,
312 F.3d 220 (6th Cir. 2002) .......................................................................... 31, 33

*Crawford v. United States Dep't of Treasury*,
868 F.3d 438 (6th Cir. 2017) .......................................................................... 10, 13

iii

*Crugher v. Prelesnik*,
761 F.3d 610 (6th Cir. 2014).................................................................................18

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).......................................................................................13

*Davis v. Colerain Twp., Ohio*,
51 F.4th 164 (6th Cir. 2022) ....................................................................... 11, 12

*Dayton Power and Light Co. v. FERC*,
126 F.4th 1107 (6th Cir. 2025) ...................................................................23

*DeVillier v. Texas*,
601 U.S. 285 (2024)......................................................................................19

*Doe No.1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
No. 23-3740, 2025 WL 2453836 (6th Cir. Aug. 26, 2025) ...........................34

*Doe v. DeWine*,
910 F.3d 842 (6th Cir. 2018).......................................................................19

*Doe v. Lee*,
102 F.4th 330 (6th Cir. 2024) ......................................................................11

*Employment Div., Dep't of Hum. Res. of Ore. v. Smith*,
494 U.S. 872 (1990).........................................................................31, 32, 33

*EMW Women's Surgical Ctr. v. Beshear*,
920 F.3d 421 (6th Cir. 2019)..................................................................16, 18

*Eng. v. Gen. Elec. Co.*,
496 U.S. 72 (1990).......................................................................................24

*Ernst v. Rising*,
427 F.3d 351 (6th Cir. 2005).......................................................................15

*Farmer v. Phillips*,
No. 20-5730, 2021 WL 6210609 (6th Cir. Oct. 19, 2021) ...........................15

*Fenner v. Gen. Motors, LLC*,
113 F.4th 585 (6th Cir. 2024) ...................................................20, 23, 24, 28

*First Choice Chiropractic, LLC v. DeWine*,
969 F.3d 675 (6th Cir. 2020)....................................................................7, 12

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)...............................................................................*passim*

iv

*Fox v. Saginaw Cnty., Michigan,*
   67 F.4th 284 (6th Cir. 2023) ................................................................... 14

*Friends of George's, Inc. v. Mulroy,*
   108 F.4th 431 (6th Cir. 2024) ..........................................................*passim*

*Fritz v. Charter Twp. Of Comstock,*
   592 F.3d 718 (6th Cir. 2010) ..................................................................... 6

*Fulton v. City of Philadelphia,*
   593 U.S. 522 (2021) ................................................................................ 32

*Gamble v. United States,*
   587 U.S. 678 (2019) .......................................................................... 27, 28

*Gaughan v. City of Cleveland,*
   212 F. App'x 405 (6th Cir. 2007) ............................................................ 30

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ................................................................................ 28

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ................................................................................ 19

*Gutierrez v. State,*
   ---S.W.3d----, 2025 WL 2393597 (Tex. App. Aug. 19, 2025) ........................20, 23, 27, 28

*Hans v. Louisiana,*
   134 U.S. 1 (1890) .................................................................................... 15

*Hewitt v. United States,*
   145 S. Ct. 2165, 2172 (2025) .................................................................. 26

*Hill v. Colorado,*
   530 U.S. 703 (2000) ................................................................................ 30

*Hines v. Davidowitz,*
   312 U.S. 52 (1941) ............................................................................ 22, 27

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
   565 U.S. 171 (2012) ................................................................................ 35

*Johnson v. United States,*
   576 U.S. 591 (2015) ................................................................................ 30

*Kansas v. Garcia,*
   589 U.S. 191 (2020) ..........................................................................*passim*

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
  141 F.4th 796 (6th Cir. 2025) ...................................................................................16

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
  95 F.4th 1019 (6th Cir. 2024) ...................................................................................12

*Keen v. Helson*,
  930 F.3d 799 (6th Cir. 2019) ...................................................................................17

*Keller v. City of Fremont*,
  719 F.3d 931 (8th Cir. 2013) ...................................................................................22

*Kiser v. Reitz*,
  765 F.3d 601 (6th Cir. 2014) ...................................................................................11

*L. W. by & through Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) ........................................................................20, 23, 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...................................................................................17

*Lichtenstein v. Hargett*,
  83 F.4th 575 (6th Cir. 2023) ...............................................................................34, 35

*Lynch v. Jellico*,
  205 S.W.3d 384 (Tenn. 2006) ...................................................................................7

*Lyng v. Int'l Union*,
  485 U.S. 360 (1988) ...............................................................................34, 35

*Martinez-Quiroz v. United States*,
  210 F.2d 763 (9th Cir. 1954) ...................................................................................31

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016) ...............................................................................11, 12

*McLemore v. Gumucio*,
  --- F.4th ----, 2025 WL 2319119 (6th Cir. Aug. 12, 2025) ........................................35

*Medina v. Planned Parenthood S. Atl.*,
  145 S. Ct. 2219 (2025) ...................................................................................18

*Mendoza v. Sessions*,
  891 F.3d 672 (7th Cir. 2018) ...................................................................................4

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ...................................................................................18

vi

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ...............................................................................19

*Norton Outdoor Advert., Inc. v. Vill. of St. Bernard, Ohio,*
   99 F.4th 840 (6th Cir. 2024) ...................................................................7

*In re Omnicare, Inc. Sec. Litig.,*
   769 F.3d 455 (6th Cir. 2014) ..................................................................15

*Online Merchs. Guild v. Cameron,*
   995 F.3d 540 (6th Cir. 2021) ............................................................ 11, 12

*Pavia v. Nat'l Collegiate Athletic Ass'n,*
   --- F.4th----, 2025 WL 2787816 (6th Cir. Oct. 1, 2025) ........................13

*Paxton v. Annunciation House, Inc.,*
   --- S.W.3d ----, 2025 WL 1536224 (Tex. May 30, 2025) ......................23

*Planned Parenthood of Middle Tenn. v. Sundquist,*
   38 S.W.3d 1 (Tenn. 2000) ...................................................................7, 26

*Puckett v. Lexington-Fayette Urban Cty. Gov't,*
   833 F.3d 590 (6th Cir. 2016) ..................................................................15

*Russell v. Lundergan-Grimes,*
   784 F.3d 1037 (6th Cir. 2015) ..................................................15, 16, 19

*S & M Brands, Inc. v. Cooper,*
   527 F.3d 500 (6th Cir. 2008) ....................................................................5

*Screws v. United States,*
   325 U.S. 91 (1945) ..................................................................................29

*Shaw v. Metro. Gov't of Nashville & Davison Cnty.,*
   No. M2023-01568-COA-R3-CV, 2025 WL 2205914 (Tenn. Ct. App. Aug. 4,
   2025)........................................................................................................32

*Speech First, Inc. v. Schlissel,*
   939 F.3d 756 (6th Cir. 2019) ..................................................................13

*State v. Pendergrass,*
   13 S.W. 3d 389 (Tenn. Crim. App. 1999) ................................................9

*State v. Putt,*
   955 S.W.2d 640 (Tenn. Crim. App. 1997) .............................................25

*State v. Rice,*
   184 S.W.3d 646 (Tenn. 2006) ..................................................................8

*State v. Thompson,*
No. W2011-01277-CCA-R3-CD, 2012 WL 3025697 (Tenn. Crim. App. July 25, 2012) .................................................................................................................................32

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ...........................................................................................................13

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ........................................................................................................6, 15

*Torres v. Precision Indus., Inc.,*
995 F.3d 485 (6th Cir. 2021) .......................................................................................20, 27

*U.S. Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980) .............................................................................................................5

*United States v. Acosta de Evans,*
531 F.2d 428 (9th Cir. 1976) .............................................................................................25

*United States v. Annamalai,*
939 F.3d 1216 (11th Cir. 2019) .........................................................................................10

*United States v. Borroto Gil,*
No. 22-12653, 2023 WL 2733508 (11th Cir. Mar. 31, 2023) ..............................................4

*United States v. Forrest,*
356 F. Supp. 343 (W.D. Mich. 1973) ................................................................................10

*United States v. Garcia,*
883 F.3d 570 (5th Cir. 2018) ...............................................................................................8

*United States v. Hansen,*
599 U.S. 762 (2023) ...........................................................................................................30

*United States v. Kernell,*
667 F.3d 746 (6th Cir. 2012) .............................................................................................28

*United States v. Kim,*
435 F.3d 182 (2d Cir. 2006) .................................................................................................8

*United States v. Lockhart,*
956 F.2d 1418 (7th Cir. 1992) ...........................................................................................10

*United States v. Parrish,*
942 F.3d 289 (6th Cir. 2019) .............................................................................................29

*United States v. Texas,*
144 F.4th 632 (5th Cir. 2025) ............................................................................................21

*United States v. Texas,*
  97 F.4th 268 (5th Cir. 2024) ...............................................................................28

*United States v. Williams,*
  553 U.S. 285 (2008)............................................................................................29

*United States v. Wilson,*
  154 F.3d 658 (7th Cir. 1998)..............................................................................35

*United States v. Ye,*
  588 F.3d 411 (7th Cir. 2009)..............................................................................31

*United States v. Zheng,*
  306 F.3d 1080 (11th Cir. 2002) ............................................................................8

*United States v. Zheng,*
  87 F.4th 336 (6th Cir. 2023) ..............................................................................25

*Universal Life Church Monastery Storehouse v. Nabors,*
  35 F.4th 1021 (6th Cir. 2022) ...................................................................... 12, 14

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.,*
  455 U.S. 489 (1982)................................................................................28, 29, 30

*Villa-Anguiano v. Holder,*
  727 F.3d 873 (9th Cir. 2013)................................................................................4

*Vogel v. Wells Fargo Guard Servs.,*
  937 S.W.2d 856 (Tenn. 1996) ..............................................................................7

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989)............................................................................................28

*Warman v. Mount St. Joseph Univ.,*
  144 F.4th 880 (6th Cir. 2025) ...................................................................... 31, 32

*Wesley v. Campbell,*
  779 F.3d 421 (6th Cir. 2015)................................................................................6

*Will v. Michigan Dep't of State Police,*
  491 U.S. 58 (1989)..............................................................................................15

*Willeford v. Klepper,*
  597 S.W.3d 454 (Tenn. 2020) ............................................................................11

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)................................................................................................13

*Yoder v. Bowen,*
  146 F.4th 516 (6th Cir. 2025) ............................................................... 12

*Ex parte Young,*
  209 U.S. 123 (1908) ........................................................................... *passim*

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,*
  134 F.4th 326 (5th Cir. 2025) ......................................................... 22, 24

