IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| SOUTHEASTERN SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA *et al.*,<br><br>　　Plaintiffs,<br><br>v.<br><br>STEVEN R. FINNEY *et al.*,<br><br>　　Defendants. | No. 3:25-cv-684<br><br>Chief Judge Campbell<br>Magistrate Judge Holmes |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abriq v. Metro. Gov't of Nashville*,
   333 F. Supp. 3d 783 (M.D. Tenn. 2018) .................................................................................. 3

*Adkins v. Adkins*,
   No. M2022-00986-COA-R3-CV, 2023 WL 5439785 (Tenn. Ct. App. Aug. 24,
   2023) ....................................................................................................................................... 4

*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................................................................ 7

*Allied Delivery Sys., Inc. v. I.C.C.*,
   908 F.2d 972 (6th Cir. 1990) ................................................................................................... 5

*Ames v. LaRose*,
   86 F.4th 729 (6th Cir. 2023) .................................................................................................... 6

*Anderson v. City of LaVergne*,
   371 F.3d 879 (6th Cir. 2004) ................................................................................................... 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ................................................................................................................ 7

*Burd v. Richey*,
   No. M2023-00252-COA-R3-CV, 2025 WL 1766645 (Tenn. Ct. App. June 26,
   2024) ....................................................................................................................................... 3

*California Coastal Comm'n v. Granite Rock Co.*,
   480 U.S. 572 (1987) ................................................................................................................ 7

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
   92 F.3d 1412 (6th Cir. 1996) ................................................................................................... 6

*Clark v. United States*,
   95 U.S. 539 (1877) .................................................................................................................. 8

*Cooper v. Dunn*,
   21-CV-445 (Sevier Cnty. Cir. Ct. Jan. 11, 2022) ................................................................... 5

*Crugher v. Prelesnik*,
   761 F.3d 610 (6th Cir. 2014) ................................................................................................... 7

*Friends of George's, Inc. v. Mulroy*,
   108 F.4th 431 (6th Cir. 2024) .................................................................................................. 5

*Gutierrez v. State*,
    721 S.W.3d 639 (Tex. App.—Corpus Christi–Edinburg 2025, pet. filed)..........................................8

*Hewitt v. United States*,
    606 U.S. 419 (2025)...........................................................................................................................4

*K.B. v. Methodist Healthcare*,
    929 F.3d 795 (6th Cir. 2019)..........................................................................................................10

*Kansas v. Garcia*,
    589 U.S. 191 (2020).......................................................................................................................7, 8

*Landlords of Lawrence v. City of Lawrence*,
    569 P.3d 165 (Kan. Ct. App. 2025) .................................................................................................2

*Lichtenstein v. Hargett*,
    83 F.4th 575 (6th Cir. 2023) ..........................................................................................................10

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
    774 F.3d 895 (6th Cir. 2014)............................................................................................................7

*Mirando v. U.S. Dep't of Treasury*,
    766 F.3d 540 (6th Cir. 2014)............................................................................................................6

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024).........................................................................................................................7

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958).........................................................................................................................9

*Pavia v. NCAA*,
    154 F.4th 407 (6th Cir. 2025) ..........................................................................................................6

*Pleasant View Baptist Church v. Beshear*,
    78 F.4th 286 (6th Cir. 2023) ..........................................................................................................10

*Prime Media v. Brentwood*,
    485 F.3d 343 (6th Cir. 2007)............................................................................................................5

*Quillen v. Crockett*,
    928 S.W.2d 47 (Tenn. Crim. App. 1995) ........................................................................................5

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984).........................................................................................................................9

*Smith v. Michigan Dep't of Corr.*,
    --- F. 4th ----, 2025 WL 3251117 (6th Cir. Nov. 21, 2025)...........................................................6, 7

*Springfield Armory, Inc. v. City of Columbus*,
　29 F.3d 250 (6th Cir. 1994) ............................................................................................................8

*State v. Hooper*,
　29 S.W.3d 1 (Tenn. 2000) ..............................................................................................................1