**Statutes**

8 U.S.C. § 1101 ....................................................................................... 21

8 U.S.C. § 1226 ....................................................................................... 27

8 U.S.C. § 1231 ......................................................................................... 4

8 U.S.C. § 1324 ................................................................................. *passim*

8 U.S.C. § 1324a .............................................................................. 21, 27

8 U.S.C. § 1329 ................................................................................ 18, 22

8 U.S.C. § 1357 ....................................................................................... 27

8 U.S.C. § 1358 ....................................................................................... 21

18 U.S.C. § 1028 ..................................................................................... 21

18 U.S.C. § 1071 ..................................................................................... 10

18 U.S.C. § 1546 ..................................................................................... 21

42 U.S.C. § 1983 ................................................................................ 15, 17

Tenn. Code Ann. § 1-3-110 .................................................................... 11

Tenn. Code Ann. § 20-13-102 ................................................................ 15

Tenn. Code Ann. § 39-11-302 ............................................................... 8, 9

Tenn. Code Ann. § 39-13-311 ................................................................ 14

Tenn. Code Ann. § 39-14-203 ................................................................ 33

Tenn. Code Ann. § 39-17-111 ................................................................ 32

Tenn. Code Ann. § 39-17-118 .......................................................... *passim*

Tenn. Code Ann. § 39-17-456 ................................................................ 32

Tenn. Code Ann. § 39-17-912......................................................................................33

2025 Tenn. Pub. Acts, ch. 424 § 5................................................................................2

**Other Authorities**

*Bipartisan Senate Border Security Negotiations*, The White House (Jan. 26, 2024)........................1

*Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg.
8327 (Jan. 29, 2025) ......................................................................................1

Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp.
L. Rev. 69 (2005) ........................................................................................20

Form I-862, ICE (Aug. 1, 2007) ....................................................................................3

Hillel Smith, *Immigration Arrests in the Interior of the United States: A Primer* (June 13,
2025)..........................................................................................................3

*Human smuggling equals grave danger, big money*, ICE (updated July 8, 2025) ...................2

*Human Smuggling*, ICE (Mar. 12, 2025) ....................................................................1

ICE Form I-200 (Sept. 2016) ........................................................................................3

*Most Wanted*, ICE............................................................................................................4

Policy Memorandum, USCIS (Feb. 28, 2025) ..............................................................3

Tenn. H. Crim. Just. Comm. (Tenn. Mar. 19, 2025)....................................................2

Tenn. H. Floor Session (Tenn. Apr. 22, 2025) ............................................................2

Tenn. H. Floor Session (Tenn. Apr. 22, 2025) ............................................................2

Tenn. S. Judiciary Comm., at 3:34:02-35:06 (Tenn. Apr. 8, 2025)................................2

## INTRODUCTION

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). And it remains true even with respect to state law enforcement touching on immigration. *Id.* Using its police power, Tennessee recently enacted the Anti-Smuggling Act ("ASA" or "the Act") to combat the rise in the smuggling of illegal immigrants. The Act narrowly targets human smugglers. It covers only a person who, for the *purpose* of financial gain, *intentionally* conceals, harbors, or shields from detection, immigrants whose presence the smuggler *knows* has been determined unlawful by ICE. Tenn. Code Ann. § 39-17-118. That conduct is already illegal under federal law. *See* 8 U.S.C. § 1324.

Nonetheless, three Plaintiffs brought a putative class action against Tennessee officials days before the ASA's effective date. Pressing a cosmically broad, atextual reading of the Act, Plaintiffs claim the ASA is preempted, vague, and violates the First Amendment. At every turn, Plaintiffs' challenge fails. They lack pre-enforcement standing to bring this suit: Nothing they intend to do violates the law, and they cannot show a "certainly impending" prosecution. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (citation omitted). They lack a cause of action and fail to state a preemption claim. Their vagueness claim is also premature and unpersuasive. And their as-applied Free Exercise and expressive association challenges fail to state a claim. Dismissal is warranted.

## BACKGROUND

## I.     Federal and State Framework for Human Smuggling

The United States is experiencing an immigration "crisis." *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations*, The White House (Jan. 26, 2024), perma.cc/GSX7-TWRK; *see Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 29, 2025). "Human smuggling is a multibillion-dollar industry for transnational criminal organizations that do not value human safety and take advantage of vulnerable people." *Human Smuggling*, ICE (Mar.

1

12, 2025), perma.cc/363J-ULCC. "[I]n recent years," the federal government has seen an increase in smugglers who target "women, children and family units" as victims. *Human smuggling equals grave danger, big money*, ICE (updated July 8, 2025), perma.cc/T83Y-7B7N. That growth in the smuggling of children has directly impacted Tennessee. As one House proponent of the ASA explained, Tennessee "had over 25,000 unaccompanied children shipped into our State" who "went to folks unknown" and "many of them are still unaccounted for." Tenn. H. Floor Session, at 28:05-41 (Tenn. Apr. 22, 2025), tinyurl.com/avymaffv. These victims are often "at risk for assault and abuse such as rape, beatings, kidnapping and robbery." *Human smuggling equals grave danger, supra.*

Concerned that Tennessee's existing laws did not adequately target human-smuggling, the Tennessee General Assembly enacted the Anti-Smuggling Act, 2025 Tenn. Pub. Acts, ch. 424 § 5, codified at Tenn. Code Ann. § 39-17-118. Tenn. H. Crim. Just. Comm. at 4:19-5:31 (Tenn. Mar. 19, 2025), tinyurl.com/kw2ruxtr. The ASA does "not" target humanitarian activities by "charitable organization[s]." Tenn. S. Judiciary Comm., at 3:34:02-35:06 (Tenn. Apr. 8, 2025), tinyurl.com/3xcnbbuw. Rather, it is designed to protect victims from being harmed after they reach their destination by catching those responsible "when they're *actually in the act of smuggling*." Tenn. H. Floor Session, at 29:01-50 (Tenn. Apr. 22, 2025), tinyurl.com/avymaffv (emphasis added).

The ASA accomplishes just that. It prohibits smugglers, acting for the purpose of financial gain, from knowingly transporting or intentionally concealing, harboring, or shielding individuals whose presence has been determined to be unlawful by ICE. Tenn. Code Ann. § 39-17-118(a).

As Plaintiffs admit, Dkt. 1 ¶ 41, the ASA's restrictions closely track 8 U.S.C. § 1324's prohibition on knowingly transporting, concealing, harboring, or shielding from detection certain "alien[s]." 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii); Dkt. 1¶¶ 5, 63. Both laws require knowledge about the immigrant's immigration status. Federal law requires knowledge, or reckless disregard, that the alien "has come to, entered, or remains in the United States in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii)-

2

(iii). Tennessee's law requires knowledge that "the individual has illegally entered or remained in the United States, as determined by" U.S. Immigration and Customs Enforcement or ICE. Tenn. Code Ann. § 39-17-118(a). Both laws target professional human smugglers. Federal law makes the motive of "commercial advantage or private financial gain" a sentence enhancement. 8 U.S.C.§ 1324(a)(1)(B). Tennessee's law makes the same motive a prerequisite for the crime. Tenn. Code Ann. § 39-17-118(a). And both laws rely on federal-agency determinations that the individuals being smuggled are in the United States unlawfully. Federal law provides that, in the context of seizure and forfeiture proceedings, "[o]fficial records of [ICE]" and "[t]estimony, by [ICE] immigration officer[s]" can be used as "prima facie evidence" that an "alien had not received prior official authorization" to enter or remain in the United States. 8 U.S.C. § 1324(b)(3)(B)-(C). Tennessee's law also relies ICE's determine as to whether a smuggled individual is here lawfully. Tenn. Code Ann. § 39-17-118(a).

There are a number of clearly defined actions that ICE takes to convey a determination[1] of unlawful status. One is arrest warrants. *See* ICE Policy 10074.2 ¶ 2.4 (2017), perma.cc/RFQ4-YHTY. To issue such a warrant, ICE must show "probable cause" that an individual is "removable from the United States" because, among other reasons, "reliable evidence . . . affirmatively indicate[s]" the individual "lacks immigration status." ICE Form I-200 (Sept. 2016), perma.cc/G4CT-TTQ3; *see Abriq v. Metro. Gov't of Nashville*, 333 F. Supp. 3d 783, 785 (M.D. Tenn. 2018) (noting that Form I-200 states that ICE "*determined* that there is probable cause" to remove an immigrant (emphasis added)). Another is a "Notice to Appear" (NOA) that initiates removal proceedings for individuals ICE determined should be removed from the United States. Policy Memorandum at 1, USCIS (Feb. 28, 2025), perma.cc/ZC6N-HXJB; Form I-862, ICE (Aug. 1, 2007), perma.cc/D3M3-G7CS; *see Abriq*, 333 F.

---

[1] ICE's determination of unlawful status should not be conflated with its power to *investigate*. Hillel Smith, *Immigration Arrests in the Interior of the United States: A Primer*, Congress.gov (June 13, 2025), perma.cc/AMN4-T5ME (distinguishing between ICE's initiation of proceeding based on the belief that an immigrant "committed immigration violations" and its authority to investigate).

3

Supp. 3d at 785 (noting that Form I-862 "sets forth . . . facts concerning . . . the basis of *ICE's determination*" (emphasis added)). An additional determination happens when an immigrant renters the United States illegally after previously being ordered removed, and ICE reinstates the prior removal order. 8 U.S.C. § 1231(a)(5); *see Mendoza v. Sessions*, 891 F.3d 672, 674-75 (7th Cir. 2018) (noting that reinstatement of a prior removal order reflects an ICE "determination"); *Villa-Anguiano v. Holder*, 727 F.3d 873, 877-78 (9th Cir. 2013) (same).

For serious offenders, ICE also has a publicly available "Most Wanted" notice that shows whether ICE determined the individual should be removed from the United States. *Most Wanted*, ICE, www.ice.gov/most-wanted (last accessed Oct. 14, 2025). Or ICE may issue an immigration detainer requesting that other law enforcement agencies work with ICE to ensure that certain dangerous immigrants already in custody remain in custody. Immigration Detainers, ICE.gov (May 13, 2025), perma.cc/R49U-GFJP; *see United States v. Borroto Gil*, No. 22-12653, 2023 WL 2733508, at *1 n.1 (11th Cir. Mar. 31, 2023) (noting ICE files immigration detainers when it "determines" that an immigrant "has been charged or convicted" of a qualifying offense). With these mechanisms, ICE makes a determination regarding legal status. That determination may (or may not) ultimately be upheld in a court of law. But ICE takes action based on its determinations.