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
　508 U.S. 439 (1993) ........................................................................................................................3

*United States v. Thompson*,
　896 F.3d 155 (2d Cir. 2018) ........................................................................................................10

**Statutes**

8 U.S.C. § 1324 ................................................................................................................................7, 9

8 U.S.C. § 1329 .....................................................................................................................................7

18 U.S.C. § 1071 ...................................................................................................................................3

Tenn. Code Ann. § 39-11-106 ............................................................................................................3

Tenn. Code Ann. § 39-14-203 ............................................................................................................3

Tenn. Code Ann. § 39-17-118 ................................................................................................... 1, 2, 9

Tenn. Code Ann. § 39-17-603 ............................................................................................................3

Tenn. Code Ann. § 39-17-912 ............................................................................................................3

Tenn. Code Ann. § 40-12-104 ............................................................................................................5

Tenn. Code Ann. § 47-18-5702 ..........................................................................................................3

The Anti-Smuggling Act, Tenn. Code Ann. § 39-17-118, is designed to target professional human smugglers. Plaintiffs' response, Dkt. 79, twists the ASA into a covert restriction on immigrant housing. In doing so, Plaintiffs respond to only a fraction of Defendants' arguments about how state courts would interpret the ASA, disregard key Supreme Court and state court precedent, and misunderstand both the scope of the ASA and basic principles like the barriers to facial challenges and the right of expressive association. Their arguments are not supported by the weight of state or federal precedent, and many times not by the very cases they cite. Dismissal is warranted.

I. **Tennessee Courts Would Agree with Defendants' Interpretation of the ASA.**

Plaintiffs (at 3-6) say that Tennessee Courts would not agree with Defendants' statutory interpretation on: (1) for-profit purpose, (2) intent to conceal, and (3) knowledge of an ICE determination that a smuggled individual lacks a legal immigration status. Dkt. 64 at 7. Yet, in arguing about what state courts will do, Plaintiffs rely on twice as many non-state-court opinions as Tennessee opinions and fail, repeatedly, to acknowledge—much less address—Defendants' arguments.

**1.** The ASA prohibits "human smuggling for commercial advantage or private financial gain," so the smuggler must *benefit* economically from smuggling. Dkt. 64 at 8. Plaintiffs (at 6) say that profit does not have to be the "sole purpose" for the smuggler, and it is enough to "secure some economic benefit." But they do not have an answer to Defendants' point that profit goes "beyond . . . pure reimbursement." Dkt. 64 at 8 (citation omitted). Tennessee law distinguishes actions motivated by "profit or gain" from actions that may result in some economic benefit but were not profit motivated, like stealing to "feed [one's] family or pay emergency expenses." *State v. Hooper*, 29 S.W.3d 1, 12 (Tenn. 2000). The Tennessee General Assembly put the ASA firmly in the "profit" bucket by using the words "advantage" and "gain." Thus, the ASA only applies to those who smuggle individuals for "pecuniary gain," not to those who may receive some benefit, like having their expenses reimbursed, but smuggle others due to a misguided charitable motive. *Id.*

1

**2.** The ASA prohibits *smuggling,* which means that it is a crime to conceal a victim of human smuggling from detection. Dkt. 64 at 8-9, 24-26, 29-30. In arguing otherwise, Plaintiffs divorce part of the definition of harbor, "to provide shelter to," from its statutory context. They (at 4 & 5 n.2) read this term in isolation while ignoring the very name of the felony it describes—human *smuggling*, a term that appears twice in the title and *five times* in the text of the ASA. Tenn. Code Ann. § 39-17-118. This myopic view of the definition of "harbor" also strips its contextual meaning, which includes an intent to "'diminish[] the government's ability to locate' an illegal alien." *Landlords of Lawrence v. City of Lawrence*, 569 P.3d 165 (Kan. Ct. App. 2025) (table decision) (citation omitted, collecting cases).