## II.  Parties and Posture

Ten days before the ASA's July 1 effective date, three Plaintiffs sued. Dkt. 1. First is the Southeastern Synod of the Evangelical Lutheran Church (Synod), Dkt. 1 ¶¶ 11-24, a religious association with congregations in twenty-one of Tennessee's judicial districts. *Congregational Listing*, Southeastern Synod, elca-ses.org, perma.cc/VB34-2BXG (last accessed Aug. 12, 2025). Second is Garret Causey, a resident of Murfreesboro, Tennessee, who rents a home in Nashville to a tenant with lawful immigration status. *Id.* ¶¶ 25-27. Third is John Doe, an individual who lives in a Tennessee location with his daughter and her husband, a man Doe says is an "asylum seeker who unlawfully

entered the United States." *Id.* ¶¶ 28-29.[2] Causey and Doe also sue as putative class representatives on behalf of "[h]undreds if not thousands of Tennesseans" who allegedly "provide shelter to immigrants who [are here] unlawfully 'as determined by' ICE" and "receive some form of financial benefit in connection with providing that shelter." *Id.* ¶¶ 52-54. No motion for class certification has been filed.[3]

Plaintiffs sued all of Tennessee's District Attorneys in their official capacities, *Id.* ¶ 10, 31, but have since conceded a lack of standing to sue eleven of them, Dkt. 35, at 6 n.7. The Complaint alleges that some aspects of the ASA violate field and conflict preemption doctrines (Count 1), Fourteenth-Amendment protections from vagueness (Count 2), and First-Amendment rights of religion and association (Counts 3, 4). Dkt. 1 ¶¶ 60-92. Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## LEGAL STANDARD

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The party invoking federal jurisdiction has the burden to prove it. *Id.* "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). Among the limits of a court's Article III jurisdiction are the standing, ripeness, and sovereign immunity doctrines. *Food & Drug Admin. v. All. for Hippocratic Med.* ("*Alliance*"), 602 U.S. 367, 379 (2024); *Carman v. Yellen*, 112 F.4th 386, 401 (6th Cir. 2024); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-09 (6th Cir. 2008).

For a Rule 12(b)(6) motion, a court must "construe the Complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

---

[2] To support a motion, Doe filed a declaration stating his Tennessee county of residence. Dkt. 35-1. But the Complaint does not contain this information.

[3] Defendants do not address the class claims at this stage because the proper context to raise the shortcomings of a putative class is in response to a motion for class certification, which is the genesis for the putative class's rights. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404-07 (1980).

plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

## ARGUMENT

## I.     The Court Lacks Subject Matter Jurisdiction.

Plaintiffs failed to allege facts sufficient to carry their burdens to show standing, overcome sovereign immunity, and demonstrate ripeness.

### A.     Plaintiffs lack standing.

To invoke federal jurisdiction a, plaintiff "must satisfy the usual standards for injury in fact, causation, and redressability." *Alliance*, 602 U.S. at 393-94. Plaintiffs fail at nearly every step. They (1) cannot demonstrate a pre-enforcement injury, (2) Synod does not establish associational standing, (3) Plaintiffs' lack causation.

#### 1.     Plaintiffs have not shown an injury.

A plaintiff can establish an injury sufficient for "*pre*-enforcement review" only when "the plaintiff (1) alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) that the challenged statute proscribes, and (3) the plaintiff's intention generates a *certainly impending* threat of prosecution." *Friends of George's*, 108 F.4th at 435 (citation modified). Plaintiffs fail this test because (a) the ASA does not arguably proscribe Plaintiffs' intended conduct, and (b) Plaintiffs do not allege a "certainly impending" credible threat of prosecution. *Id.*; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

#### a.     Plaintiffs do not intend to engage in a course of conduct that the ASA proscribes.

Because a plaintiff cannot get into court by asserting an "injury" that "rests on a

6

misinterpretation of the [challenged law]," *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021), courts first must "figure out what the [law] proscribes." *Friends of George's*, 108 F.4th at 435 (citation omitted). When interpreting a state statute, federal courts apply the "general rules of statutory construction as embraced by" the state courts. *First Choice Chiropractic, LLC v. DeWine*, 969 F.3d 675, 680 (6th Cir. 2020). Thus, the question is whether Tennessee state courts would interpret the ASA as prohibiting Plaintiffs' conduct. They would not.

Tennessee courts apply rigorous tools of statutory interpretation. They look to the "natural and ordinary meaning of the statute." *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003) (citation modified). It is only when a statute is unclear that they "consider[] . . . legislative history, prior interpretations of the statute, [or] similar statutes in other jurisdictions." *Coleman v. State*, 341 S.W.3d 221, 240 (Tenn. 2011). Related to that endeavor is strict adherence to their "duty" to avoid unconstitutional interpretations. *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 7 (Tenn. 2000). For a Tennessee court, a "statute comes to a court clothed in a presumption of constitutionality [since] the Legislature does not intentionally pass an unconstitutional act." *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996) (citation modified). That is why Tennessee courts "indulge every presumption and resolve every doubt in favor of constitutionality." *Lynch v. Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006) (citation omitted).[4]

Under those interpretive principles, the ASA does not apply to Plaintiffs' intended conduct because Plaintiffs lack (1) a for-profit purpose, (2) an intent to conceal, and (3) knowledge about ICE

---

[4] At first glance, it appears Plaintiffs raise an as-applied challenge because they argue the Court should declare the law unconstitutional as applied to them. Dkt. 1 at 26 ¶ b. But they also ask the ASA to be declared "unconstitutional and invalid on its face" and enjoined "in its entirety," *Id.* at 26 ¶¶ a, c, matching the Supreme Court's definition of a facial challenge as opposing a law "in all its applications," *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). So, their preemption and vagueness claims, which challenge all applications of the ASA, Dkt. 1 ¶¶ 60-75, should be treated as facial only, *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard, Ohio*, 99 F.4th 840, 846 n.2 (6th Cir. 2024).

determinations for a specific individual.

    Lack of For-Profit Purpose. First, the ASA only impacts a person who engages in human smuggling "for the purpose of commercial advantage or private financial gain." Tenn. Code Ann. § 39-17-118(a). A natural reading of the term "commercial advantage" is "a profit or gain in money obtained through business activity." *United States v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002). And "private financial gain" means "an additional profit specifically for a particular person or group." *Id.* In other words, the criminal actor must have acted *"for the purpose of"* receiving "compensate[ion]," *United States v. Kim*, 435 F.3d 182, 185 (2d Cir. 2006), and that compensation must go "beyond . . . pure reimbursement." *United States v. Garcia*, 883 F.3d 570, 574 (5th Cir. 2018).

    Two Plaintiffs lack this purpose. Synod members accept donations, but they do not allege that they offer their services *for the purpose of* receiving donations. Dkt. 1 ¶¶ 19-20, 23-24. Rather, Synod members offer shelter to immigrants as a feature of their obligation "to love and serve the world" and "welcome the stranger." *Id.* ¶ 11 (quoting *Ephesians* 4:12 and citing *Matthew* 25:35). Doe, similarly, accepts the rent his son-in-law "insist[s]" on paying because Doe believes "families belong together." *Id.* ¶ 29. And at no point do Synod or Doe allege that they provide shelter with the goal of "improving [their] economic status," or that they expect the donations or rent they receive do anything more than reimburse some expenses. *Garcia*, 883 F.3d at 575.

    Thus, Synod and Doe have not plausibly alleged an intent to violate the ASA.

    Lack of Intent to Conceal. Second, the ASA is not triggered unless the person "intentionally conceals, harbors [provides shelter], or shields [an individual] from detection." Tenn. Code Ann. § 39-17-118(a)(2), (d). An "intentional" mens rea "is the highest, most demanding mental state." *State v. Rice*, 184 S.W.3d 646, 684 (Tenn. 2006) (affirming Court of Appeals), abrogated on other grounds by *State v. Miller*, 638 S.W.3d 136 (Tenn. 2021); Tenn. Code Ann. § 39-11-302(a). The criminal must have the *"conscious objective* or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-

11-302(a) (emphasis added). That means the Act only criminalizes intentionally sheltering someone for the purpose of avoiding detection. *Infra* pp. 24-26.

Plaintiffs do nothing of the sort. Synod does "not encourage anyone to break the law" and does not "hid[e]" the individuals it shelters. Dkt. 1 ¶¶ 16-24. Causey does not say he intends to hide his tenant. *Id.* ¶¶ 25-27. And John Doe does not say he intends to hide his son-in-law. *Id.* ¶¶ 28-30. They intend to provide the exact sort of humanitarian aid that the General Assembly did not target. They offer shelter—not concealment. So, the ASA, which criminalizes "human smuggling," does not arguably proscribe their conduct. Tenn. Code Ann. § 39-17-118.

<u>Lack of Knowledge about ICE Determinations</u>. Finally, the ASA criminalizes hiding an individual "that the person *knows* has illegally entered or remained in the United States, *as determined by*" ICE. Tenn. Code Ann. § 39-17-118(a)(2), (d) (emphasis added). Tennessee courts would interpret the law as requiring actual knowledge. *State v. Pendergrass*, 13 S.W. 3d 389, 394 (Tenn. Crim. App. 1999). In fact, the General Assembly considered and rejected a "should have known" requirement. Dkt. 33-1. To violate the ASA, a person would have to know ICE's determination of that individual's immigration status, which could be demonstrated by an ICE arrest warrant, NOA, wanted list, or immigration detainer. *Supra* pp. 3-4. This knowledge requirement narrows the reach of the ASA to serious incidents of smuggling that have caught the attention of the federal government. It removes any confusion about who is responsible for deciding whether the smuggled individual is here illegally.

Plaintiffs emphasize that ICE is not responsible for *final* decisions about immigration status, Dkt. 1 ¶ 4. True, like an indictment, an ICE determination is not a final adjudication of legal status. But that does not render the ASA unconstitutional. The ultimate legal status of an immigrant is not an element of the ASA's crime. Rather, the ASA criminalizes putting a roadblock (intentional concealment) in the way of reaching that final determination. That is exactly like the federal offense for hiding the subject of an arrest warrant. 18 U.S.C. § 1071; *United States v. Annamalai*, 939 F.3d 1216,

9

1233 (11th Cir. 2019). In that situation, final adjudication of the fugitive's guilt is also not an element. *Id.* That statute "is intended to punish acts 'calculated to obstruct the efforts of the authorities to effect arrest.'" *United States v. Lockhart*, 956 F.2d 1418, 1423 (7th Cir. 1992) (citation omitted). Thus, the crime turns on the culpable state of mind of the concealer, not the final legal status of the fugitive. *See United States v. Forrest*, 356 F. Supp. 343, 344 (W.D. Mich. 1973). The same is true of the ASA.

Plaintiffs do not allege knowledge about ICE determinations. To the contrary, Causey affirmatively knows his current tenant *has* lawful immigration status. Dkt. 1 ¶ 25. And his *suspicions* about other individuals are not knowledge. *Id.* at ¶¶ 26-27. Synod alleges that some congregations do "not check anyone's papers," and provide help "regardless of immigration status" or have learned that the people they help "do not have legal status." *Id.* at ¶¶ 19, 21, 23. But there is no mention of actual knowledge of ICE determinations. John Doe knows his son-in-law "unlawfully entered the country" but says nothing about ICE's determination of his son-in-law's current status. *Id.* at ¶¶ 29-30.