Plaintiffs (at 4-5) deny that the term "from detection" modifies each word in the series "conceals, harbors, or shields," thereby prohibiting harboring from detection. Dkt. 64 at 25 (quoting Tenn. Code Ann. § 39-17-118(a)(2)). Plaintiffs say (at 4-5) this interpretation results in a duplicative, "illogical mess." Again, they ignore directly contrary state court precedent. Tennessee cases apply the series-qualifier canon to statutes constructed like the ASA. Dkt. 64 at 25 (citation omitted). Rather than use Tennessee law, Plaintiffs rely on a footnote in a 9th Circuit opinion from 1976 interpreting a differently worded federal statute. And in all events, they have no answer to the explanation that the prohibition in (a)(2) of the ASA, which prevents concealing from detection, is not duplicative because it distinguishes (a)(2) from (a)(1), which prevents concealing from law enforcement. Dkt. 64 at 25.

Plaintiffs also say (at 4) the ASA must criminalize actions unrelated to concealment, like renting out a home, because if it did not, the ASA would not need to reassure the public about the legality of other actions unrelated to concealment, like giving legal advice and healthcare services. But in referencing those actions, the ASA clarifies that legal and medical services do not violate the ASA in the first place. Dkt. 64 at 32-33. The law does not reflect that the services would be a violation absent that language. Plaintiffs (at 33) claim that legal and healthcare services must fall within a statutory "exception" to illegal conduct because the ASA says "it is not a violation" of the ASA to

2

perform them and, if they were not exceptions, the ASA's reference to them and use of "violation" would be superfluous. But, again, Plaintiffs ignore well-established principles of Tennessee law. As Defendants explained, these are definitional statements, clarifications that reassure the public about the narrow reach of the ASA. The General Assembly routinely defines or clarifies when an already lawful action "is not a violation" or is outside the scope of a law. Tenn. Code Ann. § 39-17-912(h); *see* Tenn. Code Ann. §§ 39-11-106(10)(B), 39-14-203(e), 39-17-603(d) 47-18-5702(2), (9)(B).

**3.** The ASA only applies if smugglers know ICE determined their victims are currently in the United States illegally. Dkt. 64 at 3-4, 9-10, 26, 29. Relying on a single comma, Plaintiffs (at 6) say that the ASA does not require this and, if it did, the statute would be "improbably narrow," overlooking victims who never encountered ICE.[1] Under Tennessee law, a single piece of punctuation cannot trump a "common sense" statutory interpretation. *Burd v. Richey*, No. M2023-00252-COA-R3-CV, 2025 WL 1766645, at *5 (Tenn. Ct. App. June 26, 2024); *see U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 417-18, 454-55 (1993). And Defendants' interpretation is the commonsense one, showing that the ASA criminalizes hiding someone the smuggler knows the federal government does not want concealed. As Plaintiffs point out (at 29), immigration law is a complex area, and after an ICE determination, an immigration court may ultimately decide that a smuggled individual was present legally. But Plaintiffs ignore Defendants' argument that final immigration status is irrelevant because, like the federal offense for hiding the subject of an arrest warrant, 18 U.S.C. § 1071, the ASA criminalizes an intention to conceal someone who the government does not want concealed. Dkt. 64 at 9-10. The crime is about putting a roadblock (intentional concealment) in the way of a lawful ICE "determination." *Abriq v. Metro. Gov't of Nashville*, 333 F. Supp. 3d 783, 785 (M.D. Tenn. 2018).

---

[1] Plaintiffs (at 31) undermine their argument about the narrow reach of the ASA by citing a website they say shows that ICE has determined 65,000 individuals are currently in Tennessee illegally. They also do not clarify how the Court could take judicial notice of this website or whether the 65,000 immigration cases it references only involve ICE determinations about immigration status.