Indeed, even by *Plaintiffs'* interpretation of the ASA, they do not plausibly allege standing. Setting aside whether they need to know about ICE's determination to *violate* the ASA, to *challenge* the ASA, Plaintiffs still must allege sufficient facts to show that the ASA would be applied to them because ICE determined the individuals Plaintiffs harbor have unlawfully entered or remained in the United States. Their situation is like the plaintiffs in *Crawford v. United States Dep't of Treasury*, who challenged a law penalizing willfully failing to report possession of certain foreign financial accounts. 868 F.3d 438, 450 (6th Cir. 2017). Before considering whether the plaintiffs alleged willful failure to report, the Sixth Circuit deemed it foundational to standing that the plaintiffs met the precursor requirement—possession of a relevant foreign account. *Id.* at 460. Plaintiffs do not allege that they meet the ASA's precursor requirement of an ICE determination about someone they conceal. Dkt. 1 ¶¶ 19-30.

One final point—Plaintiffs attack the law in its entirety without alleging intent to violate every aspect of it. *Id.* ¶¶ a, c. Because Plaintiffs' supposed injury "is not 'fairly traceable' to the . . . parts of

the law that did not cause any injury," they lack standing to challenge the whole law.[5] *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 171 (6th Cir. 2022) (citation omitted).

### b. Plaintiffs face no "certainly impending" threat of prosecution.

Even if the Act did "proscribe[] [Plaintiffs'] intended conduct," courts do not assume that every breach of the law will be prosecuted. *McKay v. Federspiel*, 823 F.3d 862, 868 (6th Cir. 2016). Instead, the Sixth Circuit assesses whether a certain threat of enforcement exists through a four-part framework—the "*McKay* factors." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021), *abrogated on other grounds by Tennessee Conf. NAACP v. Lee*, 139 F.4th 557, 563 (6th Cir. 2025). The *McKay* factors look for "some combination" of (1) "a history of past enforcement," (2) "enforcement warning letters sent to the plaintiffs," (3) "an attribute of the challenged statute that makes enforcement easier or more likely," and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.* (quoting *McKay*, 823 F.3d at 869). Plaintiffs have none.

<u>No History of Past Enforcement</u>. "A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). But Plaintiffs sued before the ASA went into effect, so no past enforcement was possible. *See Friends of George's*, 108 F.4th at 439. This law took effect with no injunction preventing its enforcement and there are no reports of it being enforced against those merely providing shelter.

<u>No Warning Letters</u>. No such letters have been sent. *See id.* In fact the opposite is true, Defendants have repeatedly emphasized that Plaintiffs alleged conduct is legal. And the law does not

---

[5] Indeed, Plaintiffs have since conceded this lack of standing but claim the entire ASA must be struck down nonetheless based on their mistaken belief that Tennessee courts do not favor severability without an explicit severability clause. Dkt. 35, at 4 n.4, 10. Recent precedent disproves that belief. *See Doe v. Lee*, 102 F.4th 330, 340 (6th Cir. 2024); *Willeford v. Klepper*, 597 S.W.3d 454, 471 (Tenn. 2020). Tennessee law clearly favors severability. *See* Tenn. Code Ann. § 1-3-110.

apply to them. *Cf. Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1023 (6th Cir. 2024) (finding standing after the defendants warned the public that the plaintiffs' desired conduct *was illegal*); *Yoder v. Bowen*, 146 F.4th 516, 525 (6th Cir. 2025) (same); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034-35 (6th Cir. 2022) (finding a threat of enforcement where the challenged law was enacted specifically to target the plaintiffs and no one disputed its applicability to plaintiffs).

<u>No Attributes Making Enforcement Easy</u>. The ASA is "a standard criminal law with no attributes making enforcement easier or more likely." *Friends of George's*, 108 F.4th at 440.

<u>Disavowal of Enforcement</u>. Nor is there "refusal to disavow enforcement of the challenged statute against" Plaintiffs. *Online Merchs.*, 995 F.3d at 550 (citation modified) (focusing on "a particular plaintiff"). Defendants' general duty to enforce Tennessee laws does not "suggest that [Defendants] would enforce the rule against anything like [Plaintiffs'] *specific*" conduct. *Davis*, 51 F.4th at 174. More to the point, Plaintiffs present no evidence that Defendants were asked for their official position on the ASA before the lawsuit was filed.

At the injunction hearing, the Court proposed that Defendants jointly craft a preliminary injunction with Plaintiffs. While Defendants refused this proposal, that cannot meet this *McKay* factor for four reasons. *First*, requiring Defendants to disavow enforcement proactively after a lawsuit is filed would improperly shift the burden of proof for standing from Plaintiffs to Defendants. *See, e.g., McKay*, 823 F.3d at 867. *Second*, it would toss away the basic principle that standing is determined when a lawsuit is filed and not impacted by post-lawsuit developments. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001); *cf. Universal Life Church*, 35 F.4th at 1034-35 (noting that *before* litigation defendants refused to disavow prosecution). *Third*, by agreeing to an injunction, Defendants would have given the impression that, contrary to every argument they have made, they thought not only that the law applied to Plaintiffs but also that Plaintiffs were "likely to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And agreeing to injunctions when the State

believes a law doesn't apply or cannot be enforced opens the State up to further litigation. *See, e.g.*, *Am. Marriage Ministries v. Collins*, No. 3:24-CV-247, 2025 WL 2663652, at *18 (E.D. Tenn. Sept. 17, 2025). *Fourth*, a stipulated injunction simply is not necessary. *Pavia v. Nat'l Collegiate Athletic Ass'n*, --- F.4th----, 2025 WL 2787816, at *4 (6th Cir. Oct. 1, 2025). If the refusal to agree to a stipulated injunction is all it takes to establish pre-enforcement standing, then the "certain threat of prosecution" requirement does not mean much. *See Crawford*, 868 F.3d at 455.

At day's end, that Plaintiffs' conduct is not proscribed and they face no prosecution threat[6] is a "real-world win" for Plaintiffs. *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024) (Murphy, J., concurring). They can continue their conduct, unchanged, with no fear of prosecution. But without the threat of prosecution, they lack standing to bring this federal lawsuit.

### 2. Southeastern Synod has not named an injured identified member.

Just as each individual plaintiff "must demonstrate standing for each claim" asserted and "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), an association relying on its members for standing must make the same showings for "at least one identified member." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). An association cannot sue on behalf of some "unknown member" and *must* instead "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *FDA*, 13 F.4th at 543. Synod fails to point to even "one specifically-identified member [who will] suffer[] an injury-in-fact," *Am. Chem. Council v. DOT*, 468 F.3d 810, 820 (D.C. Cir. 2006), so it lacks associational standing.

This requirement has extra bite here because a corporation can only violate the ASA "if an

___

[6] When plaintiffs pursue a First Amendment "facial overbreadth challenge," a court may find standing even if the plaintiffs themselves have not been threatened with punishment as long as "concrete harm—i.e., enforcement of a challenged statute—occurred or is imminent." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764, 767 (6th Cir. 2019) (citation omitted). That "exception to our traditional rules of practice," *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973), does not apply here where Synod has not brought a facial overbreadth challenge. Dkt. 1 ¶¶ 76-92.

agent of the corporation performs the conduct that is an element of the crime while acting within the scope of the agent's office . . . and on behalf of the corporation." Tenn. Code Ann. § 39-13-311. Synod sues on behalf of its "churches, pastors, staff, and congregations." Dkt. 1 ¶¶ 7, 11-24. Yet, Synod does not identify an "agent" empowered to violate the ASA on its behalf or on behalf of any individual churches. Tenn. Code Ann. § 39-13-311. Further, Synod has not "identif[ied] *a member* who has suffered (or is about to suffer) a concrete and particularized injury" because that member harbors an individual for profit while knowing that ICE determined the individual to be here unlawfully. *FDA*, 13 F.4th at 543 (emphasis added). Thus, it lacks the requisite injury.

### 3. Plaintiffs lack causation.

Plaintiffs' alleged injury cannot be traced to or redressed by *all* Defendants. "[A] plaintiff's standing to sue one defendant does not give the plaintiff standing to sue every other defendant." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 293 (6th Cir. 2023). Plaintiffs must allege how ruling against "*each* of the defendants could redress" the injury. *Universal Life Church Monastery Storehouse*, 35 F.4th at 1031. This is true even for putative class actions. *Fox*, 67 F.4th at 294-300.

Plaintiffs cannot seek relief from a district attorney "beyond [his or her] jurisdiction." *Friends of George's*, 108 F.4th at 440 n.5; *see Fox*, 67 F.4th at 293. To sue all the DAs in Tennessee, Plaintiffs must allege they engage in conduct in all the judicial districts. They do not. Thus, they have since conceded that Synod only has standing to sue twenty-one DAs and that Causey only has standing to sue two. Dkt. 35, at 6 n.7.

Doe has not shown that he has standing to sue *any* of Defendants. He alleges that he lives in Tennessee. Dkt. 1 ¶¶ 28-29. But he does not allege any facts that show *where* in Tennessee he lives. Because he has not provided anything that would "tie" his injury to a specific defendant, he lacks standing to sue all of them. *Fox*, 67 F.4th at 293. While Doe states his county of residence in a different filing, Dkt. 35-1, he cannot rely on that to cure deficiencies in the Complaint. Plaintiffs cannot use

"judicial notice as a vehicle to circumvent the Federal Rules of Civil Procedure." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014). Thus, whether Doe "*could* allege" his home county "is not important." *Id.* If he wants the Court to take notice of this county, he must amend the Complaint *Id.*

At bottom, Plaintiffs seek to challenge the ASA's mere existence—not any threatened enforcement action. Facial challenges are not vehicles for airing policy disagreements and seeking judicial veto of every law one dislikes. Without *any* showing of a risk of prosecution, Plaintiffs fall far short of showing a *certainly impending*, credible threat of prosecution. *Friends of George's*, 108 F.4th at 435; *SBA List*, 573 U.S. at 158. Plaintiffs lack standing, and their suit should be dismissed.

### B.    Defendants have sovereign immunity.

Sovereign immunity protects the States from suit. *Alden v. Maine*, 527 U.S. 706, 715 (1999). "That immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). There are several exceptions to a State's sovereign immunity. *Id.* The three most common occur (1) "when the state has consented to suit," (2) "when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies, or (3) "when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None apply.

Tennessee has not consented to this suit. *See* Tenn. Code Ann. § 20-13-102(a); *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021). And 42 U.S.C. § 1983, the only statutory cause of action upon which Plaintiffs rely, Dkt. 1 ¶¶ 75, 84, 92, does not abrogate immunity, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Thus, this suit can proceed only if the *Ex parte Young* exception applies. *Russell*, 784 F.3d at 1046-47. It does not.