3

Plaintiffs (at 5) also insist that the ASA applies to smuggled individuals who already obtained legal status. But that is not what Tennessee courts would hold. *See Adkins v. Adkins*, No. M2022-00986-COA-R3-CV, 2023 WL 5439785, at *5 (Tenn. Ct. App. Aug. 24, 2023). In *Adkins*, the Court relied on a Ninth Circuit decision considering a statute that describes an immigrant who "has been . . . lawfully admitted", and the Ninth Circuit ruled the statute only applies to an immigrant who is *currently* lawfully in the United States. *Id.* at 5 n.5 (citing *Padilla-Romero v. Holder*, 611 F.3d 1011, 1013 (9th Cir. 2010)). So, Defendants' approach to present-perfect tense is one that Tennessee courts have already adopted. *Id.* Thus, for the ASA to include individuals who lacked but later acquired legal status, the ASA would have to use both present- and past-perfect tense and refer to someone who has *or had* illegally entered or remained in the United States. *Hewitt v. United States*, 606 U.S. 419, 429-30 (2025). It does not. It only applies to those who smuggle individuals who *have* illegally entered or remained.

Though they do not lack colorful characterizations of Defendants' arguments, Plaintiffs do lack a position grounded in Tennessee law. Thus, Defendants' interpretation of the ASA, which is built on Tennessee legal principles and precedents, is the one state courts would adopt.

## II. The Court Lacks Subject Matter Jurisdiction.

Standing. Plaintiffs lack standing because (1) they lack a likely injury in fact, Dkt. 64 at 6-14, and (2) they lack causation to sue eleven defendants, *id.* at 14-15.

**1**. Plaintiffs argue (at 8-12) that they have shown injury because the three parts of the ASA at issue arguably proscribe their conduct, and they face a threat of prosecution. But Doe and Synod lack a for-profit purpose. Although they may receive compensation, they do not allege for-profit motives. And Plaintiffs do not dispute (at 8-10) that all three plaintiffs lack an intent to conceal or a knowledge that ICE has determined the people they assist are in the United States unlawfully. Further, while Plaintiffs challenge the entire ASA—and repeatedly reference the transportation provisions—they only allege they would violate a part of the definition of "harbor," so at a minimum, they lack standing

4

to challenge the entire ASA. *Prime Media v. Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007).

Nor do Plaintiffs face a "*certainly impending* threat of prosecution." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (cleaned up, citation omitted). Plaintiffs say (at 11) that, because they chose to sue before the ASA went into effect, the Court can simply ignore the first two *Mckay* factors—history of enforcement and warning letters—but in such circumstances, the Sixth Circuit finds these "factor[s] cut[] against" plaintiffs. *Id.* at 439. In fact, their absence should require a stronger showing. Under a test where "[n]o single factor is controlling," it is only "logical that the importance of [one] factor should vary in inverse proportion to the strength of [another]." *Allied Delivery Sys., Inc. v. I.C.C.*, 908 F.2d 972 (6th Cir. 1990) (unpublished table decision). Ignoring missing factors rather than counting their absence against Plaintiffs perversely lowers the standing bar for pre-enforcement challengers who have the least evidence of enforcement risk.

Plaintiffs claim (at 11-12) they meet *Mckay*'s ease-of-enforcement factor due to Tennessee's "unique grand jury system." Although any Tennessean may present claims to a grand jury, *see* Tenn. Code Ann. § 40-12-104, this does not ease enforcement of the ASA. This grand-jury statute was cited to the Sixth Circuit in *Friends*, 108 F.4th at 452 (Mathis, J., dissenting), but the majority did not find the challenged law easier to enforce, *id.* at 440. And the grand-jury statute does not deprive prosecutors of their discretion *not* to pursue charges. *Quillen v. Crockett*, 928 S.W.2d 47, 49 (Tenn. Crim. App. 1995); *Cooper v. Dunn*, 21-CV-445, *2 (Sevier Cnty. Cir. Ct. Jan. 11, 2022) (attached as Ex. 1). In sum, as the Sixth Circuit already concluded when presented with this argument, nothing about Tennessee's criminal laws contains "attributes making enforcement easier or more likely." *Friends*, 108 F.4th at 440.