Under *Ex parte Young*, a "suit challenging the constitutionality of a state official's action is not one against the State." *Id.* That exception "has been read narrowly." *EMW Women's Surgical Ctr. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019). To successfully invoke it, a claim must seek "prospective

15

injunctive relief to end a continuing violation of federal law." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 515 (6th Cir. 2023) (citation modified). *Ex parte Young* "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). That is, *Ex parte Young* "require[s] . . . action on the part of the state official." *Id.* at 1416.

As discussed above, *supra* Part I.A.1.b, there are no allegations that any DA has "enforced []or threatened to enforce" the ASA against *anyone*, *Deters*, 92 F.3d at 1415. That dooms deploying *Ex parte Young* to get around Defendants' immunity from Plaintiffs' suit. *Id.*; *Russell*, 784 F.3d at 1046-47.

###    C.    The vagueness challenge (Count II) is unripe.

"If a case is 'dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all,' it is not constitutionally ripe." *Carman,* 112 F.4th at 400 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam)). As just discussed, *supra* Part I.A, the entire lawsuit depends on future events that may not occur—such as ICE determinations and threats of prosecution. *Carman*, 112 F.4th at 400; *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 141 F.4th 796, 809 (6th Cir. 2025). But the pre-enforcement facial vagueness challenge has additional barriers.

The Sixth Circuit has been clear that vagueness challenges "benefit from factual development and applications of statutory provisions to particular scenarios." *Carman*, 112 F.4th at 402. When plaintiffs bring a pre-enforcement facial vagueness challenge, particularly one that involves "myriad provisions" in a law and "*how those provisions might apply*," they are setting themselves up for failure by asking for "an advisory opinion on . . . questions [of statutory interpretation] in the abstract." *Id.* at 401, 403. That is why the Sixth Circuit regularly *refuses* to rule on facial vagueness challenges if, to do so, it must invalidate a law "based on scenarios that may never come to pass." *Id.* at 402-04. Instead, it defers to agencies with enforcement authority to "help hone the vagueness issues." *Id.* at 404.

Plaintiffs ask for the Court to do the opposite of what the Sixth Circuit says. They bring a

classic pre-enforcement challenge. Dkt. 1. While they think that they and "thousands of other Tennesseans" might be "exposed" to "a credible threat of prosecution," this conjecture does not ripen their vagueness claim. *Id.* at ¶¶ 73-74. In fact, it spoils the claim because, to address the ASA's potential impact on thousands of Tennesseans, the Court would have to "wad[e] into the world of the hypothetical." *Carman*, 112 F.4th at 402. Ripeness demands waiting for state-court, as-applied interpretations of the ASA, which would clarify whether valid applications of the ASA exist and "would help hone" any "vagueness issues." *Id.* at 404.

## II. Plaintiffs fail to state a claim upon which relief can be granted.

### A. The preemption claim fails (Count I).

#### 1. Plaintiffs lack a cause of action.

Plaintiffs lack a cause of action to assert their pre-enforcement preemption challenge. To bring a federal-question claim, there must be "a legislatively conferred cause of action [which] encompasses [that] particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014); *see Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019). Thus, Plaintiffs must be a part of the "particular class of persons [that] ha[s] a right to sue under this substantive [federal] statute." *Lexmark*, 572 U.S. at 127. Plaintiffs have not shown an express, implied, or equitable "private cause[] of action" to maintain a pre-enforcement preemption suit. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

The Supreme Court announced in *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015), that the Supremacy Clause "does not create a cause of action." *Id.* The Clause itself does not "give affected parties a constitutional . . . right to enforce federal laws against the States." *Id.*[7] True, the Court said in *Armstrong*, that an *Ex parte Young* action might be available for certain preemption claims. But the Court excluded that remedy when statutory enforcement authority is given to the

---

[7] Plaintiffs do not rely on an express or implied causes of action, such as 42 U.S.C. § 1983. Dkt. 1 ¶ 66. This is no pleading defect; *no* express or implied cause of action exists for this suit. Dkt. 33 at 14.

federal *government* because the statute "establish[ed] Congress's 'intent to *foreclose* equitable relief,'" like an *Ex parte Young* injunction. *Armstrong*, 575 U.S. at 328 (emphasis added, citation omitted); *cf. Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219 (2025) (recognizing the same in the context of Spending-Clause legislation). The Sixth Circuit has been clear, "even in a case involving relief sought under *Ex parte Young*," "courts must [still] determine whether Congress intended private parties to enforce [federal law] by private injunction." *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014); *see Crugher v. Prelesnik*, 761 F.3d 610, 615 (6th Cir. 2014) (same).

Congress has explicitly conferred enforcement authority for the federal anti-smuggling law, 8 U.S.C. § 1324, but gave that power to U.S. Attorneys, *not* private parties, 8 U.S.C. § 1329. That allocation of authority to DOJ in 8 U.S.C. § 1324(c) "displace[s]" Plaintiffs' claim for "equitable relief." *Armstrong*, 575 U.S. at 329; *see Crugher*, 761 F.3d at 615; *Michigan Corrections*, 774 F.3d at 903-05; *cf. Sandoval*, 532 U.S. at 286. Because Congress did not make this federal criminal law enforceable by private parties, Plaintiffs "cannot, by invoking [courts'] equitable powers, circumvent" that statutory limit. *Armstrong*, 575 U.S. at 328-29. And this Court has "no warrant to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of a judge-made action at equity." *Id.* (citation omitted). Therefore, to the extent the ASA can be seen as intruding on the federal domain, it is the United States that must raise preemption to protect its sphere of authority. That is exactly what happened in Plaintiffs principal authority, *Arizona v. United States*. 567 U.S. 387, 393-94 (2012).

Even if this Court finds the remedial scheme in 8 U.S.C. § 1324 has not displaced background equitable principles, Plaintiffs still cannot properly invoke *Ex parte Young*. To successfully invoke *Ex parte Young*, a plaintiff must show the defendant State official has threatened and is "about to commence proceedings." *EMW Women's Surgical Ctr.,* 920 F.3d at 445. As discussed *supra* at Part I.A.1.b, Plaintiffs do not demonstrate that any Defendant has "enforced []or threatened to enforce" the ASA against them, *Russell,* 784 F.3d at 1047. *Ex parte Young* requires "likely" enforcement, not

potential or hypothetical enforcement. *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). Accordingly, Plaintiffs have no avenue into federal court for a pre-enforcement remedy on these claims.

That is not to say that judicial review of Tennessee's law is forever precluded. It just means these Plaintiffs must follow the normal rule that federal constitutional rights are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). They would be free to assert preemption as a defense to any Tennessee proceeding—though as discussed, they are unlikely to be subject to such a proceeding because they do not intend to violate the law. *Supra* Part I.A.1.a.

### 2.    Plaintiffs fail to state a claim on the merits of preemption.

Plaintiffs' claim that federal-immigration law conflict- and field-preempts the ASA *on its face* because, per *Arizona*, the "federal government has exclusive power over immigration law and policy." Dkt. 1 ¶ 63. But Plaintiffs fail to even mention *Kansas v. Garcia*, which clarified the reach of *Arizona v. United*, 567 U.S. 387, 416 (2012). *See Garcia*, 589 U.S. 191. And they fail to grapple with the "hard to win" facial standard. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The Complaint's legal theory has been disallowed by *Garcia*, and out-of-date, out-of-circuit cases do not change that.

The Supremacy Clause allows Congress to "impose its will on the States" by enacting federal laws that preempt state laws. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). But Congress's power to legislate in areas "traditionally regulated by the States" is so "extraordinary" that courts "must assume Congress does not exercise [it] lightly." *Id.* When federal law intrudes into areas traditionally regulated by States, courts presume that, absent "unmistakably clear language" to the contrary, there is no preemption. *Id.* (citation omitted). Criminal law is chief among these areas. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Garcia*, 589 U.S. at 212. Because criminal law is a "field which the States have traditionally occupied" the "presumption against preemption 'operates with special force.'" *Fenner v.*

*Gen. Motors, LLC*, 113 F.4th 585, 596 (6th Cir. 2024) (quoting *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015)); *see Torres v. Precision Indus., Inc.*, 995 F.3d 485, 491 (6th Cir. 2021).

Plus, Plaintiffs bear the additional burden of winning a facial challenge. Because they claim the ASA is "per se pre-empted by federal law," they must also show that *every* "possible" application of the law is preempted. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987); *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 489 (6th Cir. 2023) (collecting cases), *aff'd sub nom. United States v. Skrmetti*, 145 S. Ct. 1816 (2025). So if Tennessee identifies even *one possible* application "not in conflict with federal law," Plaintiffs lose. *California Coastal Comm'n*, 480 U.S. at 593; *see Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995). Plaintiffs do not come close to meeting that burden.

<u>Lack of Field Preemption</u>. Field preemption is "rare" and requires the creation of a comprehensive, unified system that can only be effectively administered by a "single sovereign," leaving "no room for supplementary state legislation." *Garcia*, 589 U.S. at 208, 210 (citations omitted); Dkt. 33 at 17-18.[8] Plaintiffs no longer claim that Congress has occupied the entire field of preemption and now focus on the narrower argument that it has field preempted transporting and harboring illegal immigrants. Ex. 1, Transcript of Sept. 10, 2023 Hearing, 16:21-17:1. This narrower argument still fails. Plaintiffs must point to something in the "text or structure" of federal laws addressing the transporting and harboring of immigrants that establishes that Congress "left no room for supplementary state legislation." *Garcia*, 589 U.S. at 208 (citation omitted). They cannot do so, because federal law affirmatively invites State participation in this area. *Gutierrez v. State*, ---S.W.3d----, 2025 WL 2393597, *5-7 (Tex. App. Aug. 19, 2025). It authorizes state law enforcement to make arrests for violations of the federal smuggling law. 8 U.S.C. § 1324(c). It allows state law enforcement to enter "immigrant

---

[8] It is not clear that field preemption should exist at all. *See, e.g.*, *Garcia*, 589 U.S. at 214 n.* (Thomas, J., concurring) ("I am also skeptical of field pre-emption . . . ."); Erwin Chemerinsky, *Empowering States: The Need to Limit Federal Preemption*, 33 Pepp. L. Rev. 69, 74-75 (2005).

stations" to enforce state law. *Id.* § 1358. It even contemplates States arresting for and prosecuting trafficking or trafficking-related state offenses. *Id.* § 1101(a)(15)(T)(i)(III)(aa), (a)(15)(U)(i)(III). The Supreme Court does not find field preemption where there has been an analogous invitation for State participation. *Cf. United States v. Texas*, 144 F.4th 632, 723-24 (5th Cir. 2025) (Oldham, J., dissenting) (collecting field-preemption cases and noting the lack of State participation), *reh'g en banc granted, opinion vacated*, 2025 WL 2493531 (5th Cir. Aug. 29, 2025).