Finally, Plaintiffs say (at 12-13) that, before this lawsuit was filed, Defendants failed to disavow an intent to prosecute them. But they do not allege that they ever *asked* Defendants about the ASA. And, while Plaintiffs fuss over Defendants' refusal to agree to a preliminary injunction, standing must be established *when* the complaint is filed, and Defendants disavowal of enforcement in this litigation

5

would bind them in any subsequent litigation with these plaintiffs. *Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014); *cf. Pavia v. NCAA*, 154 F.4th 407, 414 (6th Cir. 2025).

**2**. Plaintiffs argue (at 13-14) that Synod has cause to sue all 32 Defendants because the Court is limited to the inadequate allegations in the Complaint. But, by relying on information outside the Complaint, Dkt. 64 at 4, 14, Defendants have brought a factual challenge to causation. Thus, the Court can consider outside evidence. *Ames v. LaRose*, 86 F.4th 729, 731 (6th Cir. 2023). That evidence shows that Synod lacks jurisdiction to sue eleven Defendants—a point Synod conceded. Dkt. 35, at 6 n.7.

Sovereign Immunity. Defendants are also protected by sovereign immunity because there are no allegations that any DA has "enforced []or threatened to enforce" the ASA against *anyone*. Dkt. 64 at 15-16 (citation omitted). Plaintiffs (at 15) cite a case saying plaintiffs need a "realistic possibility" of enforcement. But that requirement stems from an earlier decision that explained the possibility of enforcement requires, at a minimum, a "threat of enforcement." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citation omitted). Plaintiffs lack such a threat. Indeed, the Court ordered Defendants to report if any of them have acted to enforce the ASA against Plaintiffs, but months have passed, and no enforcement has been reported. Dkt. 52.

**III.    Plaintiffs Fail to State a Claim upon which Relief Can Be Granted.**

Preemption. On Count 1, Plaintiffs (1) lack a cause of action in statute or equity and (2) fail to state a claim on the merits. Dkt. 64 at 17-27.

**1.** Plaintiffs do not directly respond to Defendants argument that Congress displaced any equitable cause of action here by conferring enforcement authority in U.S. Attorneys, and *not* private parties. Dkt. 64 at 17-18. Rather, (at 16-17) they argue that "decades" of precedent assume that an equitable cause of action allows private plaintiffs to enforce the INA. But that argument is foreclosed by *Smith v. Michigan Dep't of Corr.*, --- F. 4th ----, 2025 WL 3251117, at *6 (6th Cir. Nov. 21, 2025). *Smith* holds that even if "decades of circuit precedent" "assumed" a cause of action exists, absent binding

6

precedent, when a court is "confronted directly with the question [it] must carefully assess the cause of action's validity." *Id.* at 6,7. Then, after assessing the statutory scheme, the court determined no cause of action existed. *Id.* at 14. The same is true here. Dkt. 64 at 17-19. And to the extent there is binding precedent, it suggests that 8 U.S.C. §§ 1324(c), 1329 "displace" Plaintiffs' claim for "equitable relief." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015); *see Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014); *Crugher v. Prelesnik*, 761 F.3d 610, 615 (6th Cir. 2014).

**2**. Federal-immigration law does not facially field or conflict preempt the ASA. Dkt. 64 at 19-28. On the facial challenge requirements, Plaintiffs (at 20) doubt that the strict facial-challenge barrier applies to preemption cases. But the Supreme Court already applied this strict barrier to preemption cases. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 589 (1987) (noting that "identification of a possible set of . . . conditions not pre-empted by federal law is sufficient to rebuff [a] facial challenge"). Its silence in later opinions should not be read as overruling that approach, *Agostini v. Felton*, 521 U.S. 203, 237 (1997), particularly when the Supreme Court has recently reaffirmed the high barrier applies to *all* facial challenges, *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Plaintiffs also claim that the facial standard is irrelevant because, once a law is preempted, it is preempted in all applications. This conflates facial challenges with the field preemption inquiry, something the Supreme Court did not do in Plaintiffs' cited case. *See California Coastal*, 480 U.S. at 589.