Setting aside that express invitation, the standard for showing that the "text or structure" of federal law "bar[s] all state regulation" is extremely high and is not satisfied here. *Garcia*, 589 U.S. at 210. Comparing this case with *Garcia* shows as much. In *Garcia*, the Court examined whether a state law prohibiting "identity theft" was unconstitutional as applied to "illegal aliens" due to implied field preemption. *Id.* at 195, 208. The federal law there prohibited hiring an immigrant knowing they were unauthorized to work in the United States, 8 U.S.C. § 1324a(a)(1)(A), (h)(3); entering false information in federal I-9 forms, 18 U.S.C. §§ 1028, 1546; or using I-9 forms for improper purposes, 8 U.S.C. § 1324a(b)(5). It also listed civil and criminal punishments for violations. 8 U.S.C. § 1324a(e)(4), (f)(1). It listed exceptions. *Id.* §1324a(b)(6). It spelled out that the federal officials have the duty to bring civil or criminal actions to enforce the law. *Id.* § 1324a(e)(1)(D), (f)(2). It specified which judicial entities have jurisdiction: administrative law judges and federal district and appellate courts. *Id.* § 1324a(e)(2)-(9), (f)(2). Federal law even expressly preempted any efforts by States to sanction employers who employ unauthorized immigrants. *Id.* § 1324a(h)(2). Despite all that, *Garcia* found no field preemption because the detailed federal regulation still lacked the "comprehensive *and unified* system" needed to oust state regulation. 589 U.S. at 210 (emphasis added).

The federal law at issue here is similar to the un-preempted law in *Garcia*. The law prohibits specific behavior: transporting or harboring immigrants who are in the United States unlawfully. 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii). It lists punishments for violations. *Id.* § 1324(a)(1)(A)-(B). And it lists

exceptions. *Id.* § 1324(a)(1)(C). It provides that United States Attorneys are responsible for bringing actions to enforce the law. *Id.* § 1329. And it specifies that federal district courts have jurisdiction. *Id.* With such a similar law, courts should reach the same conclusion that federal law "plainly does not foreclose all state regulation" in this area. *Garcia*, 589 U.S. at 209.

That is particularly true because human smuggling laws, unlike immigration-registration laws, do not affect foreign policy, so their enforcement does not require a single sovereign. Although the United States is built on federalism and dual sovereignty, there are certain areas of law where a "single sovereign" is required to ensure "unified" treatment of the legal issue. *Arizona*, 567 U.S. at 401; *Hines v. Davidowitz*, 312 U.S. 52, 65-66 (1941). And immigrant registration is one of those "important and delicate" areas because it "has to do with the protection of the just rights of a country's own nationals when those nationals are in another country." *Hines*, 312 U.S. at 64. If multiple sovereigns are allowed to weigh in on an immigrant's registration, discriminatory treatment could result, which might upset foreign nations, jeopardizing "the welfare and tranquility of *all* the states, and not merely . . . of one." *Id.* at 66 (emphasis added). This is why only one sovereign, "the national government," can be allowed to control immigrant registration. *Id.* at 66. But the same cannot be said of state statutes targeting *smugglers*. Thus, human smuggling, like employee documentation, is not one of those "rare" areas where Congress has decided the federal government alone may tread. *Garcia*, 589 U.S. at 208; *Keller v. City of Fremont*, 719 F.3d 931, 943 (8th Cir. 2013). To the contrary, the federal government, with its "limited resources," would almost certainly "welcome[ Tennessee's] aid in enforcing shared legal norms." *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 334 (5th Cir. 2025).

Yet, Plaintiffs cry "field preemption" for many of the very reasons that the *Garcia* Court rejected. They point to all the ways that Congress has defined the federal crime, set out evidentiary rules, clarified the role for States, and specified both who can prosecute for federal violations and which courts may review those violations. Dkt. 1 ¶¶ 32-37, 62-64. As just discussed, the federal

22

framework in *Garcia* did all those things and still did not field preempt state law.

Plaintiffs point to several pre-*Garcia* appellate court decisions. *Id.* ¶ 37. Whatever persuasive value these out-of-circuit cases once had, they say nothing about a *Garcia*-governed world. Indeed, it is unclear whether all those courts would reach the same decision post-*Garcia*. *See Paxton v. Annunciation House, Inc.*, --- S.W.3d ----, 2025 WL 1536224, at *19 (Tex. May 30, 2025) (upholding Texas's human-smuggling law); *Gutierrez*, 2025 WL 2393597, *5-7 (same). Perhaps most importantly, Plaintiffs identify nothing equivalent to the foreign policy concerns in immigration registration that would require single-sovereign regulation of smugglers.

<u>Lack of Conflict Preemption</u>. It is a textbook rule that "[t]he mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 211. That is why the Sixth Circuit requires "a 'high threshold'" to succeed in a conflict preemption claim. *Dayton Power and Light Co. v. FERC*, 126 F.4th 1107, 1128 (6th Cir. 2025) (citation omitted); *Fenner*, 113 F.4th at 594. A "state law is 'conflict' preempted *only* 'to the extent it *actually conflicts* with federal law, that is, . . . the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" *Fenner*, 113 F.4th at 594 (citation omitted) (emphasis added). On top of the high threshold for conflict preemption, presumption against preemption, and heavy burden of proving a facial challenge, Plaintiffs face an additional barrier—this is a pre-enforcement challenge. "Without the benefit of a definitive interpretation from . . . state courts, it would be inappropriate to assume [a new state law] will be construed in a way that creates a conflict with federal law." *Arizona*, 567 U.S. at 415. The Sixth Circuit routinely denies such challenges when only *one* of these components is present. *L. W.*, 83 F.4th at 489 (denying a facial challenge); *Friends of George's*, 108 F.4th at 435-38 (denying a pre-enforcement challenge); *Fenner*, 113 F.4th at 596-600 (denying a consumer-protection preemption challenge). So, Plaintiffs lose if it is *possible* to interpret the ASA in even one way that does not conflict with federal law. *Arizona*, 567 U.S. at 415.

23

Under that standard, Plaintiffs' facial challenge never leaves the starting gate. They concede that the ASA "[i]n certain respects . . . mirrors . . its federal counterpart." Dkt. 1 ¶ 41. That acknowledgment dooms their facial challenge, which again, requires Plaintiffs to prove that the state law conflicts with federal law in *every* application. After all, mere overlap with federal law does not state a claim for conflict preemption. *Garcia*, 589 U.S. at 211; *California v. Zook*, 336 U.S. 725, 733 (1949); *see Fenner*, 113 F.4th at 594; *Zyla Life Scis.*, 134 F.4th at 335. Given that Plaintiffs concede the laws are mostly the same, Tennessee's law cannot be facially invalid. *Id.*

The real thrust of Plaintiffs' argument is their attempt to find isolated conflicts with federal law. In their view, state law sweeps "broader than federal law" in certain circumstances. Dkt. 1 ¶ 42. That is not enough to show facial invalidity. And regardless, it is not accurate. Plaintiffs' position "seek[s] out conflicts between state and federal regulation where none clearly exists." *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990). Basic principles of statutory interpretation resolve any theoretical conflict.

**1.** Plaintiffs claim the biggest difference between the federal and Tennessee laws is the way in which they command not to "conceal, harbor, or shield [someone] from detection." *Compare* Tenn. Code Ann. § 39-17-118(a)(2), *with* 8 U.S.C. § 1324(a)(1)(A)(iii). Tennessee defines "harbor" as "to provide shelter or to conceal." Tenn. Code Ann. § 39-17-118(d). Plaintiffs believe that definition criminalizes the mere provision of shelter, Dkt. 1 ¶ 3, while federal law only criminalizes "conduct that . . . prevent[s] authorities from detecting the noncitizens' presence." *Id.* at ¶ 35 (citation omitted).

They are wrong. A Tennessee court would treat the ASA as mirroring its federal counterpart. Tennessee's statute is aimed at professional smugglers—it requires a violator to "*know[]*" that the alien's presence has been determined illegal by ICE, and yet still *intentionally* harbor them for commercial gain. Tenn. Code Ann. § 39-17-118(a) (emphasis added). An "intentional" mens rea "is the highest, most demanding mental state." *Supra* p. 8 (quoting *Rice*, 184 S.W.3d at 684). That mens rea forecloses Plaintiffs' argument. *Contra* Dkt. 1 ¶ 35. Only by knowing ICE is after an alien, and yet

24

still intentionally concealing them, would a violator "facilitate noncitizens remaining in the country illegally." *Contra id.* (citation omitted). So, the ASA requires the same intent to conceal as federal law. *See United States v. Zheng*, 87 F.4th 336, 345 (6th Cir. 2023); *see Coleman*, 341 S.W.3d at 240.

The statutory context confirms as much. *First*, consider the name of the offense—"human smuggling." Tennessee courts are well acquainted with smuggling and treat it as synonymous with "concealing" someone. *See, e.g.*, *State v. Putt*, 955 S.W.2d 640, 643 (Tenn. Crim. App. 1997).

*Second*, the adverbal clause "from detection" modifies not just "shield" but also "harbor" and "conceal." Tenn. Code Ann. § 39-17-118(a)(2). When the "Series-Qualifier Canon" applies, a qualifier—such as an adverbal clause like "from detection"—modifies all words in a preceding series. *Bearing Distributors, Inc. v. Gerregano*, No. M2020-01075-COA-R3-CV, 2022 WL 40008, at *7-8 (Tenn. Ct. App. Jan. 5, 2022). The series-qualifier canon applies if the words in the series are in "parallel construction" and if later parts of a statute clearly apply to all parts of the series. *Id.* (citation omitted). The ASA uses parallel construction. Tenn. Code Ann. § 39-17-118(a)(2). And the immigration-status mens rea requirement that follows "from detection" modifies the entire series. *Id.* Although fifty years ago, one federal court had concerns about applying the series-qualifier cannon to the ASA's federal counterpart because it might result in the "redundant" phrase "conceal from detection," *United States v. Acosta de Evans*, 531 F.2d 428, 430 n.3 (9th Cir. 1976), that phrase is not redundant in the ASA because (a)(1) of the ASA forbids transporting an individual specifically "to conceal the individual from a law enforcement officer or federal immigration officer" while (a)(2) prohibits generally concealing the individual "from detection" by the public at large. Tenn. Code Ann. § 39-17-118. Thus, the series-modifier cannon applies, and the ASA prohibits "harbor[ing] . . . from detection."

*Third*, the ASA's references to medical and legal practitioners does not mean the law applies to people who have no intent to conceal. Those references emphasize the limited scope of the crime— they do not carve out an exception for otherwise unlawful conduct. *Infra* Part II.C.

25

Finally, Tennessee imposes a stringent constitutional avoidance requirement. *Planned Parenthood of Middle Tenn.*, 38 S.W.3d at 7; *Brooks v. Bd. of Pro. Resp.*, 578 S.W.3d 421, 426 (Tenn. 2019). So, a Tennessee court would harmoniously interpret state law to avoid conflict with federal law.