For field preemption, Plaintiffs (at 17-19) largely rely on appellate decisions that are unpersuasive because they pre-date the Supreme Court's authoritative guidance in *Kansas v. Garcia*, 589 U.S. 191 (2020). Plaintiffs argue that Defendants must consider the ASA against the broader statutory framework of federal law, but Defendants have done just that and identified multiple ways the federal framework contemplates state participation, including prosecution for human trafficking. Dkt. 64 at 20-21. Plaintiffs claim (at 21) that the ASA is not generally applicable like other non-preempted laws because it applies only to immigrants, but earlier they admit (at 5 n.2) that the law does not apply to

7

*immigrants*, but "applies . . . to any 'person' who violates it" by harboring an immigrant. And, while they repeat that regulating the harboring of immigrants is preempted because harboring is central to the regulation of immigrants of themselves, they do not cite a post-*Garcia* federal appellate decision that extends *Arizona's* field preemption beyond immigrant registration. *Garcia*, 589 U.S. at 210.

For conflict preemption, Plaintiffs (at 24-25) primarily rely on statutory interpretations debunked above. They also argue that, in referencing arrest by state and local law enforcement for federal harboring crimes, Congress prevented States from regulating immigrant harboring. But the portions of the federal cases they cite for support (at 25) address *field* preemption, not conflict. Besides, "[t]he fact that a state officer has the authority to arrest violators of this federal offense and to work cooperatively with federal authorities on prosecutions of this federal offense says *nothing* about whether a state is prohibited from enacting a state offense for similar or related behavior." *Gutierrez v. State*, 721 S.W.3d 639, 652 (Tex. App.—Corpus Christi–Edinburg 2025, pet. filed) (en banc) (emphasis added). They also argue that the ASA creates a new immigration classification, but the ASA does not classify any immigrants or, as discussed above, regulate immigrants directly *at all*. It simply incorporates existing federal determinations. *See* Dkt. 64 at 3-4.

<u>Vagueness</u>. On Count II, Plaintiffs fail to state a claim, because they cannot demonstrate the ASA is vague in all applications. Dkt. 64 at 28-31. Plaintiffs cannot even leap the initial hurdle of alleging it is vague as applied to them. *Id.* at 28-30. In trying to find vagueness in a clear statute, Plaintiffs (at 28-31) largely distort the meaning of the ASA in ways that are already addressed above. They also claim that the ASA is vague because it relies on knowledge about a person's legal status that an ordinary person could not be expected to know. But the case they cite for support says that an ordinary person "cannot be expected to know the developmental history of a particular weapon." *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 253 (6th Cir. 1994). That opinion does not stand contrary to the foundational principle that "[e]very man is supposed to know the law." *Clark v. United*

8

*States*, 95 U.S. 539, 542 (1877). Nor does this argument erode the effect of the ASA's scienter requirement, which dispels rather than heightens vagueness concerns. Dkt. 64 at 29.

Besides, the ASA demands no more than the federal government, which expects a smuggler to "know . . . that an alien has come to, entered, or remains in the United States in violation of the law." 8 U.S.C. § 1324(a)(1)(A)(iii). Indeed, the ASA *simplifies* this requirement by placing the burden on ICE to determine a smuggling victim's immigration status and leaving it to the smuggler only to know what ICE already decided. While Plaintiffs (at 30) say that the ASA requires smugglers to theorize about "what . . . ICE would deem unlawful," the ASA does not require this. As demonstrated by the ASA's use of past tense, ICE must have already "determined" a smuggling victim's status. Tenn. Code Ann. § 39-17-118(a). Plaintiffs fail to state a vagueness claim.

Free Exercise. On Count III, the ASA does not infringe on Synod's free exercise of religion. It is a neutral law of general applicability that easily passes rational-basis scrutiny. Dkt. 64 at 31-34. Synod argues (at 31-34) the ASA contains secular exceptions for giving legal advice and healthcare and is therefore subject to strict scrutiny. But for the reasons already discussed above, like other Tennessee laws, the ASA merely clarifies that legal advice and healthcare services do not fall under the scope of the ASA to begin with. Plaintiffs thus fail to state a free exercise claim.