**2.** Moving on from "shelter," Plaintiffs speculate that the law "appears to" criminalize transporting and harboring people who "now have legal status" to be in the United States. Dkt. 1 ¶ 43. Not so. As already explained, the sweep of the law requires a violator *to have knowledge* that the immigrant's presence is unlawful as determined by ICE. It in no way implicates persons who have legal status. And it says nothing at all about a change in legal status. Tennessee law bars transporting or harboring an individual "while knowing the individual *has* illegally entered or remained in the United States." Tenn. Code Ann. § 39-17-118(a) (emphasis added). "Has . . . entered or remained" is a present-perfect tense verbal phrase. *Id.* And legislators "employ the present-perfect tense to describe situations 'involv[ing] a specific change of state' that produces a 'continuing result.'" *Hewitt v. United States*, 145 S. Ct. 2165, 2172 (2025) (citation omitted). "[T]he present-perfect tense conveys to a listener that the event in question *continues to be true or valid.*" *Id.* (emphasis added). Here, the ASA prevents transporting or harboring an individual who illegally entered or remained in the United States and *continues* to be here illegally. *See id.* Proving the point, Causey uses present-perfect tense to the same effect in saying his tenant "has obtained" legal status. Dkt. 1 ¶ 25. To include individuals who obtained legal status after entering the United States, the ASA would have to use *past* tense and prohibit concealing people who "entered or remained." *Contra id.* ¶ 4. The straightforward reading of the ASA's plain text shows Plaintiffs' concerns are misplaced.

**3.** Plaintiffs also claim the law impermissibly expands the role of state officers by allowing state prosecutions for human smuggling where the federal counterparts in 8 U.S.C. § 1324(c) only mention state arrests. Dkt. 1 ¶ 36. *Garcia* shows why that arrangement does not cause a preemption problem. In *Garcia*, 8 U.S.C. § 1324a(e)(1)(D), (f)(2) only mention allowing federal prosecutions. But

the Supreme Court had no problem "[a]llowing [States] to bring prosecutions like these." *Garcia*, 589 U.S. at 211-12. Every case that Plaintiffs rely upon was decided pre-*Garcia*. Dkt. 1 ¶ 37.

**4.** Plaintiffs say the ASA's use of ICE determinations "creates its own immigration classifications." Dkt. 1 ¶ 65. Not true. First, ICE agents have authority to arrest individuals they deem unlawfully in the United States. 8 U.S.C. §§ 1226(a), 1357(a)(2); *supra* pp. 3-4. Second, in federal seizure and forfeiture proceedings, "[o]fficial records of [ICE]" and "[t]estimony, by [ICE] immigration officer[s]" can also be used as "prima facie evidence" that an "alien had not received prior official authorization" to enter or remain in the United States. *Id.* § 1324(b)(3)(B)-(C). Far from creating a new classification, the human-smuggling statute relies on ICE's federally codified authority. And the ASA does not target final immigration status, so it makes no ultimate classifications. *Infra* pp. 9-10.

**5.** Plaintiffs accuse Tennessee of imposing sentencing requirements that exceed those of federal law. Dkt. 1 ¶¶ 45, 65. That may be true, but it is irrelevant. Criminal law usually lacks the foreign-policy concerns that might require governance by a single sovereign. *Cf. Hines*, 312 U.S. at 64. Thus, federal and state criminal laws frequently impose different punishments for the same or similar crimes as a natural consequence of our dual-sovereign system. *See Gamble v. United States*, 587 U.S. 678, 685-88 (2019); *see id.* at 758-59 ("Some suggest that 'the federal government has [now] duplicated virtually every major state crime.'" (Gorsuch, J., dissenting) (citation omitted)); *Gutierrez*, 2025 WL 2393597, at *9; *cf. Torres*, 995 F.3d at 492-95 (finding a Tennessee law authorizing non-backpay damages to an alien did not obstruct the function of federal laws that would not require non-backpay damages). That does not mean a State's punishment conflicts with federal law. *Garcia*, 589 U.S. at 212.

Nor does *Arizona* call for a different outcome. That case found that "inconsistency . . . with respect to penalties" "simply underscore[d] the reason for *field* preemption" of alien registration. 567 U.S. at 402-03 (emphasis added). Inconsistent penalties did not factor in the *conflict* analysis. *Id.* Nothing in *Arizona* changes the well-settled rule that different sovereigns may impose different

27

penalties for the same conduct. *See Gamble*, 587 U.S. at 685-88; *Gutierrez*, 2025 WL 2393597, at *9.

Plaintiffs' argument centers around legal theories that have been abrogated by subsequent Supreme Court precedent. They repeatedly over-read *Arizona*. And they make no serious effort to interpret Tennessee law. They wholly ignore the presumption against preemption, which "operates with special force," for state criminal laws. *Fenner*, 113 F.4th at 596. Finally, to the extent there is doubt about specific applications, the courts remain open. Any problem "could be solved with the scalpel of as-applied relief in a future case as opposed to the machete of global invalidation." *United States v. Texas*, 97 F.4th 268, 300 (5th Cir. 2024) (Oldham, J., dissenting). Their *facial* pre-enforcement challenge fails. *See L.W.*, 83 F.4th at 489; *Friends of George's*, 108 F.4th at 435-38; *Fenner*, 113 F.4th at 594-96.

### B. Plaintiffs fail to state a claim of facial vagueness (Count II).

Plaintiffs suggest that the ASA is unconstitutionally vague. Dkt. 1 ¶¶ 67-75. This facial challenge immediately fails because Plaintiffs cannot "demonstrate that the law is impermissibly vague in *all* of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 497 (1982). And to even raise a facial challenge, Plaintiffs "bear[] the burden of establishing that the statute is vague as applied to [their] particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (citation omitted). Plaintiffs fall short on every front.

#### 1. The law is constitutional as applied to Plaintiffs.

The ASA is not vague as applied to Plaintiffs. Plaintiffs have adequate notice of what the law requires, and they do not allege any discriminatory enforcement, so the law is constitutional.

The Due Process Clause's "void for vagueness" doctrine ensures only that a "person of ordinary intelligence" has "a reasonable opportunity to know what is prohibited" by the law. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[P]erfect clarity and precise guidance have never been required . . . ." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Indeed, the law is full of "flexible"

28

"standards," *id.*, and "[c]lose cases can be imagined under virtually any statute," *United States v. Williams*, 553 U.S. 285, 306 (2008). The vagueness doctrine thus serves a narrow purpose: to protect against those rare laws that altogether fail "to give ordinary people fair notice of the criminalized conduct" or are "so standardless as to invite arbitrary enforcement." *United States v. Parrish*, 942 F.3d 289, 295 (6th Cir. 2019) (citation modified, citation omitted).

<u>Fair Notice to Plaintiffs</u>. Plaintiffs have fair notice of the ASA's requirements. Their vagueness claim is based on improbable mis-readings of the ASA. They challenge the requirement that they "know[]" ICE has determined an individual to be unlawfully in the United States, Dkt. 1 ¶ 73—but the scienter requirement proves the law is *not* vague, Tenn. Code Ann. § 39-17-118(a). That ICE determinations might not all be made public does not infuse vagueness—it only narrows the statute's reach to high-profile situations and the most culpable offenders. *Supra* pp. 3-4. Plaintiffs allege confusion because ICE shares its authority to enforce immigration law with other agencies, like Customs and Border Protection (CBP). Dkt. 1 ¶¶ 4, 6, 44. But the law does not refer to multiple agencies—it refers to ICE. So their proposed vague applications are illusory.

The ASA's scienter requirement eliminates vagueness concerns. Scienter requirements "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Hoffman Ests.*, 455 U.S. at 499; *see Boyce Motor Lines v. United States*, 342 U.S. 337, 342 (1952). This is because, "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning." *Screws v. United States*, 325 U.S. 91, 102 (1945). And here, the law requires knowledge of an ICE determination, which puts Plaintiffs on notice of what kind of "conduct is at risk." *Parrish*, 942 F.3d at 295. The upshot: Plaintiffs have fair notice of what the law requires them to know about ICE—they simply, by their own allegations, do not have the necessary mens rea. *Id.*

Plaintiffs say it is unclear "what conduct constitutes providing shelter." Dkt. 1 ¶¶ 3, 6, 73.

29

They hypothesize that shelter could cover "overnight accommodations" or "an educational program that lasts a few hours and occurs inside." *Id.* at ¶ 6. These speculations underscore why their pre-enforcement vagueness challenge is premature. *Supra* Part I.C. The speculations also divorce "shelter" from the context of the ASA, which requires an intent to conceal. *Infra* pp. 24-26. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute." *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Their attempts to muddy clear waters should not be indulged. *See Carman*, 112 F.4th at 402.

Discriminatory Application by Law Enforcement. Plaintiffs do not allege any facts showing a risk of discriminatory enforcement. Yet allegations of discriminatory enforcement are critical, because courts reject vagueness challenges when there is fair notice and "no evidence has been, or could be, introduced to indicate whether the [law] has been enforced in a discriminatory manner" against them. *Hoffman Ests.*, 455 U.S. at 503; *see Gaughan v. City of Cleveland*, 212 F. App'x 405, 412 (6th Cir. 2007).

Plaintiffs' reliance on *Johnson v. United States*, 576 U.S. 591 (2015), is misplaced. Dkt. 1 ¶ 38. *Johnson* cases dealt the capacious undefined terms "ordinary case" and the quagmire of the "categorical approach." *Johnson*, 576 U.S. at 596. There are no such elastic terms in the ASA that "confer . . . a virtually unrestrained power to arrest and charge persons with a violation." *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 558 (6th Cir. 1999) (citation omitted). Thus, the ASA's key terms are not susceptible to subjective and unrestrained enforcement. *Id.*

## 2. The law is not facially vague.

Even if this Court were to reach the facial challenge, it fails. Again, a facial challenge requires Plaintiffs to "demonstrate that the law is impermissibly vague in *all of its applications*." *Hoffman Ests.*, 455 U.S. at 497 (emphasis added); *United States v. Hansen*, 599 U.S. 762, 769-70 (2023). Plaintiffs do not challenge as vague the *vast majority* of the ASA, which mirrors the federal law. Those unchallenged applications doom their facial claim. To find otherwise, a court would have to announce that the

requirements of *federal* law are vague. Courts have repeatedly declined to do so. *Bland v. United States*, 299 F.2d 105, 109 (5th Cir. 1962); *Martinez-Quiroz v. United States*, 210 F.2d 763, 764 (9th Cir. 1954); *see United States v. Ye*, 588 F.3d 411, 416-17 (7th Cir. 2009) ("Congress could not have been clearer: it said that concealing, harboring, or shielding from detection an alien is unlawful conduct . . . .").