Freedom of Association. On Count IV, the ASA does not interfere with Synod's freedom to associate. Dkt. 64 at 34-35. In its response, Synod misunderstands this freedom. It claims (at 34) the freedom extends to religious associations *regardless* of whether they are expressive. But the cases it cites limit this freedom to *expressive* associations. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958) (noting the "freedom to engage in association" is "for the advancement of beliefs and ideas"); *see Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004). This distinction is key because, while Defendants were willing to assume Synod associates to engage in expressive conduct, Dkt. 64 at 34, Synod rejects this assumption. It (at 34) says

9

that its members engage in "religious exercise" witvhout claiming their exercise is expressive. *See also* Dkt. 1 ¶¶ 87, 89. Synod, as the "master of [its] complaint," has chosen a claim of *non-expressive* religious association. *K.B. v. Methodist Healthcare*, 929 F.3d 795, 799 (6th Cir. 2019). Thus, Synod fails the first step of the applicable test, which examines if a group engages in *expressive* activity. Dkt. 64 at 34.

Synod's disavowal of an expressive purpose also corrupts its argument on the second step—significant burden on the ability to associate. Synod proposes (at 34-35) that any interference with its provision of shelter to immigrants is a burden on its ability to associate. But even under Plaintiffs' misinterpretation of the ASA, barring shelter to immigrants does not burden the act of associating. It does not require or prevent affiliating with immigrants, admitting immigrants as members of Synod, or advocating on behalf of immigrants. *United States v. Thompson*, 896 F.3d 155, 164 (2d Cir. 2018); *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 302 (6th Cir. 2023).

Besides, this is the wrong inquiry. The proper question is whether the ASA burdens Synod's ability to associate in order to *further its expressive activity. Lichtenstein v. Hargett*, 83 F.4th 575, 602 (6th Cir. 2023); *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023). Synod does not allege that providing shelter is expressive. So, assuming (incorrectly) that the ASA "restricts the activities" of Syond, the ASA would still only "limit[] . . . the non-expressive conduct in which" Synod "may engage," like providing shelter, "rather than . . . [its] right to associate for the purpose of expressing [its] views." *Thompson*, 896 F.3d at 165. Indeed, if the freedom reached as far as Synod suggests, encompassing the non-expressive services an association provides, then the First Amendment would "shield from prosecution marijuana advocacy groups that distribute that substance to people with a perceived medical need for it, so long as the groups strongly believed that marijuana should be fully legal." *Id.* at 165 n.10. That is not how the freedom works. *Id.* Thus, the final claim also fails.

For these reasons, the Court lacks jurisdiction, Plaintiffs fail to state a claim, and Defendants' motion to dismiss should be granted.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/ Miranda Jones
MIRANDA JONES (BPR# 036070)
Senior Assistant Attorney General

ANDREW DENNING (BPR# 042208)
Assistant Attorney General

JESSICA BERK (MA BBO# 663527)
Acting Assistant Attorney General

AARON L. BERNARD (BPR# 042585)
Assistant Solicitor General

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 521-0417
Miranda.Jones@ag.tn.gov
Andrew.Denning@ag.tn.gov
Jessica.Berk@ag.tn.gov
Aaron.Bernard@ag.tn.gov
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties below:

Michael C. Holley
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
spring@tnimmigrant.org

Rupa Bhattacharyya
Gregory Briker
Elizabeth Cruikshank
William Powell
Alexandra Lichtenstein*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 661-6629
Fax: (202) 661-6730
rb1796@georgetown.edu
gb954@georgetown.edu
erc56@georgetown.edu
whp25@georgetown.edu
alex.lichtenstein@georgetown.edu

Michelle Lapointe
Suchita Mathur
Chris Opila
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7523
Fax: (202) 742-5619
mlapointe@immcouncil.org
smathur@immcouncil.org
copila@immcouncil.org
*Counsel for Plaintiffs*

                                                   /s/ Miranda Jones
                                                   MIRANDA JONES (BPR# 036070)