Even accepting Plaintiffs' misconstruction of the ASA, there are numerous instances where it is unambiguous. A person would have fair notice of ICE's determinations—if they learn of an ICE warrant, an ICE NOA, the names on ICE's "Most Wanted" webpage, or an ICE removal-order reinstatement. *Supra* pp. 3-4. Defendants maintain that is how this statute is supposed to operate, as it targets professional human smugglers. Requiring this knowledge also alleviates any concerns for the "has illegally entered or remained" provision because ICE determinations of this type contain dates indicating the determination is current. *Id.* The same would also be true for "harbor" because someone who hides an individual after learning of a warrant or NOA would satisfy the intent to conceal based on an ICE action. Thus, the facial vagueness challenge is unlikely to succeed.

### C. Synod fails to state a violation of the Free Exercise Clause (Count III).

Synod believes that the ASA infringes on its free exercise of religion by prohibiting it from giving shelter to people "regardless of their immigration status." Dkt. 1 ¶ 81. To state a free-exercise claim, plaintiffs must first demonstrate that the challenged law places "[a]n actual burden on the profession or exercise of religion." *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 897 (6th Cir. 2025) (citation omitted). Next, they must show the law is not a "valid and neutral law of general applicability." *Employment Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 879 (1990) (citation omitted), *superseded in part on other grounds as recognized in Ramirez v. Collier*, 595 U.S. 411, 424 (2022). And, if the law is neutral, they must how the law lacks a rational basis. *See, e.g.*, *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002). Synod does none of this.

<u>ASA Inapplicability to Synod</u>. The ASA does not apply to Synod's alleged conduct because

31

Synod lacks a for-profit motive, an intent to conceal, and knowledge of specific ICE determinations. *Supra* Part I.A.1.a. Thus, its free-exercise rights are not burdened. *Warman*, 144 F.4th at 897.

ASA's Neutrality and General Applicability. The ASA is also a neutral, generally applicable law. Synod says the ASA favors secular conduct over its religious conduct by "exempt[ing] secular activities—legal representation and healthcare services—but not religious ones." Dkt. 1 ¶ 82. It is generally true that a law triggers more searching scrutiny if it "prohibits religious conduct" while permitting secular conduct of the same kind. *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021). But the ASA *does not* except legal representation and healthcare services. Tenn. Code Ann. § 39-17-118(e)(1)-(2). Rather, it reenforces how "[i]t is not a violation of" the ASA for someone "to provide bona fide legal advice" or "healthcare services" to individuals illegally in the United States. *Id.* Again, the same goes for religious aid through the provision of shelter.

An exception, for purposes of the *Smith* inquiry occurs only when the law allows certain people to engage in *the same conduct* that would be unlawful for others, not when it clarifies that certain activities fall outside of the prohibited conduct. *Shaw v. Metro. Gov't of Nashville & Davison Cnty.*, No. M2023-01568-COA-R3-CV, 2025 WL 2205914, at *1 (Tenn. Ct. App. Aug. 4, 2025); *State v. Thompson*, No. W2011-01277-CCA-R3-CD, 2012 WL 3025697, at *7 (Tenn. Crim. App. July 25, 2012). For example, Tennessee criminalizes removing a safety warning or device *except* if removal would "improv[e] safety." Tenn. Code Ann. § 39-17-111. And Tennessee law criminalizes possessing, manufacturing, or delivering certain drugs *unless* "in the course of legitimate veterinary practice." *Id.* § 39-17-456.

The ASA does not create an exemption, because unlike what is illegal for Synod to do under the ASA is also illegal for lawyers and doctors. The ASA does not allow doctors and lawyers to hide people from detection even though they know ICE determined those people are in the country unlawfully. To the contrary, the ASA merely reenforces that doctors and lawyers can continue to do what they are already doing: providing medical and legal services. Tenn. Code Ann. § 39-17-118(e)(1)-

32

(2). This spares medical and legal professionals the trouble of researching whether the law applies to them—on its face it does not.

In this way, the ASA is like other Tennessee laws that emphasize how certain conduct does not violate the law to begin with. For example, Tenn. Code Ann. § 39-17-912(h) requires age-verification before allowing individuals to see certain material on websites accessible in Tennessee but clarifies that "it is not a violation" for websites to display information that is "otherwise permitted by law," meaning people do not need to verify their ages before searching on Google or checking their emails. *Id.* Similarly, Tenn. Code Ann. § 39-14-203(a)(1) makes it illegal to "[o]wn possess, keep, use or train any bull, bear, dog, cock, swine or other animal, for the purpose of fighting, baiting or injuring another such animal, for amusement, sport or gain." But the law emphasizes that "it is not an offense to own, possess or keep cocks . . . for the sole purpose of selling or transporting cocks to a location in which possession or keeping of cocks is legal." *Id.* § 39-14-203(e). Without this language, it would still be legal to own cocks *not* "for the purpose of fighting." *Id.* The law just makes that explicit. That is not an exemption; it is a clarification of the contours of the prohibition.

The ASA does not make otherwise illegal conduct legal only for doctors and lawyers. Thus, the law does not provide exemptions. This is precisely the type of "neutral law of general applicability" that the Supreme Court has routinely blessed. *See Smith*, 494 U.S. at 879. Rational-basis review applies.

Rational-Basis Scrutiny. Under rational-basis scrutiny, a defendant need show "only that the [challenged] regulation bear[s] some rational relation to a legitimate state interest." *Giles*, 312 F.3d at 223. A statute will be "uph[e]ld 'if there is any reasonably conceivable state of facts that could provide a rational basis." *Id.* at 224 (quoting *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001)). "Those seeking to invalidate a statute using rational basis review must 'negat[e] every conceivable basis that might support it.'" *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

By enacting the ASA, the General Assembly sought to combat human smuggling. *Supra*

Background Part I. The management of criminal activity is a legitimate state interest. *Garcia*, 589 U.S. at 212. And the ASA rationally relates to that interest by directly targeting human smuggling. Tenn. Code Ann. § 39-17-118. Thus, Synod fails to show a violation of its free-exercise rights, and Count III should be dismissed. *See Doe No.1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *7 (6th Cir. Aug. 26, 2025)

### D. Synod fails to state an expressive association claim (Count IV).

Synod thinks the ASA interferes with its "freedom to associate for religious purposes" by restricting its ability to provide shelter to people regardless of their immigration status. Dkt. 1 ¶¶ 87, 88. Synod is referring to the long-protected freedom for people to form groups in order to further their expressive activity. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647-48, (2000); *Lichtenstein v. Hargett*, 83 F.4th 575, 601-03 (6th Cir. 2023). Analysis of this freedom is a three-step process. Synod does not make it past step two.

At the first step, courts ask if a group engages in expressive activity. *Lichtenstein*, 83 F.4th at 601-03. Assuming this step is satisfied, the other steps are not. Dkt. 1 ¶¶ 12-14. At the second step, courts ask if the challenged law significantly burdens a group's *ability to associate* for expressive purposes. *Lichtenstein*, 83 F.4th at 601-03. This is where Synod stumbles. A statute might impair a group's ability to associate by, for example, compelling the group to accept or disclose its members or prohibiting the group from seeking new members. *Id.* The ASA does none of these things. It applies neutrally "to all groups and individuals." *Id.* at 603. Thus, it is "exceedingly unlikely" that the ASA "will prevent individuals from continuing to associate." *Lyng v. Int'l Union*, 485 U.S. 360, 366 (1988). And any statutory burden that falls short of impairing a group's ability to associate is "insignificant." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 883 (6th Cir. 2024).

Synod thinks that, because it is a religious organization, its associational freedom is entitled to "special solicitude," so the Court should defer to its position that the ASA impairs its right of

association. Dkt. 1 ¶ 88 (citation omitted). But Synod misinterprets *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, which gave "special solicitude" to a church under the First Amendment's *Religion Clauses* without applying the freedom of association. 565 U.S. 171, 189 (2012). Synod also misinterprets *Boy Scouts of America*, which deferred to an association on how a court order that *directly regulated its makeup* impaired its ability to express itself. 530 U.S. at 653. In *Boy Scouts of America*, the Supreme Court emphasized that an expressive association could not "erect a shield against" a law "simply by asserting" the law "would impair its message." *Id.* That is exactly what Synod is doing.

Because Synod is stuck at the second step, the Court need not reach the third—at which courts apply a standard of scrutiny to a law that *burdens* the right to associate. *Lichtenstein*, 83 F.4th at 602. But at this step, Synod also fails. Because the ASA "has no substantial impact on any fundamental interest," rational-basis scrutiny applies. *Lyng*, 485 U.S. at 370; *McLemore v. Gumucio*, --- F.4th ----, 2025 WL 2319119, at *3 (6th Cir. Aug. 12, 2025). The ASA easily passes such scrutiny. *Supra* Part II.C.

Further, while Synod does not allege an intent to engage in any unlawful activity, *supra* Part I.A, if it did, it could not use the right to associate as a shield from unlawful activity. "The First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *United States v. Wilson*, 154 F.3d 658, 665 (7th Cir. 1998) (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 776 (1994)). Thus, "[c]onduct which is unlawful if engaged in by an individual is not entitled to protection merely because it is engaged in by a group." *Id.* The ASA, on its face, does "not prohibit individuals from associating with others to express a particular viewpoint." *Id.* It prohibits smuggling someone for profit. Because this prohibition is constitutional for all the reasons discussed above, Synod would have "no freedom of association right" to violate the ASA. *Id.*

## CONCLUSION

For these reasons, Defendants' motion to dismiss should be granted.

35

Respectfully submitted,


JONATHAN SKRMETTI
Attorney General and Reporter

/s/ Miranda Jones
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General

ANDREW DENNING (BPR# 042208)
Assistant Attorney General

JESSICA BERK (MA BBO# 663527)
Acting Assistant Attorney General

AARON L. BERNARD (BPR# 042585)
Assistant Solicitor General

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 521-0417
Miranda.Jones@ag.tn.gov
Andrew.Denning@ag.tn.gov
Jessica.Berk@ag.tn.gov
Aaron.Bernard@ag.tn.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties below:

Michael C. Holley
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS
COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
spring@tnimmigrant.org

Rupa Bhattacharyya
Gregory Briker
Elizabeth Cruikshank
William Powell
Alexandra Lichtenstein*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 661-6629
Fax: (202) 661-6730
rb1796@georgetown.edu
gb954@georgetown.edu
erc56@georgetown.edu
whp25@georgetown.edu
alex.lichtenstein@georgetown.edu

Michelle Lapointe
Suchita Mathur
Chris Opila
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7523
Fax: (202) 742-5619
mlapointe@immcouncil.org
smathur@immcouncil.org
copila@immcouncil.org
*Counsel for Plaintiffs*

s/ *Miranda Jones*
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General